**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| WARNER RECORDS, INC., et al., | |
| Plaintiffs, | Case No. 2:23-cv-00576-JRG-RSP |
| v. | JURY TRIAL DEMANDED |
| ALTICE USA, INC., et al., | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**DEFENDANTS' MOTION TO TRANSFER VENUE**
**TO THE EASTERN DISTRICT OF NEW YORK**
**PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................... iii

I.      Introduction ..................................................................................................... 1

II.     Background Facts ............................................................................................ 3

      A.     Altice and the Location of Its Documents and Witnesses ...................... 3

      B.     Plaintiffs and the Location of Their Documents and Witnesses............................ 5

      C.     The Locations of Third-Party Witnesses ................................................. 6

III.    Legal Standard ................................................................................................ 6

IV.    Argument ......................................................................................................... 7

      A.     This Case Could Have Been Brought in the EDNY. ................................ 7

      B.     Both the Private and Public Interest Factors Heavily Favor Transfer to the
EDNY. ...................................................................................................... 7

             1.     The relative ease of access to sources of proof weighs in favor of
transferring this case because the bulk of evidence will come from
the EDNY with none in the EDTX. ............................................................. 7

             2.     The availability of compulsory process weighs in favor of
transferring this case because the EDNY has subpoena power over
non-party witnesses that the EDTX does not............................................. 9

             3.     The cost of attendance for willing witnesses weighs in favor of
transferring this case because the bulk of witnesses are in the
EDNY and more than 100 miles from the EDTX.................................... 11

             4.     The lack of practical problems weighs in favor of transferring this
case because this case just started. ............................................................. 12

             5.     The administrative difficulties from court congestion factor is
neutral because of the docket efficiency in the EDNY and EDTX. ......... 12

             6.     The local interest in having localized interests decided at home
weighs in favor of transferring this case because the place of the
alleged wrong is in the EDNY, not the EDTX. ....................................... 13

             7.     The familiarity of the forum factor is neutral because both the
EDNY and EDTX are equally capable of resolving this suit. .................. 15

8.    The avoidance of problems of conflict of laws factor is neutral because there are no conflict of law issues. ............................................. 15

V.    Conclusion ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc.*,
2022 WL 1676400 (Fed. Cir. Apr. 2022) ...............................................................9

*Athalonz LLC v. Under Armour, Inc.*,
2023 WL 8809293 (E.D. Tex. Dec. 20, 2023) (Gilstrap, J.)................................9, 10

*BMG Rights Management (US) LLC et al. v. Altice USA, Inc. et al.*,
No. 2:22-cv-00471 (E.D. Tex.) ..................................................................... *passim*

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ...........................................................................3, 15

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
2017 WL 4076052 (E.D. Tex. Sept. 14, 2017) ....................................................15

*Holloway v. City of Fort Worth*,
2024 WL 96666 (E.D. Tex. Jan. 9, 2024) .............................................................9

*Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc.*,
2016 WL 4424967 (E.D. Tex. July 21, 2016) ........................................................8

*In re Marquette Transp. Co. Gulf-Inland, LLC*,
2012 WL 2375981 (S.D. Tex. June 21, 2012) ......................................................12

*Mears Techs., Inc. v. Finisar Corp.*,
2014 WL 1652603 (E.D. Tex. Apr. 24, 2014) (Gilstrap, J.)...................................13

*Mini Melts, Inc. v. Uniworld Corp. WLL*,
2008 WL 4441979 (E.D. Tex. Sept. 25, 2008) ......................................................7

*Net Navigation Sys., LLC v. Extreme Networks, Inc.*,
2014 WL 5465449 (E.D. Tex. Oct. 27, 2014) ........................................................8

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
2012 WL 194382 (E.D. Tex. Jan. 23, 2012).........................................................11

*Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*,
2022 WL 965394 (E.D. Tex. Mar. 30, 2022) .......................................................10

*In re Planned Parenthood Fed'n of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) ...........................................................................9, 13

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ............................................................ *passim*

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ............................................................7, 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................7, 13

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
   2012 WL 194370 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.).........................11, 12, 13

*Word to Info, Inc. v. Facebook, Inc.*,
   2015 WL 13870507 (N.D. Tex. July 23, 2015) ....................................14

