# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS INC. et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 2:23-cv-00576-JRG-RSP |
| ) | |
| ALTICE USA, INC. AND CSC ) | |
| HOLDINGS, LLC, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO ALTICE'S MOTION TO
COMPEL DOCUMENTS PURPORTEDLY RELEVANT TO
<u>STATUTORY DAMAGES FACTORS (DKT. 74)</u>**

I.      **INTRODUCTION AND BACKGROUND**

This case concerns widespread infringement of Plaintiffs' copyrighted works on Altice's network, and what Altice knew and did about it. Altice told this Court that "the bulk of evidence is expected to be in the possession of [Altice]." Dkt. 76 at 3. But Altice's Motion to Compel (Dkt. 74) seeks broad discovery into Plaintiffs' confidential matters beyond any relevant issues and years before the Claims Period commencing in Dec. 2020. Altice asks the Court to compel 24 categories of documents, including, for example, "all documents" concerning valuations of Plaintiffs' vast music catalogs without limit on time, despite the works in suit comprising a small fraction of those catalogs; Plaintiffs' financial and contractual relationships with recording artists and songwriters ("Artists") having nothing to do with this case or the works in suit; and Plaintiffs' unrelated anti-piracy and enforcement activities on all types of piracy, including well before the Claims Period.

This material goes well beyond what has been produced in other ISP cases. And Altice fails to show how this wide-ranging and invasive discovery into sensitive areas of Plaintiffs' business is relevant to a case about *Altice's* infringement of a *fraction* of Plaintiffs' complete catalog of copyrighted works. Altice claims this discovery relates to "a proper measure of statutory damages." Mot. 1. But Altice misstates the factors considered on statutory damages and, tellingly, fails even generally to associate most requests with an applicable factor. As explained below, factors considered for statutory damages overwhelmingly focus on the infringing *defendant's* conduct. Altice's requests focus entirely on *Plaintiffs'* conduct. The effect, if not intent, is to force Plaintiffs to expend disproportionate time and money searching for documents that are irrelevant, highly sensitive, and would distract from relevant issues. Plaintiffs have agreed to produce substantial discovery regarding relevant issues, including their harm from Altice's infringement, the value of and revenue generated by the works in suit, and enforcement and mitigation efforts tied to Altice's infringement. No more is warranted.

1

II.  **ARGUMENT**

Altice's argument that the requested documents relate to five factors for determining statutory damages is not supported.[1] Mot. 2-3. Altice relies on *Better Keiki, LLC v. MairicoDirect*, 2018 WL 5305571 (E.D. Tex. Aug. 29, 2018), but the case undermines Altice's argument. First, it is a trademark and unfair competition case (not a copyright case) granting a default judgment. *Id.* at *1. Second, it never mentioned the factors Altice argues most—circumstances of the infringement and mitigation. *See id.* at *6. Third, nearly all the statutory damages factors listed focus on the *infringing defendant's* conduct. *Id.* Altice's requests focus entirely on *Plaintiffs'* conduct.

Altice claims many requests are relevant to the "circumstances of the infringement." While some courts consider that factor, uniformly it focuses on *defendant's* conduct. Altice's cited cases (Mot. 6) are in accord. *See Energy Intel. Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 269 (5th Cir. 2020) (considering "the circumstances of [the defendant's] infringement"); *R A Guthrie Co. v. Boparai*, 2021 WL 1148957, at *10 (E.D. Tex. Mar. 1, 2021) (same). Lack of relevance and proportionality command denial here. *See Archer v. Kennedy*, 2022 WL 17069122, at *2 (N.D. Tex. Nov. 16, 2022) (denying motion to compel, in part, on proportionality grounds).

A.  **Altice's demand for documents purportedly concerning Plaintiffs' harm and the value of the copyrights should be denied (RFPs 77, 79, 93, 96).**

Altice contends several requests are relevant to Plaintiffs' harm and the value of the copyrights at issue. Mot. 2. Whether "value" of copyrighted works should be considered in assessing statutory damages is unsettled.[2] Regardless, Plaintiffs already agreed to produce documents

---

[1] The five factors Altice points to are: (i) the value of the copyrights; (ii) the circumstances of the infringement; (iii) Plaintiffs' actual harm from any alleged infringement; (iv) Plaintiffs' failure to mitigate that harm; and (v) the need for general deterrence. Mot. 1.

[2] During the 2022 trial in the close case of *UMG v. Grande Comm'ns Networks LLC*, 17-CV-00365 (W.D. Tex) ("*Grande*"), the court declined to instruct the jury that it may consider the value of the copyrights. *See Grande*, Dkt. 474 at 1924:2-1926:17 (argument); Dkt. 449 at 22-23 (instructions).

2

regarding harm from Altice and its subscribers' infringement, and the same "value" information produced in other ISP cases—including discovery on the revenue they have realized over the last five years from each asserted work. This is the closest and most current per-work "value" information Plaintiffs have.[3] Unsatisfied, Altice seeks group- and catalog-wide valuations involving other works, and sensitive distribution agreements with third parties. Both should be denied.

