# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS, INC., et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>ALTICE USA, INC., et al.,<br><br>   Defendants. | Case No. 2:23-cv-00576-JRG-RSP |

## DEFENDANTS' MOTION TO COMPEL INFORMATION REGARDING PLAINTIFFS' PURPORTED EVIDENCE OF DIRECT INFRINGEMENT

## INTRODUCTION

In this lawsuit, Plaintiffs seek to hold Altice secondarily liable for the infringement of more than 10,700 copyrighted works based on allegations that users of its internet access service shared those works without authorization on P2P networks like BitTorrent. Plaintiffs claim that Altice should have done more to thwart these actions despite its policy prohibiting infringement and substantial efforts to discourage its subscribers from engaging in the alleged activity.

This Motion seeks foundational discovery on the threshold showing of direct infringement that Plaintiffs must make before they can then seek to hold Altice secondarily liable. To date, Plaintiffs have failed to provide any discovery substantiating their claims. This includes documents with and regarding the third-party vendors to whom they outsourced their enforcement and evidence generating efforts, copies of the allegedly infringed works, and documents related to verification of the infringement. Plaintiffs' refusal to satisfy their most basic discovery obligations is inexcusable, particularly in light of the paucity of the fact allegations in Plaintiffs' Complaint and purported evidence bearing on direct infringement. The Motion should be granted in its entirety.[1]

## ARGUMENT

**I.   Documents Regarding Plaintiffs' Relationship with Third Parties Responsible for Generating the Evidence of Alleged Direct Infringement (Nos. 36 and 108)**

With Category Nos. 36 and 108,[2] Altice seeks documents with and about Plaintiffs' third-party agents who generated the purported evidence of direct infringement in this case, including relating to Plaintiffs' P2P enforcement programs and evidence gathering and verification efforts.

In this case, Plaintiffs' primary evidence of alleged direct infringement is email "notices"

---

[1] The categories of requested discovery at issue in this Motion are listed on Exhibit A, attached.
[2] Altice proposed limitations for each of these requests. Altice offered to limit No. 36 to documents concerning "the protection of copyright infringement generally," so as to exclude communications with these third parties that do not relate to infringement. Altice proposed to limit No. 108 to the period from January 1, 2019 to present, in order to address the claimed burden.

– 1 –

sent to Altice in which they claim that a user of Altice's network (identified only by an IP address) was observed possessing a purportedly copyrighted work. Dkt. 1 ¶ 98. Plaintiffs outsourced their evidence gathering operation to third-party agents. They instructed their trade industry representative, the Recording Industry Association of America (the "RIAA"), to hire a technology vendor, OpSec, LLC ("OpSec"), to monitor public P2P networks for users purportedly offering to share allegedly infringing files, connect with those users to record some basic information in what they refer to as an "evidence package," generate the notices regarding this perceived activity, and then email those notices to the ISP associated with the identified user's IP address. *See id.* ¶¶ 98-99. Plaintiffs used another third party, Audible Magic, Inc. ("Audible Magic"), to confirm through audio verification that the files allegedly being shared actually contained copies of their works.

As part of this process, Plaintiffs did not capture or retain any contemporaneous evidence of the alleged direct infringement—no proof of any Altice subscriber actually uploading or downloading files. *Id.* ¶ 98. Instead, Plaintiffs have said that because a P2P user *possessed* a file (as purportedly evidenced by their email notices and evidence packages), that user **may have** at some point in time also shared a part of that file with another user. *Id.*; *see also* Dkt. 38 (Plaintiffs stating that it is reasonable to "infer[]" that there must have been some distributions). Altice believes this evidence is deficient as a matter of law. Dkt. 25. As the Court recognized in sustaining the allegations, this ultimately "may be insufficient to prove direct infringement" on the merits. Dkt. 75.

