# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Warner Records, Inc., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>Altice USA, Inc., et al.,<br><br>  Defendants. | Case No. 2:23-cv-00576-JRG-RSP |

## DEFENDANTS' MOTION TO COMPEL
## PLAINTIFFS' INTERROGATORY RESPONSES

## INTRODUCTION

With this Motion, Altice requests an order compelling Plaintiffs to respond to interrogatories that seek basic information regarding their claims of direct and secondary infringement and the appropriate amount of damages should liability be established. The interrogatories seek information that is solely in Plaintiffs' possession, custody, or control, or for which Plaintiffs are otherwise the best situated to provide. Plaintiffs have objected to responding to these interrogatories on the bases of relevance, burden, and prematurity, among others. Plaintiffs' complaints, however, are entirely unfounded, as the interrogatories at issue are the most direct and efficient way for obtaining information that is core to this case. That is precisely the reason why Plaintiffs have responded to requests similar to certain of those at issue in prior ISP cases. The Motion should be granted in its entirety.

## ARGUMENT

**I.    Plaintiffs must identify their purported evidence of alleged direct infringement.**

Altice's Interrogatory No. 6 seeks foundational information bearing on Plaintiffs' burden to prove direct infringement, namely it simply asks Plaintiffs to identify the email notices of alleged copyright infringement that they claim pertain to their 10,700-plus works-in-suit. *See* Ex. A. As the Court recently recognized in sustaining Plaintiffs' claims at the pleadings stage, the evidence alleged to exist "may be insufficient to prove direct infringement" on the merits. *See* Dkt. 75. This interrogatory is aimed at ascertaining a key piece of that alleged proof.

In this case, Plaintiffs allege that they sent Altice "over 70,000 notices"—these are emails that contain some limited information, including the date and time that Plaintiffs' agent observed the Altice-connected device in possession of an allegedly infringing work, an IP address associated with that user, and the title, artist, and filename of the purportedly infringing work. Dtk. 1 ("Compl.") ¶¶ 97-98. Plaintiffs have refused to produce these notices, however, pointing instead

– 1 –

to their agent, OpSec LLC ("OpSec"). But OpSec did not produce just the notices for *Plaintiffs'* works, instead they produced *all* notices that they ever sent Altice between 2020-2023. That set contains many notices sent on behalf of entities other than Plaintiffs and for works not at issue.

Given that it is *Plaintiffs'* infringement claims are at issue in this case, of *Plaintiffs'* works, purportedly evidenced by *Plaintiffs'* notices generated by *Plaintiffs'* hired agents, and *Plaintiffs* are the only ones who know whether the works being shared by P2P users contain copies of their copyrighted music, Altice asks with this interrogatory that *Plaintiffs* identify which of their notices pertain to which of their works-in-suit. To be clear, in order to comply with Federal Rule of Civil Procedure 11, this is information that Plaintiffs would have needed to ascertain before filing suit and alleging infringement of the 10,700-plus specific works identified in their Complaint in any event. Because Plaintiffs rely entirely on their notices of alleged infringement to establish direct infringement, they must also provide this information in order to prove direct infringement on the merits, a necessary prerequisite to seeking to hold an ISP like Altice secondarily liable. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2018 WL 1096871, at *3 (W.D. Tex. Feb. 28, 2018) ("There cannot be secondary infringement without direct infringement.").