**Statutes**

28 U.S.C. § 1331 ............................................................................7

28 U.S.C. § 1338 ............................................................................7

28 U.S.C. § 1391(c) ........................................................................7

28 U.S.C. § 1400(a) ........................................................................7

28 U.S.C. § 1404(a) ........................................................................1, 6

Defendants Altice USA, Inc. and CSC Holdings, LLC (collectively, "Altice") respectfully move to transfer this action to the Eastern District of New York under 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Plaintiffs filed this case in Texas because "[t]his Court recently sustained a complaint alleging similar copyright infringement claims" in *BMG Rights Management (US) LLC et al. v. Altice USA, Inc. et al.*, No. 2:22-cv-00471 (E.D. Tex.) ("*BMG*," or the "*BMG* Case"). Compl. ¶ 13.

But after this Court's decision not to transfer the *BMG* Case, the Fifth Circuit decided *In re TikTok, Inc.*, which made it even more clear that transfer is required when, as here, "virtually all of the events and witnesses regarding the case . . . are in the transferee forum." 85 F.4th 352, 366 (5th Cir. 2023). In light of the Fifth Circuit's guidance, the result here must be different.

Applying *TikTok* here, the Eastern District of New York ("EDNY") is a clearly more convenient venue than the Eastern District of Texas ("EDTX") because the facts here are materially different and the discovery and pretrial development in the *BMG* Case have now shown that Texas has no relevant evidence and that all relevant evidence is derived from New York or locations more proximate to New York. Two New York-based music conglomerates (Warner and Sony), through their subsidiaries (35 of which are based in New York), have sued New York-based Altice based on corporate decisions made in New York. As explained below, the bulk of the evidence is in New York. Most of the parties' current and former employees are in New York. Plaintiffs' notices purportedly identifying alleged activity of Altice's users were sent to, and processed by, Altice in New York. Altice's decisions about what to do in response to Plaintiffs' accusations took place at its headquarters in New York. Altice's data related to notices of alleged infringement and accused users are maintained in New York. And *Plaintiffs'* corporate decisions and conduct took place in their respective New York headquarters. Put simply, the alleged events that gave rise to

this case occurred in New York. These facts, coupled with the Fifth Circuit's intervening and controlling guidance, demonstrate that this case should be transferred.

*First*, the relative ease of access to sources of proof now clearly favors transfer. In *BMG*, this Court found this factor neutral because it concluded that electronic evidence was equally available in Texas. But the Fifth Circuit has since clarified that this factor still favors transfer when, as here, "[t]here are no employees in the [transferor district] who" had access to the key data because it "is relatively easier to access" the data where "a majority of the [relevant] team is based"—here, in the EDNY. *See id.* at 359. Indeed, the *BMG* proceedings have confirmed that the relevant evidence was generated in New York and is therefore *relatively* easier to access from the EDNY.

*Second*, the availability of compulsory process favors transfer because the EDNY has absolute subpoena power over several relevant non-party witnesses. In *BMG*, the Court found this factor neutral because of the *prospect* that there *may* be testimony from former Altice employees in Texas. But that has proven not to be the case. Discovery in *BMG* is almost over, and, to date, no testimony has yet to be obtained, or is scheduled to be obtained, from any witnesses in Texas. Further, since the decision not to transfer the case in *BMG*, several New York-based Altice employees whose depositions have been noticed in *BMG* have left Altice, heightening the importance of the availability of compulsory process if their testimony is sought in this case.

*Third*, the cost of witness attendance favors transfer. In *BMG*, the Court found this factor neutral after determining that a transfer would not materially reduce the inconvenience for non-party witnesses spread around the country. But *TikTok* held that the "analysis of this factor should [] end[] with [a] recognition that 'the bulk of relevant witnesses [are]" in the transferee district. *See id.* at 362. That is the case here—the potentially relevant employees of both parties are predominantly in New York. And when "*most* relevant witnesses" are in the transferee district, the

existence of a few non-New York witnesses "cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas." *Id.* at 361–62.

*Finally*, the localized interest in having this case decided at home favors transfer. In *BMG*, the Court found that this factor was neutral because it concluded that the alleged acts of infringement by Altice users included conduct in EDTX. But *TikTok* clarified that "the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* at 364. The place of the alleged wrong here is not in the EDTX, where a subset of non-party users of Altice's network are alleged to be located. Rather, it is in the EDNY, where Plaintiffs claim Altice allegedly knew of the infringing activity and materially contributed to it, or had the ability to supervise and control its users' infringement from its headquarters and financially benefited. Compl. ¶¶ 3, 92, 103, 104. The inconsequential interest of Texas (or any other state in which Altice offers service) in this case cannot supplant the meaningful interest of New York, which is also Plaintiffs' residence and the location of many witnesses. *See Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022).