*Valuations (RFP 79)*. Altice seeks "all" documents concerning valuations of the asserted works across all time. Plaintiffs told Altice that they do not value individual works in the ordinary course. Altice now demands "any valuations of groups of works that include the works-in-suit," such as a songwriter's collected works or an acquired catalog, if just one work-in-suit is included. The relationship between that aggregate information and the asserted works is attenuated at best, and far less telling of each work's value than the actual revenue generated by them, which Plaintiffs are producing (RFP 93). The disproportionate burden also cannot be overstated. Plaintiffs would have to locate and evaluate every valuation in (or of) their businesses to figure out if they involve any of the roughly 10,000 works in suit.

*DSP agreements (RFP 96)*. Altice seeks agreements with digital service providers ("DSPs"), such as Spotify or Apple, supposedly as evidence of the value of the asserted works. Mot. 4-5. Altice does not attempt to explain how those agreements, which are bulk in nature, bear on the value of specific works. The agreements are also highly sensitive and subject to strict notice and confidentiality provisions, as the Court is aware from the *BMG* case.[4] The Motion is also

---

[3] This resolves RFP 93 seeking track-level revenue by channel. Plaintiffs have told Altice they do not have documents quantifying their losses from infringement or itemized expenses per work.
[4] *See BMG Rights Mgmt et al. v. Altice USA, Inc.*, No. 2:22-CV-471-JRG, Dkt. 110 (providing 30 days for the DSPs to participate to ensure adequate protection); Dkt. 133 (Addendum To Protective Order For Information Related To Third Party Digital Service Providers).

3

premature as Plaintiffs told Altice repeatedly that they were open to a proposal for addressing the confidentiality issues cooperatively. Plaintiffs still await Altice's proposal.

***Retail costs to consumer (RFP 77)***. Altice's Exhibit includes this request, but its Motion does not. It seeks documents showing consumers' retail costs to download a single copy of each asserted work from Dec. 2020 through Dec. 2023. But the consumer cost for a download is not a mark of the work's "value" to Plaintiffs and Altice makes no attempt to explain relevance. Plaintiffs do not set retail prices (DSPs do), and Plaintiffs do not have this information. The request requires Plaintiffs to visit every distribution service offering downloads and attempt to confirm the prices for each of roughly 10,000 works over a four-year period. Altice can equally do that.

**B.    Altice's request for documents concerning Plaintiffs' relationship with Artists and motivation for this lawsuit should be denied (RFPs 11, 106, 107, 110, 111).**

Altice next seeks discovery on irrelevant but personal and sensitive aspects of Plaintiffs' business: their relationships with Artists.[5] Despite their breadth, Altice glosses over these requests (Mot. 5-6) and for good reason—they have no bearing on statutory damages and are overbroad.

Altice contends that because Plaintiffs bring this lawsuit, in part, to vindicate the rights of Artists, anything related to their Artists is relevant to statutory damages. Mot. 5-6. But again, Altice fails to explain relevance to determining statutory damages. Permitting discovery into any contract dispute between Plaintiffs and their thousands of Artists would create a massive, unnecessary, and wholly irrelevant sideshow. Plaintiffs' entire business involves working and contracting with

---

[5] These requests seek "All Communications" concerning contractual disputes, regardless of the Artist, subject of the dispute, whether or not the Artist's works are at issue in the case, and without limit on time (RFP 110); "All Documents and Communications" regarding copyright litigation as a source of revenue (RFP 105); documents regarding Plaintiffs' distribution of (or intent to distribute) litigation proceeds from this or *any other ISP case* to artists and songwriters (RFPs 106-107); the royalty rate for each of the thousands of Artists of the works in suit (RFP 11); and all royalty payments made to every Artist in Plaintiffs' entire catalogs for the last six years (RFP 111).

4

Artists. Even trying to identify responsive documents would require reviewing every communication with every Artist for all time across Plaintiffs' substantial enterprises. The disproportionate burden is self-evident. And this information has no relevance. How Plaintiffs pay their Artists—including the rates, amounts, or disputes over them—has nothing to do with Altice's infringement, Altice's profits from infringement, Plaintiffs' losses, or deterring Altice and others.[6]

      C.    **Altice's request for mitigation-related discovery should be denied (RFPs 19-24, 53, 78, 84, 86-89, 114).**

Altice moves to compel 14 categories regarding Plaintiffs' antipiracy and enforcement efforts.[7] Altice contends these documents are relevant to "the circumstances of the infringement," including Plaintiffs' harm and mitigation efforts. Mot. 6. Altice is wrong.

*First*, as explained above, *supra* at 2, "circumstances of the infringement" concerns the infringer's (i.e., Altice's) conduct, not Plaintiffs'. But all 14 categories concern Plaintiffs' conduct.