Given Plaintiffs' lack of direct and contemporaneous evidence of infringement, documents sought by Category Nos. 36 and 108, which bear on the full scope of Plaintiffs' relevant relationships with the RIAA, OpSec, and Audible Magic, and the enforcement technology and methodology deployed in connection with their ISP lawsuits, are essential to Altice's understanding of the process behind the purported evidence of direct infringement. These documents would include

those relating to Plaintiffs' enforcement programs, including, for example, whether its purpose is to educate ISPs and subscribers about an issue or to generate evidence for a lawsuit, or whether reaching out to ISPs directly as opposed to sending email notices would be more effective; issues regarding technological methodologies for identifying infringement; issues regarding the reliability and accuracy of the detection systems utilized and the notices sent to Altice and other ISPs; and issues regarding why certain ISPs and copyrighted works were and were not targeted as part of the programs. These documents also bear on Plaintiffs' self-serving trial themes regarding their enforcement efforts and harms from alleged infringement. It is for these reasons that similar documents have repeatedly been produced in the other ISP cases.[3] Further, to the extent Plaintiffs assert privilege or any such documents or communications, they should be identified on a privilege log.

## II. Discovery Relevant to Altice's Ability to Verify Plaintiffs' Purported Direct Infringement Evidence (Nos. 5, 6, 17, 30 and 54 & Interrogatory No. 1)

Plaintiffs have also refused to produce basic discovery identifying the works-in-suit and the files and data relevant to assessing whether their purported infringement verification processes are accurate. This foundational discovery is essential to Altice's ability to rebut Plaintiffs' specific claims of direct infringement and has been produced in the prior ISP cases.[4]

### A. Production of and Essential Identifying Information Regarding the Works-in-Suit (Nos. 5, 6, 17 & Interrogatory No. 1)

With these requests, Altice seeks copies of Plaintiffs' works-in-suit (the files allegedly infringed) (Category Nos. 5 & 6) and basic information necessary to compare those files to Plaintiffs' purported evidence of direct infringement (the ISRCs) (Category No. 17 and Interrogatory No. 1).

---

[3] Documents responsive to similar requests have been produced in the prior cases, including *Warner Records, Inc. et. al. v. Charter Communications, Inc.*, Case No. 1:19-cv-874 (D. Colo.) ("*Charter*"), Dkts. 181, 384, and 386; *Sony Music Entertainment, Inc. et al. v. Cox Communications, Inc. et al.*, Case No. 1:18-cv-950 (E.D. Va.) ("*Sony*"), Dkt. 89.
[4] *Id.*; *see also infra*, n.5.

There is no basis for Plaintiffs' refusal to produce this information. Plaintiffs indisputably bear the burden of establishing direct infringement before proceeding on secondary infringement claims. *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2018 WL 1096871, at *3 (W.D. Tex. Feb. 28, 2018) ("There cannot be secondary infringement without direct infringement."). And in copyright cases, the production of the allegedly infringed works is foundational to this determination. *See, e.g.*, *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 146 (5th Cir. 2004).

In this case, Plaintiffs claim that audio files containing their 10,700 works-in-suit were shared without authorization on P2P networks by anonymous users of ISPs like Altice. Because Plaintiffs did not download copies (or even pieces of copies) of the allegedly infringing files from these supposed users of Altice's network, there is no direct, contemporaneous proof of any infringing file transfers. Instead, before sending any notices to ISPs, Plaintiffs claim to have downloaded copies of infringing files from P2P networks (but not necessarily from Altice subscribers), compared those allegedly infringing files to authentic copies of their copyrighted works, and for those with a confirmed "match," recorded a unique identifier for the allegedly infringing file (a so-called "hash id"). Plaintiffs then scanned P2P networks for users sharing these hash ids but did not download anything from these purportedly observed users. Based merely on that observation, Plaintiffs sent email notices to the ISPs. *See* Dkt. 1 ¶¶ 98-99. This is the evidence of direct "infringement."

Altice must be able to compare the purportedly copyrighted works identified in the exhibits to Plaintiffs' Complaint to the works allegedly shared by an Altice-connected P2P user. In response to Category No. 5, Plaintiffs have agreed to produce only a "sample" of the copyrighted works. This is insufficient. Plaintiffs must produce copies of all their alleged works-in-suit. In response to Category No. 6, Plaintiffs have also refused to produce their deposit copies with the U.S. Copyright Office. This is improper, as the deposits are copies of the registered works and evidence of

what is purported to have been infringed. *See, e.g.*, *King v. Ames*, 1997 WL 327019, at *6 (N.D. Tex. June 4, 1997). Altice requests copies of each of these sets in order to do a comparison.