In refusing to respond to this interrogatory, Plaintiffs claim that Altice can simply perform this analysis itself with information equally available to both sides. That is not accurate. Plaintiffs take the facile position that Altice can simply compare the lists of works-in-suit attached as exhibits to the Complaint (identified by titles of sound recordings and musical compositions) to the titles contained in the metadata of the notices of alleged infringement. But there is no shared field between these data sets. In other words, the titles of the works-in-suit listed in the exhibits to the Complaint appear to be derived in part from U.S. Copyright Office registrations and other unidentified sources whereas the titles in the mass of produced notices appear to be derived from

the way that the work was purportedly verified as part of Plaintiffs' infringement evidence processes and other unidentified sources. Moreover, there is no way for Altice to confirm with certainty that merely because the titles match that the notice actually is for the purportedly corresponding work-in-suit and, in any event, there are many variations between the way that the titles appear between the two data sets, which indicates that they may be distinct works under copyright law. By contrast, Plaintiffs actually possess the information to confirm which notices pertain to which works and should be required to provide it in the form of a verified response. It is for these reasons that Plaintiffs were ordered to provide this information in prior ISP cases.[1]

Plaintiffs also claim that this request seeks premature expert analysis. That also is not accurate. Tying the works-in-suit to the notices does not require expert skill or expert opinion. The *factual* information of whether Plaintiffs' works are implicated by their notices is solely in the province of Plaintiffs or their agents (OpSec, the RIAA, or outside counsel). To the extent Plaintiffs wish to use these data in expert reports to opine as to the nature of alleged infringement, that is an entirely distinct topic and not sought by this interrogatory. *See, e.g.*, *Balsam Coffee Sols. Inc. v. Folgers Coffee Co.*, 2009 WL 4906860, at *4 (E.D. Tex. Dec. 9, 2009) (compelling response because an interrogatory did not seek expert discovery and would not prejudice later expert use).

## II.     Plaintiffs must identify how the works-in-suit were released and exploited.

Altice's Interrogatory No. 4 seeks information solely in Plaintiffs' possession regarding the works-in-suit that were first issued or released as parts of albums or compilations, and basic identifying information regarding such releases. Ex. A. Plaintiffs assert thousands of works in this case that are parts albums and registered with the Copyright Office as such. Under a plain reading

---

[1] *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, Case No. 8:19-cv-710 (M.D. Fla.) ("*Bright House*"), Dkt. 328 at 1-2; *Warner Records, Inc. et. al. v. Charter Communications, Inc.*, Case No. 1:19-cv-874 (D. Colo.) ("*Charter*"), Dkt. 181 at 24-25 & Dkt. 190 at 9-11.

of the Copyright Act, for the purpose of calculating statutory damages, "all the parts of a compilation . . . constitute one work." *See* 17 U.S.C. § 504(c)(1); *see also* U.S. Copyright Office, Circular 34 at 3 ("[A]n album that contains multiple sound recordings . . . is considered a collective work for purposes of registration" and "[a] collective work is considered a single work for purposes of calculating statutory damages."). Thus, instead of multiple, individual awards for statutory damages for the separate tracks on the albums asserted in this case, Plaintiffs should be entitled to only one. *See, e.g.*, *Cullum v. Diamond A Hunting, Inc.*, 484 F. App'x 1000, 1002 (5th Cir. 2012) (no error in finding separate photographs registered together constituted a compilation entitled to one statutory damages award). Based on the number of sound recording registrations identified in Plaintiffs' Complaint, the number of "works" for purposes of statutory damages could be reduced from approximately 5,952 to 743—a reduction of more than $781 million in potential damages.[2]

The clear language of the Copyright Act and court decisions notwithstanding, Plaintiffs and other rights holders have taken the position in other litigations that individual tracks on an album should be entitled to separate awards, citing to various decisions in which certain courts have found the nature in which the plaintiffs released and/or exploited the works to be relevant to this determination. *See, e.g.*, *Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 817-24 (E.D. Va. 2020) ("*Sony*") ("[D]efining 'compilations' within the meaning of § 504(c)(1) relies on factual support with respect to the copyrights in the marketplace. . . . The format of sale will generally delineate each work for purposes of statutory damages."). While Altice disagrees with these decisions that disregard the Copyright Act's plain language, to the extent that the Court applies a similar legal framework at the merits stage, the information sought by this interrogatory is relevant, as it bears directly on the determination of whether the works are or are not part of