For these reasons, Altice respectfully requests that this case be transferred to the EDNY.

## II.   BACKGROUND FACTS

### A.   Altice and the Location of Its Documents and Witnesses

Defendant Altice USA is a Delaware corporation with its principal place of business in the EDNY at 1 Ct. Square W., Long Island City, NY 11101. Compl. ¶ 76; Declaration of Patricia Wheeler ("Wheeler Decl.") ¶ 13. Defendant CSC Holdings is Altice USA's wholly owned subsidiary of Altice USA and a Delaware LLC with its principal place of business in the EDNY at 1111 Stewart Ave., Bethpage, NY 11714. Compl. ¶ 77; Wheeler Decl. ¶ 4.[1]

---

[1] Altice has 174 subsidiaries, which serve different purposes in connection with its various products, services, and partnerships. Three are incorporated in Texas but headquartered with Altice USA in the EDNY. Wheeler Decl. ¶ 15. Regardless, these subsidiaries would not be potential sources of relevant evidence and are, therefore, immaterial to the present analysis. *Id.*

Altice provides broadband internet service to more than 4.5 million subscribers in 21 states. Wheeler Decl. ¶ 5. Most residential subscribers (more than 2.6 million) are in the New York area. *Id.* There are 1,695,829 total subscribers (residential and business) in New York—with 1,050,095 in the EDNY. *Id.* As for subscribers in Texas, there are only 189,271 total Altice subscribers (residential and business) in this District—with only 3,439 in the Marshall Division. *Id.* ¶ 6.

Altice's business, technical, and legal operations are based in its headquarters and nearby facilities in the EDNY. *Id.* ¶ 7. The team that handles notices of alleged copyright infringement is in the EDNY. *Id.* Virtually all the potentially relevant employees for this case work in the EDNY, including key executive, management, and operations-level personnel in customer care, products, marketing, network engineering, data, finance, and legal. *Id.* ¶ 7-8. These individuals include William Heberer, Michael Davis, Danny Holton, Christine Cummings, David Kniffin, Ahmed Fayed, Audrey Pinn, Beth Rosenfeld, Joe Foster, and George Ziegler, many of whom have been noticed for deposition in *BMG. Id.* ¶¶ 8, 12; Declaration of Sean R. Anderson ("Anderson Decl.") ¶ 95.

With these relevant teams in the EDNY, Altice's relevant documents are also overwhelmingly created and handled in the EDNY. Wheeler Decl. ¶ 12. Since mid-2021, these documents have been stored with Google's SQL and Big Query cloud services, which are accessible from Altice's offices. *Id.*[2] Identifying and understanding the relevant documents and evidence is highly complex and will require an Altice witness to navigate. George Ziegler is Altice's Data Warehouse manager and the subject matter expert on the accessibility of documents, data, and other information from the cloud or other sources. *Id.* He is based in the EDNY (*id.*), and has been deposed in the *BMG* Case.

---

[2] The SQL servers are in South Carolina, while the Big Query servers are dynamic—previously, Altice's relevant documents were stored in the EDNY and there are relevant documents still only stored on servers in the EDNY. *Id.*

Altice has work facilities in 30 states. In Texas, Altice has facilities in Plano and Tyler. Wheeler Decl. ¶ 13. These are "back office" facilities that involve sales, customer care, and general network operations (*id.*), areas that are not primary sources of any evidence relevant to this case. There are no employees in these locations who are reasonably expected to be relevant witnesses.[3]