*Second*, Altice misstates mitigation and its application here. The case Altice relies on "h[e]ld that mitigation is not an absolute defense to statutory damages under the Copyright Act." *Kayne Anderson*, 948 F.3d at 275. Because statutory damages "serve purposes that include deterrence," they "are therefore distinct from the type of damages that are typically calculated according to rules of mitigation." *Id.* at 274. Unlike statutory damages, mitigation "applies to post-injury

---

[6] While not related to statutory damages, Plaintiffs are willing to produce "[d]ocuments sufficient to show [their] plans, if any, to distribute any potential proceeds from this Action to artists and songwriters" (RFP 107).

[7] These requests concern: Plaintiffs' strategies and efforts to protect and enforce their copyrights generally from all piracy, the outcomes of such efforts, and the amount spent in the last 10 years, not limited to the infringement at issue or even peer-to-peer ("P2P") infringement (RFPs 19-23, 78, 114); security practices and technologies to mitigate infringement, not limited to the infringement at issue or even P2P (RFPs 24, 87, 88); and an assortment of irrelevant and overbroad requests including documents regarding Plaintiffs' ability to "distinguish residential ISP subscribers from other types of subscribers" (RFP 53); all infringement notices sent to *other* ISPs addressing any of the works in suit (RFP 84); all communications with BitTorrent, Inc. (RFP 86); and all communications relating to lawful distribution of the asserted works (RFP 89).

5

consequential damages," such as "[a]ctual damages and defendant's profits." *Id.* Here, as in *Kayne Anderson*, Plaintiffs do "not seek such damages." *Id.* Indeed, "a plaintiff seeking statutory damages under the Copyright Act need not prove actual damages" at all, *Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 70-71 (1st Cir. 2013), and "there is no requirement that statutory damages be pegged to actual damages." 6 Patry on Copyright § 22:192.25; *see also Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1372 (D. Kan. 2018) ("[A] plaintiff's failure to mitigate damages is not relevant to a statutory damages award calculation.").

Separate from its holding, the *Kayne Anderson* court noted that, "[a]s jury instructions were being finalized, [defendant] conceded that mitigation could be a 'limiting factor' in assessing statutory damages." 948 F.3d at 268. Unsurprising, the court said in *dicta* that the trial court did not err in so instructing the jury. *Id.* at 275. Altice takes too much from this *dicta*. It did not establish a rule of general applicability and does not render broad mitigation discovery appropriate here. At most, it supports the uncontroversial point that when "a party fails to object with specificity to a proposed instruction, the right to challenge the instruction on appeal is waived." *Eastman Chemical Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014).

Moreover, the facts on mitigation in *Kayne Anderson* are distinct from those here. In *Kayne Anderson*, the plaintiff had a "wait, don't warn" business model and "sat on its hands" for seven years after learning of infringement. 948 F.3d at 269. Here, Plaintiffs engaged a vendor to monitor for infringement and send tens of thousands of notices to Altice in real-time so that Altice—the only party with knowledge of the direct infringers' identities—could do something to stop it. The vendor has produced (or is producing) all those notices and related evidence of infringement.

*Third*, "the 'duty to mitigate' refers to methods of apportioning damages in light of a plaintiff's reasonable efforts to reduce loss *after* an injury occurs, not before." *Id.* at 274 (emphasis in

6

original). Altice's Motion seeks documents from well before the Claims Period and unrelated to Altice's infringement or even P2P. *See, e.g.*, RFP 78 (last ten years); 53, 86-89, 114 (no date restriction). If the Court compels any mitigation-related discovery (and it should not), it should be limited to post-injury efforts to mitigate losses caused by Altice and its subscribers' infringement.

Without citation, Altice says *pre*-infringement mitigation discovery is warranted because "Plaintiffs claim that their actual damages are unquantifiable given that the works-in-suit have been circulating on P2P networks for years[.]" Mot. 7. This blatantly misrepresents why actual damages are unquantifiable *in this case*. Plaintiffs allege that Altice's conduct *after* receiving Plaintiffs' notices resulted in an unknown number of additional infringements through viral P2P networks. Because the scope of infringement is unknown, so are the damages. Accordingly, Plaintiffs have elected statutory damages, not actual damages. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231 (1952) (explaining statutory damages appropriate when actual damages are difficult to calculate).

In any event, to the extent mitigation of harm has any relevance, Altice is already receiving substantial discovery regarding: (1) Plaintiffs' harm from Altice's infringement; (2) the effect of P2P infringement on their revenue and/or profits; (3) steps taken to address Altice's infringement, including all notices sent to Altice; (4) documents and communications regarding Altice and infringement; and (5) enforcement cases against P2P websites or services for the last five years. No more is warranted.

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to deny Altice's Motion.

Dated: September 24, 2024

  /s/ William E. Davis, III

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Respectfully submitted,

/s/ Jeffrey M. Gould w/permission
William E. Davis, III

Jeffrey M. Gould (*pro hac vice*)
Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
Keith Howell (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: 202-480-2999
jeff@oandzlaw.com
matt@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan (*pro hac vice*)
Bret Matera (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
bmatera@oandzlaw.com

***Counsel for Plaintiffs***

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this September 24, 2024 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

                                                                              /s/ William E. Davis, III
                                                                              William E. Davis, III