With either Category No. 17 or Interrogatory No. 1, Altice also seeks information identifying the International Standard Recording Codes ("ISRCs") of the allegedly infringed works.[5] An ISRC is "a unique and permanent identifier for a specific recording."[6] For content protection and enforcement purposes, Altice understands that Plaintiffs create unique audio "fingerprints" of their works by ISRC. Plaintiffs then compare those fingerprints to files obtained from P2P networks. If there is a match, then Plaintiffs confirm the P2P file is infringing and send notices. Thus, Altice needs the ISRCs for the allegedly infringed works to confirm that the files did indeed match.[7]

### B. Works and ISPs Targeted in Plaintiffs' Notice Program (Nos. 54 and 30)

With Category No. 54, Altice seeks information showing when Plaintiffs first observed an infringing file for a work-in-suit on a P2P network. Plaintiffs have agreed to produce copies of these allegedly infringing files (the files needed to compare to the authentic copies sought by Nos. 5 and 6, discussed above), though have refused to confirm whether they have data that bears on when they first observed the file being shared on P2P networks. Altice believes Plaintiffs have responsive information in their possession, custody, or control, including about when they first began monitoring for an infringed work or when they first confirmed that a P2P file was infringing.

With Category No. 30, Altice seeks documents relating to the decision to include or exclude any ISP from Plaintiffs' notice program, including any agreements relating to the same. Altice understands from meet and confer discussions that Plaintiffs may not have excluded any

---

[5] Similar ISRC information was provided in prior ISP cases. *See, e.g.*, *Charter*, Dkt. 399 at 228.
[6] *See* https://usisrc.org/about/index.html.
[7] Altice understands that this information may be necessary for properly analyzing data that may be produced by third parties, including Audible Magic, relating to the verifications of the works-in-suit and evidence of alleged infringement proffered in this case, particularly given that audio files for relevant sound recordings often have the same artist and title but different ISRCs.

– 5 –

ISPs from their notice programs, but it is not clear whether that means they sent notices to *all* ISPs or only select ISPs (and thereby implicitly excluded some ISPs by failing to include them). During these discussions, Plaintiffs also would not confirm, and it is not clear to Altice, whether they have any agreements relating to the inclusion or exclusion of ISPs to their notice programs.

The information sought by Category Nos. 54 and 30 is relevant to key statutory damages factors and to rebut Plaintiffs' trial themes. If Plaintiffs are aware that their works have been on P2P networks for an extended period time but failed to take appropriate action, that bears on their claim for damages in that it shows a failure to mitigate. Moreover, the fact that Plaintiffs may not have sent notices to certain ISPs with users who may also have been sharing their works also is relevant for the same reason. In addition, Plaintiffs are expected to argue that Altice and its subscribers are somehow responsible for their works being shared on P2P networks and that Altice's alleged failure to stop these users has directly contributed to their harm. If Plaintiffs are aware that their works have been shared by users of other ISPs (including those to which they did not send notices), then the claim that Altice is a "but-for" cause of the infringement or harm is undermined.

### C. Chain of Custody Relating to the Verifications of the Works-in-Suit and Evidence of Alleged Direct Infringement (No. 57 & 58)

With Category Nos. 57 and 58, Altice seeks information regarding Plaintiffs' policies or practices with respect to the "creation, storage, retention, or provision of data, documentation, or evidence concerning purported copyright infringement." These are distinct from standard corporate retention policies, which Altice does not presently seek. In this case, Plaintiffs will proffer various disparate sets of data to attempt to demonstrate through circumstantial evidence that their 10,700-plus specific works-in-suit were infringed. They ask for $150,000 in damages for each of those works. To assess these claims, Altice must understand what data was (and was not) generated, what data was (and was not) preserved, and the reasons why. This information also bears on

Plaintiffs' trial themes, as they will attempt to present a narrative of vigilant and diligent enforcement and record keeping in order to strengthen their claims and heightened damages demand.[8]

### III. Plaintiffs Must Produce Information in Their Possession, Custody, or Control (Nos. 54, 57-58, and 108)

In response to multiple requests in this Motion, Plaintiffs interpose objections that the discovery is either "not in their possession," (No. 54) "was collected by third parties" (No. 57), "seeks information outside Plaintiffs' possession, custody and control since the systems and processes used to detect the infringement at issue in this case belong to third parties" (No. 58), or "can be obtained more readily and with more detail and accuracy from third parties" (No. 108).