---

[2] This is an estimate based on the sound recordings registered together on unique certificates.

compilations and whether the works are or are not entitled to separate awards of statutory damages. Altice would use Plaintiffs' verified responses to this interrogatory to elicit targeted testimony from their fact witnesses regarding how albums are released and exploited to support arguments that these works are parts of compilations and not entitled to separate awards. Altice also will use this information in its expert reports on damages-related issues to quantify the number of works that are entitled to separate statutory damages awards if liability is established. It is in this same context that Plaintiffs have been ordered to produce this information in prior ISP lawsuits.[3]

### III. Plaintiffs must explain when they believe Altice should be held contributorily liable.

Altice's Interrogatory No. 8 simply asks Plaintiffs to explain when they seek to hold it contributorily liable for the alleged infringement of the 10,700-plus works-in-suit. *See* Ex. A. In their Complaint, Plaintiffs allege "[t]he infringing activity of Altice's subscribers that is the subject of Plaintiffs' claims, and for which Altice is secondarily liable, occurred *after* Altice received multiple notices of each subscriber's infringing activity." Compl. ¶ 6; *see also id.* ¶¶ 10, 105, 115, 121, and 124. Altice explained in its motion to dismiss that Plaintiffs do not allege what they mean by "multiple." *See* Dkt. 25 at 19. In response, Plaintiffs merely provided the dictionary definition of "multiple" but did not explain at what point they claim Altice should be held secondarily liable. *See* Dkt. 38 at 11–12. In prior cases, Plaintiffs have taken the position that if an ISP received at least two notices relating to a subscriber, it should be held secondarily liable for that subscriber's next infringement, whenever it might occur. In other words, liability occurs at the third notice.[4]

In this case, Plaintiffs have refused to provide the point at which they believe Altice should be held contributorily liable. Nevertheless, Plaintiffs are seeking evidence that appears to be based

---

[3] *See Charter*, Dkt. 230 (under seal); *Bright House*, Dkt. 210 at 2. The overlap between the works in this case and the *Charter* and *Bright House* cases is substantial, so much of the work is done.
[4] *See, e.g., Sony*, Dkt. 639 at 788:20-22 (Plaintiffs' expert opining that he was asked to identify each "work in suit [] in a notice that is the third or later notice for a particular subscriber").

– 5 –

on their undisclosed liability theory. For example, Plaintiffs are seeking voluminous financial and billing information from Altice for subscribers who received "three or more" notices of alleged infringement, (*see* Ex. B), which, as noted, is the same construct that they have used in prior cases. Plaintiffs have refused to explain the relevance of this "three or more" to their own requests.

Plaintiffs have taken the position that they need more information from Altice to answer this interrogatory. They assert that an answer to the interrogatory pertains to *Altice's* knowledge and therefore would rely on information in *Altice's* possession. But nothing that Altice has produced or will produce bears on Plaintiffs' approach to contributory infringement in this case—i.e., at what point *Plaintiffs* claim Altice has "knowledge," and at what point *Plaintiffs* claim Altice is "materially contribut[ing]" to the alleged underlying direct infringement. *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). To be clear, Plaintiffs filed this suit with a belief as to the point when Altice should be held as a contributory infringer of the more than 10,700 works-in-suit *before any discovery was produced*. Presumably, Plaintiffs made this decision based on their notices to Altice and their understanding of when an ISP should be held liable.

Plaintiffs cannot refuse to answer this interrogatory on the basis that it is purportedly premature either. While Plaintiffs may elect to change their theory of liability as the case advances (not from any discovery produced by Altice but for other strategic reasons), that does not preclude them from answering what their theory is now. Indeed, during meet and confer discussions, Plaintiffs' counsel represented that they believe that Altice is liable after receiving just *one notice*, but they may choose to sue after the third notice. Whatever their theory is, and however it may change, that is Plaintiffs' prerogative, and they will only need to timely supplement their response.