**B.    Plaintiffs and the Location of Their Documents and Witnesses**

All 53 Plaintiffs are subsidiaries of either Warner Music Group Corp. ("WMG") or Sony Group Corp. ("SGC"). Doc. 3; Anderson Decl. ¶¶ 2-4; Ex. 1. WMG's headquarters is at 1633 Broadway, New York, NY, 10019. Anderson Decl. ¶ 2. SGC's United States headquarters is at 25 Madison Avenue, New York, NY 100010. *Id*. ¶ 3. The Complaint states that 35 Plaintiffs have their principal place of business in New York, 14 in California, 1 in Florida, 1 in Tennessee, and 1 in the United Kingdom. Compl. ¶¶ 16-73. Not a single Plaintiff is domiciled or has its principal place of business in Texas. *Id*. These entities are named because they purportedly hold the rights to the works asserted. *Id.* at Exs. A & B. And many of the Plaintiffs' relevant employees likely are employed by operating companies in New York. For example, in other, similar, copyright litiga-tion against Internet Service Providers ("ISPs"), many of the individuals who the SGC entities have stated have relevant information reside in the New York area, including Dennis Kooker, Jeff Walker, Wade Leak, Neil Carfora, Michael Abitbol, and Audrey Ashby. Anderson Decl. ¶¶ 27, 71, 72. And in other, similar, copyright litigation, many of the individuals who the WMG entities have stated have relevant information reside in the New York area, including Jon Glass and Matt Flott. *See id.* ¶ 71, 72. Further, based on their job descriptions, the following New York-based individuals who work for the WMG entities likely have relevant information: Julie Greenwald,

---

[3] Altice also has retail stores throughout the country, including Texas, but nothing relevant takes place in these stores. Wheeler Decl. ¶ 14.

Craig Kallman, Eric Levin, John Beddia, Paul Robinson, Trent Tappe, and Michelle Stallone. *Id.* ¶¶ 9-11, 14, 17, 19, 20, 22, 23, 32-37, 39.

### C.     The Locations of Third-Party Witnesses

There are more former Altice witnesses now than there were when the transfer decision was made in the *BMG* Case. The *BMG* plaintiffs noticed the deposition of three Altice employees who have left the Company since the complaint was filed in that case. Anderson Decl. ¶¶ 95; Wheeler Decl.¶ 10. The *BMG* plaintiffs also subpoenaed five former Altice employees. Anderson Decl. ¶¶ 96. In total, there are four former relevant Altice employees who were noticed for deposition or subpoenaed for deposition in the EDNY's absolute subpoena power. *Id.* ¶¶ 95-96. But no testimony has yet to be obtained or is scheduled to be obtained, from any witnesses in Texas.

Plaintiffs' agent that is responsible for the notices of alleged direct infringement is OpSec Online, LLC ("OpSec")—a Delaware corporation with its principal place of business in Idaho. Compl. ¶¶ 98-99; Anderson Decl. ¶ 59 & Exs. 87, 88. Audible Magic Corp. ("Audible Magic") was used to verify OpSec's data. It is a Delaware corporation with its principal place of business in Los Gatos, CA. Anderson Decl. ¶ 61 & Exs. 90, 91. Plaintiffs' industry representative, which manages OpSec and coordinates anti-piracy efforts, is the Recording Industry Association of America ("RIAA"). It is based in Washington, D.C. *Id.* ¶ 62 & Ex. 94. And the defunct Center for Copyright Information (CCI), which developed an inter-industry standard between ISPs and copyright owners for handling such notices, was also based in the D.C. area. *Id.* ¶ 64 & Ex. 97.

### III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). If the transferee district would be an appropriate venue, a court considers a list of eight private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*"). A plaintiff's choice of venue is not a factor. The deference afforded to the plaintiff's choice is reflected in a defendant's burden to demonstrate that the transferee venue is "clearly more convenient" than the plaintiffs' chosen venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Yet this "deference . . . is mitigated by [a plaintiff's] choice to sue away from home and in a district that is unrelated to [the] lawsuit." *Mini Melts, Inc. v. Uniworld Corp. WLL*, 2008 WL 4441979, at *5 (E.D. Tex. Sept. 25, 2008).

## IV.   ARGUMENT

### A.   This Case Could Have Been Brought in the EDNY.

The EDNY is a proper transferee district, and this case could have been brought in the EDNY. The EDNY has subject matter jurisdiction because the case arises under federal law. Compl. ¶ 8; 28 U.S.C. §§ 1331, 1338. Altice is headquartered in the EDNY, so there would be personal jurisdiction and proper venue. 28 U.S.C. §§ 1400(a), 1391(c).

### B.   Both the Private and Public Interest Factors Heavily Favor Transfer to the EDNY.

As demonstrated below, the EDNY is clearly more convenient than the EDTX, when considering the eight private and public interest factors.

#### 1.   The relative ease of access to sources of proof weighs in favor of transferring this case because the bulk of evidence will come from the EDNY with none in the EDTX.