These responses are deficient as a matter of law. *See, e.g.*, *Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, 2015 WL 13049356, at *13 (W.D. Tex. Dec. 23, 2015) (compelling production where the party is "able to command release of certain documents by the non-party person or entity in actual possession"). Plaintiffs should be ordered to produce documents in their possession, custody, or control, whether it physically resides with their outside counsel, the RIAA, OpSec, or Audible Magic.[9] To the extent that Plaintiffs are not in possession, custody, or control, they should then be compelled to certify as much so that Altice can seek it from the third parties and avoid needless further expense and delay.

### CONCLUSION

Based on the foregoing, Altice respectfully requests that the Motion be granted.

---

[8] Plaintiffs have faced complaints regarding the completeness and provenance of their evidence in prior ISP cases. *See, e.g.*, *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, Case No. 8:19-cv-710 (M.D. Fla.) ("*Bright House*"), Dkt. 695; *Charter*, Dkt. 386; *Sony*, Dkt. 738.

[9] Plaintiffs have been ordered to expand their searches where appropriate in prior ISP cases. *See, e.g.*, *Charter*, Dkt 400 at 113 (court finding that directing discovery to the plaintiffs should get discovery from third parties given the relationship); *Charter*, Dkt. 181 at 7-8 (ordering production by the plaintiffs of materials held by third parties); *Bright House*, Dkt. 709 (rulings relating to plaintiffs' discovery coordination with third parties).

Dated: September 26, 2024                                        Respectfully submitted,

By: /s/ Michael S. Elkin

| | |
|---|---|
| Claire A. Henry<br>State Bar No.: 24053603<br>WARD, SMITH & HILL, PLLC<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>(903) 757-6400<br>claire@wsfirm.com | Michael S. Elkin*<br>Krishnan Padmanabhan*<br>Sean R. Anderson*<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700<br>melkin@winston.com |
| Thomas M. Melsheimer<br>State Bar No.: 13922550<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>(314) 453-6500 | Jennifer A. Golinveaux*<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 9411<br>(415) 591-1506 |
| Sean H. Suber*<br>WINSTON & STRAWN LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601<br>(312) 558-5600 | Diana Leiden*<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071<br>(213) 615-1700 |
| Clement S. Roberts*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>405 Howard Street<br>San Francisco, CA 94015<br>(415) 773-5700 | Christopher J. Cariello*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 506-5000 |
| | Mark S. Puzella*<br>David Hosp*<br>Sheryl Garko*<br>Laura Najemy*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>222 Berkely Street, Suite 2000<br>Boston, MA 02116<br>(617) 880-1801 |

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

*Pro Hac Vice

## CERTIFICATE OF GOOD FAITH CONFERENCE

I, Michael S. Elkin, lead counsel for Defendants, participated in a call with Claire Henry, local counsel for Defendants, Matthew J. Oppenheim, lead counsel for Plaintiffs, Rudy Fink, local counsel for Plaintiffs, among other attorneys on August 21, 2024, and the parties continued these discussions on August 26, 2024, August 27, 2024, August 29, 2024, and September 13, 2024. I certify that Defendants have complied with Local Rule CV-7(h). The present motion is opposed.

<em>s/ Michael S. Elkin</em><br>
Michael S. Elkin

## CERTIFICATE OF SERVICE

      I certify that on September 26, 2024 a true and correct copy of the foregoing was filed with the Court via CM/ECF, which will send a notice of electronic filing to the parties of record.

*s/ Michael S. Elkin*  
Michael S. Elkin