Further, an answer to this interrogatory now will greatly aid both discovery and merits proceedings, as it will allow the parties to focus their efforts on the subset of subscriber actions

– 6 –

that matter. The parties can determine which works are eligible for secondary infringement based on Plaintiffs' chosen number-of-notices threshold; which subscribers are at issue, and collect targeted data (notice, bandwidth, and financial, for example); and Altice can determine whether it should present an alternative theory of liability, whether using a different threshold or otherwise.

**IV.  Plaintiffs must identify evidence quantifying the alleged infringement.**

Altice's Interrogatory No. 10 asks for the identification of information on how much, if any, of the allegedly infringing files were "downloaded, uploaded, or otherwise transferred" by a user while connected to the Internet through Altice's services. Ex. A. To the extent that there is evidence that shows that only a part of the file was shared by an Altice-connected user, that is responsive. To the extent that there is evidence that shows that the entirety of the file was shared by an Altice-connected user, that too is responsive. The interrogatory does not ask Plaintiffs to marshal evidence, perform any analysis on that evidence, or create information—it just requires identifying existing evidence, if any. To be clear, Altice does not believe that Plaintiffs have any evidence of any file—whether in whole or in part—being shared by any Altice-connected user. Rather, Altice understands that Plaintiffs only have the notices of alleged copyright infringement and corresponding evidence packages, which merely show an Altice-connected user possessing a file (evidence that Altice believes to be legally deficient). If Plaintiffs have any other evidence that bears on the subject of this interrogatory, it should be identified in a verified response. If Plaintiffs lack any evidence that a file was shared by an Altice subscriber using Altice's Internet service, that too should be stated, as it would undermine Plaintiffs' allegation that Altice subscribers publicly distributed the works-in-suit. *See supra* at 1 (citing Dkt. 75).

## CONCLUSION

Based on the foregoing, Altice respectfully requests that the Court grant its motion.

Dated: September 26, 2024                                                   Respectfully submitted,

By: /s/ Michael S. Elkin

| | |
|---|---|
| Claire A. Henry<br>State Bar No.: 24053063<br>WARD, SMITH & HILL, PLLC<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>(903) 757-6400<br>claire@wsfirm.com | Michael S. Elkin*<br>Krishnan Padmanabhan*<br>Sean R. Anderson*<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700<br>melkin@winston.com |
| Thomas M. Melsheimer<br>State Bar No.: 13922550<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>(314) 453-6500 | Jennifer A. Golinveaux*<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 9411<br>(415) 591-1506 |
| Sean H. Suber*<br>WINSTON & STRAWN LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601<br>(312) 558-5600 | Diana Leiden*<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071<br>(213) 615-1700 |
| Clement S. Roberts*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>405 Howard Street<br>San Francisco, CA 94015<br>(415) 773-5700 | Christopher J. Cariello*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 506-5000 |
| | Mark S. Puzella*<br>David Hosp*<br>Sheryl Garko*<br>Laura Najemy*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>222 Berkely Street, Suite 2000<br>Boston, MA 02116<br>(617) 880-1801 |

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

*Pro Hac Vice

## CERTIFICATE OF GOOD FAITH CONFERENCE

I, Michael S. Elkin, lead counsel for Defendants, participated in a call with Claire Henry, local counsel for Defendants, Matthew J. Oppenheim, lead counsel for Plaintiffs, Rudy Fink, local counsel for Plaintiffs, among other attorneys on September 13, 2024. I certify that Defendants have complied with Local Rule CV-7(h). The present motion is opposed.

*s/ Michael S. Elkin*
Michael S. Elkin

## CERTIFICATE OF SERVICE

I certify that on September 26, 2024 a true and correct copy of the foregoing was filed with the Court via CM/ECF, which will send a notice of electronic filing to the parties of record.

*s/ Michael S. Elkin*
Michael S. Elkin