"The first factor focuses on the location of 'documents and physical evidence relating to the [case].'" *TikTok*, 85 F.4th at 358 (citation omitted).

This factor weighs in favor of transfer because the bulk of the evidence is in the EDNY. In "infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, so the place where the defendant's documents are kept weighs in favor of transfer to that location." *Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc.*, 2016 WL 4424967, at *2

(E.D. Tex. July 21, 2016) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "[T]he location of [a party]'s documents tends to be the more convenient venue" because "[i]t is presumed that the bulk of the discovery material related to a corporate party is located in that party's corporate headquarters." *Net Navigation Sys., LLC v. Extreme Networks, Inc.*, 2014 WL 5465449, at *3 (E.D. Tex. Oct. 27, 2014) (citing *In re Genentech, Inc.*, 566 F.3d at 1345, and *In re Acer Am. Corp.*, 626 F3d 122, 1256 (Fed. Cir. 2010)). That is the case here for both parties.

As explained, the relevant Altice custodians are based in the EDNY with other EDNY-based employees who are responsible for the bulk of relevant documents, data, and information. *See* Wheeler Decl. ¶¶ 7-8, 12. This information includes (1) internal documents regarding Altice's relevant policies and procedures, emails, and other information; (2) source code and related technical information; (3) financials; (4) the notices of alleged copyright infringement; (5) Altice's actions taken with respect to those notices, including regarding subscriber account status; (6) data generated by the dedicated team that handles notices and communicates with users; and (7) subscriber account information, including the data necessary to determine which subscriber was linked to which IP address at any point in time. *See id*. ¶¶ 7, 12. These are the types of documents that Plaintiffs point to in the Complaint. *See* Compl. ¶¶ 3, 92, 103, 104. These are also the types of documents Plaintiffs and related plaintiffs have relied on in other cases. *See* Anderson Decl. ¶¶ 65-67. And, importantly, all these documents were generated in, and are now available in, the EDNY where they are managed by Mr. Ziegler or other EDNY teams. *See* Wheeler Decl. ¶¶ 12.

That these documents are largely electronic does not neutralize this factor. Because the "documents relating to the . . . operation of the" alleged wrongdoing were "generated in" the EDNY, this is a fact that "favors transfer even if [the alleged infringer] in theory could offer access to that information" in the EDTX. *See In re Apple Inc.*, 2022 WL 1676400, at *1 (Fed. Cir. Apr.

– 8 –

2022). Here, the key data for this case were generated by a few, select individuals who are all in the EDNY. *See* Wheeler Decl. ¶¶ 8-9. In *TikTok*, the Fifth Circuit was clear that when, as here, "only a select few individuals have access to the key non-witness evidence in th[e] case," that fact weighs in favor of transferring the case to where those employees are located. *See* 85 F.4th at 359 n.6. Importantly, in *TikTok*, "[t]here [were] no employees in the Western District of Texas who" had access to the key data outlined above. *Id.* at 359. And while it "is possible" to bring electronic evidence to Texas, the Fifth Circuit has clarified that is not what matters because "the question under the first factor is '*relative* ease of access, not *absolute* ease of access.'" *Id.* (citation omitted).

Thus, this factor favors transfer because it "is relatively easier to access . . . the [relevant data] in the" EDNY—where "a majority of the [relevant] team is based"—than in the EDTX, "where the [relevant data] can be accessed only by bringing far-flung individuals into the district." *Id*. Indeed, other courts have recently recognized that "under current precedent of *Planned Parenthood* and *TikTok*," having electronic documents in the transferee district weighs "slightly in favor of transfer" even if the documents "are equally accessible in either forum." *Holloway v. City of Fort Worth*, 2024 WL 96666, at *5 (E.D. Tex. Jan. 9, 2024). Since *TikTok*, this Court has also recognized that "the greater amount of evidence in" the transferee district "tips the balance slightly in favor of transfer" even with the presence of a single store in this District, because of the relative access to sources of proof. *See Athalonz LLC v. Under Armour, Inc.*, 2023 WL 8809293, at *3 (E.D. Tex. Dec. 20, 2023) (Gilstrap, J.). This factor supports transfer.

> **2.    The availability of compulsory process weighs in favor of transfer-ring this case because the EDNY has subpoena power over non-party witnesses that the EDTX does not.**

"The second factor focuses on 'the availability of compulsory process to secure the attend-ance of witnesses.'" *TikTok*, 85 F.4th at 360 (citation omitted).

This factor supports transfer because the EDNY has absolute subpoena power over several potentially relevant individuals. To date, the *BMG* plaintiffs have sought the deposition of four former Altice employees in the EDNY's absolute subpoena power: Keith Agabob, Marian O'Hagan, Nodir Nazarov, and Robert Egan. Anderson Decl. ¶¶ 95-96. Three of these employees were employed by Altice when the motion to transfer was denied in *BMG*. Wheeler Decl. ¶ 10. But now that they are former employees, for purposes of this analysis, they are presumed unwilling to testify. *Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*, 2022 WL 965394, at *3 (E.D. Tex. Mar. 30, 2022) ("[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor.") (citation omitted). This is because it is "highly unlikely that" a witness would "willingly offer testimony that could impugn [a] business partner"—or, here, a former employer. *See Athalonz*, 2023 WL 8809293, at *7.

While this Court concluded in *BMG* that relevant testimony *may* come from non-party witnesses in Texas, based on arguments proffered by the *BMG* plaintiffs, that has not come to fruition. Indeed, to date (with only two months left in fact discovery), no testimony has yet to be obtained, or is scheduled to be obtained, from any witnesses in Texas. Put simply, there is no one in Texas with relevant information about the issues in this case, which "necessarily tips towards transfer." *Athalonz*, 2023 WL 8809293, at *8 (citation omitted).

Moreover, several of Plaintiffs' former employees are likely in the absolute subpoena power of EDNY, and would thus presumed unwilling to voluntarily testify. It is "reasonable to assume" that Plaintiffs' former employees "reside within" and are subject to compulsory process in the EDNY because that was where they were previously listed to have resided in other cases. *See Network Prot. Scis., LLC v. Juniper Networks, Inc.*, 2012 WL 194382, at *5 (E.D. Tex. Jan. 23, 2012). This further supports transfer to the EDNY.

     **3.**     **The cost of attendance for willing witnesses weighs in favor of transferring this case because the bulk of witnesses are in the EDNY and more than 100 miles from the EDTX.**

"The third factor focuses on 'the cost of attendance for willing witnesses.'" *TikTok*, 85 F.4th at 361 (citation omitted). This Court must use "a '100-mile threshold' in assessing this factor." *Id.* The Fifth Circuit has explained that it "'is more convenient for witnesses to testify at home[,]' and 'additional distance means additional travel time . . . meal and lodging expenses' and time 'witnesses must be away from their regular employment.'" *Id.* Thus, when "the 'bulk of relevant witnesses'"—party or non-party—are in the transferee district, "it is indisputable" that the transferee district "is a clearly more convenient venue for most relevant witnesses in the case" and concluding otherwise would be "a clear abuse of discretion." *Id.* at 361–62.

As in *TikTok*, this Court's "analysis of this factor should [] end[] with its recognition that 'the bulk of relevant witnesses [are]'" in the transferee district. *See id.* at 362. Indeed, "it is 'clear that the combination of multiple parties being headquartered in or near the transferee venue . . .  is an important consideration." *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, 2012 WL 194370, at *4 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.). And, as outlined above, the overwhelming majority of the parties are headquartered in New York, where most of the witnesses are based. Anderson Decl. ¶¶ 6-58. Thus, because most potential witnesses are in the EDNY, it "is a clearly more convenient venue for most relevant witnesses in this case." *TikTok*, 85 F.4th at 361–62. And "it is reasonable to conclude that the numerous party witnesses of a majority of the [parties] will avoid material inconvenience if this case is transferred to the" EDNY. *See Voxpath*, 2012 WL 194370, at *3.

Transfer would also make attending this litigation far more convenient for any of Altice's and Plaintiffs' former employees who elect to testify. "The convenience of non-party witnesses . . . is the more important factor and is accorded greater weight in a transfer of venue analysis." *Id.* (citation omitted). And while some nonparties are dispersed around the country, *more* nonparties

are in New York. Anderson Decl. ¶¶ 27, 59-72. Thus, "it would be more convenient for party and nonparty witnesses to attend trial in the" EDNY because "there are ***more*** witnesses"—party and nonparty—"located in the transferee district who will be inconvenienced if the case is *not* transferred." *Voxpath*, 2012 WL 194370, at *5 (bold emphasis added). And for the third parties like OpSec, Audible Magic, the RIAA, and CCI, which are outside New York, it will be more convenient to travel to the EDNY than to the EDTX when accounting for travel time, logistics, and flight availability. Anderson Decl. ¶¶ 86-91. At minimum, they "will experience no more inconvenience by traveling to [the New York area] than Marshall." *Voxpath*, 2012 WL 194370, at *5.

As in *TikTok*, the presence of a few non-New York witnesses—none of whom are in the EDTX—"cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas." 85 F.4th at 361–62 (citation omitted).

> **4.**     **The lack of practical problems weighs in favor of transferring this case because this case just started.**

"The fourth factor considers 'all other practical problems . . . .'" *TikTok*, 85 F.4th at 362. This factor "slightly favors transfer" because "[t]his case is in an early stage," "[n]o hearings have been held and the parties have exchanged no formal discovery." *In re Marquette Transp. Co. Gulf-Inland, LLC*, 2012 WL 2375981, at *2 (S.D. Tex. June 21, 2012).

> **5.**     **The administrative difficulties from court congestion factor is neutral because of the docket efficiency in the EDNY and EDTX.**

"The fifth factor considers 'the administrative difficulties flowing from court congestion." *TikTok*, 85 F.4th at 363 (citation omitted). "The focus is on 'docket efficiency.'" *Id.* (citation omitted). This factor is neutral. While the EDTX's average time to trial is less than the EDNY's (EDTX at 19 months and EDNY at 62.1 months), the average time from filing to disposition is less for the EDNY (EDNY at 5.1 months and EDTX at 8.4 months). *See* U.S. District Courts, Combined Civil and Criminal Federal Court Management Statistics (Sept. 30, 2023). Moreover, looking at

"Weighted Filings," the EDNY is more efficient than the EDTX (EDNY at 594 cases and EDTX at 660 cases). *See id.* Thus, this is not a case where "docket efficiency can be reliably estimated." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022). Because the comparison between the docket efficiency between the EDTX and EDNY is "speculative," this factor "should be found to be neutral in this venue analysis." *Mears Techs., Inc. v. Finisar Corp.*, 2014 WL 1652603, at *4 (E.D. Tex. Apr. 24, 2014) (Gilstrap, J.).

> **6.    The local interest in having localized interests decided at home weighs in favor of transferring this case because the place of the alleged wrong is in the EDNY, not the EDTX.**

"The sixth factor considers 'the local interest in having localized interests decided at home.'" *TikTok*, 85 F.4th at 363 (citation omitted). "Indeed, the place of the alleged wrong is one of the most important factors in venue determinations." *TikTok*, 85 F.4th at 364 (citation omitted).

The place of the alleged wrong here is not in Texas (let alone the EDTX), where some of Altice's users who are the subject of Plaintiffs' notices are alleged to be located. The place of the alleged wrong is in New York—where Plaintiffs *sent* their notices, where Altice *received* those notices, where it developed business policies relating to handling those notices, and where it purportedly benefitted from those decision. Critically, it is also the place where Plaintiffs purportedly experienced their alleged harm. *See* Compl. ¶¶ 3, 92, 103, 104, 113, 125. The notion that the EDTX has a localized "interest in this [copyright infringement] case because" Plaintiffs allege sporadic alleged instances of infringement by a subset of users of Altice's network "in Marshall . . . stretches logic in a manner that eviscerates the public interest that this factor attempts to capture." *Volkswagen II*, 545 F.3d at 318. This is because "[i]nterests that could apply virtually to any judicial district or division in the United States, . . . are disregarded  . . . ." *Voxpath*, 2012 WL 194370, at *6 (quotes omitted).

Plaintiffs' focus on Altice's provision of internet in Texas does not establish a localized interest. They do not allege that they directed their notices only at Texas. Nor could they; their allegations emphasize that "BitTorrent has been and continues to be used widely as a vehicle to infringe content online," and that Altice "markets and sells high-speed Internet service to consumers nationwide." Compl. ¶¶ 3, 92. Just because some Texas users of Altice's network are alleged to have infringed, that "does not establish an actual local interest in this District because these allegedly infringing [acts] almost certainly . . . [occur] from [Defendants]' users across the nation." *Word to Info, Inc. v. Facebook, Inc.*, 2015 WL 13870507, at *5 (N.D. Tex. July 23, 2015). Indeed, aside from pointing out alleged infringement in Texas, the Complaint does "absolutely nothing . . . to indicate that the people of Marshall, or even the Eastern District of Texas, have any meaningful connection or relationship with the circumstances of these claims." *Volkswagen I*, 371 F.3d at 206.

In stark contrast, the EDNY has a meaningful connection and direct relationship with the underlying circumstances of these claims, which is paramount given that the focus for this factor is on "the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364 (citation omitted). As discussed, the Complaint makes it clear that all the events that gave rise to the suit revolve around Altice's corporate actions. *See* Compl. ¶¶ 3, 92, 103, 104, 113, 125. These alleged acts took place in the EDNY. Wheeler Decl. ¶ 7.

In addition to being the location of Altice's decisionmakers, where most of Altice's employees are based, and where Plaintiffs are based and experienced their purported harm, the EDNY clearly has a localized interest in the resolution of a major dispute between one of the nation's largest ISPs and two of the largest music companies in the world—all of which are based in New York with thousands of employees in New York. New York is the major locus for the music industry. Indeed, the U.S. Bureau of Labor Statistics has reported that New York leads the nation

with the highest published employment for Musicians and Singers. Anderson Decl. ¶ 92. The New York City Mayor's Office has reported that "New York City is home to one of the world's largest – if not the largest – and most influential music ecosystems, supporting nearly 60,000 jobs, accounting for roughly $5 billion in wages, and generating a total economic output of $21 billion[.]" *Id*. ¶ 93. The State of New York and these New Yorkers "have a significant interest" in the resolution of this case, as evidenced by the fact that New York is "the Plaintiff[s'] residence" and the location of many witnesses for both parties—and these are "[i]mportant considerations" that cannot be discounted. *See Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022).

### 7. The familiarity of the forum factor is neutral because both the EDNY and EDTX are equally capable of resolving this suit.

"The seventh factor considers the current district's 'familiarity with the law that will govern the case.'" *TikTok*, 85 F.4th at 365 (citation omitted). "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" *Ibid*. There is nothing arcane about copyright law, as all federal courts are equally equipped to handle such cases. *See, e.g.*, *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, 2017 WL 4076052, at *5 (E.D. Tex. Sept. 14, 2017). It would be error for a court to "assum[e] that it was more capable at applying [copyright] law than are the judges of [other Districts]" without there being any "exceptionally arcane aspects of [copyright] law governing [the Plaintiffs'] . . . claims." *TikTok*, 85 F.4th at 366.

### 8. The avoidance of problems of conflict of laws factor is neutral because there are no conflict of law issues.

"The eighth factor focuses on "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *TikTok*, 85 F.4th at 366. This factor is neutral.

## V.   CONCLUSION

For these reasons, Altice respectfully requests that the case be transferred to the EDNY for the convenience of the parties and witnesses and in the interest of justice.

Dated: January 29, 2024

Respectfully submitted,

By: */s/ Michael S. Elkin*

Wesley Hill
State Bar No.: 24032294
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400
wh@wsfirm.com

Thomas M. Melsheimer
State Bar No.: 13922550
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(314) 453-6500
tmelsheimer@winston.com

Sean H. Suber*
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-5600
ssuber@winston.com

Clement S. Roberts
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94015
(415) 773-5700
croberts@orrick.com

Michael S. Elkin*
Krishnan Padmanabhan*
Sean R. Anderson*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
melkin@winston.com

Jennifer A. Golinveaux*
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 9411
(415) 591-1506
jgolinveaux@winston.com

Diana Leiden*
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1700
dhleiden@winston.com

Christopher J. Cariello*
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000
ccariello@orrick.com

Mark S. Puzella*
ORRICK HERRINGTON & SUTCLIFFE LLP
222 Berkely Street, Suite 2000
Boston, MA 02116
(617) 880-1801
mpuzella@orrick.com

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

*\*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have con-

sented to electronic service are being served with a copy of this document via the Court's CM/ECF

system per Local Rule CV-5(a)(3) on January 29, 2024.


*/s/ Michael S. Elkin*



**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendants has complied with the meet

and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference

required by Local Rule CV-7(h) was conducted on January 23, 2024, by videoconference between

Michael S. Elkin and Jeffrey M. Gould. No agreement could be reached, and the discussions have

conclusively ended in an impasse, leaving an open issue for the court to resolve.


*/s/ Michael S. Elkin*