# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTICE USA, INC., et al.,<br><br>Defendants. | Case No. 2:23-cv-00576-JRG-RSP |

**DEFENDANTS' MOTION TO COMPEL DOCUMENTS FROM KEY EMAIL CUSTODIANS, DOCUMENTS RELEVANT TO THE VALIDITY OF PLAINTIFFS' COPYRIGHT REGISTRATIONS, AND DOCUMENTS CONCERNING PAYMENTS BETWEEN PLAINTIFFS AND KEY THIRD PARTIES RELATING TO DIRECT INFRINGEMENT EVIDENCE AT ISSUE**

## INTRODUCTION

This is a case brought by major music industry companies asserting claims of secondary copyright infringement against Altice and seeking more than $1.6 billion for the claimed harm caused by Altice's internet subscribers' alleged digital copyright infringement. Aside from the fact that Altice has meritorious defenses on the merits, it is clear that Plaintiffs have grossly exaggerated any claimed harm, as their businesses have actually flourished during (and before) the claims period at issue due to the exponential growth of interactive streaming that has been fostered by the widespread availability of online network connections provided by companies like Altice.

Altice seeks the production of three categories of documents with plain and obvious relevance to this case: (1) emails from key custodians involved in the development and implementation of Plaintiffs' digital strategies discussing, among other relevant topics, peer-to-peer ("P2P") infringement and its impact, or lack thereof, on Plaintiffs' businesses, which is directly relevant to Plaintiffs' allegations that P2P piracy poses an existential threat to their businesses, as well as key statutory damages factors; (2) documents substantiating the validity of certain of Plaintiffs' copyright registrations on which they rely in this lawsuit; and (3) documents concerning payments between Plaintiffs and key third parties relating to the collection and analysis of evidence used by Plaintiffs to establish direct infringement, which bear directly on the motivations and potential biases of these third parties. Because the above categories of documents are clearly relevant to the parties' claims and defenses, Altice respectfully requests that the Court compel Plaintiffs to promptly produce such documents.

## ARGUMENT

### I.      Plaintiffs refuse to produce email communications from key custodians.

Altice seeks email communications from key individuals responsible for determining and implementing Plaintiffs' digital business strategies. Documents from these custodians discussing,

among other relevant topics, the impact, or lack thereof, of P2P piracy on Plaintiffs' businesses are unambiguously relevant to the parties' claims and defenses in this case, as well as key statutory damages factors critical to a jury's assessment of damages. Notwithstanding this fact, Plaintiffs have staunchly refused to review or produce email communications for six of these individuals, irrespective of the topic. Plaintiffs' refusal stands anathema to the parties' agreed-upon ESI Order and the facts of this case. Altice therefore respectfully requests the Court compel Plaintiffs to review and produce documents from each of these individuals that bear on topics for which Plaintiffs have agreed to produce documents.

Pursuant to Paragraph 8.B of the parties' heavily-negotiated ESI Order, Altice is entitled to select five email custodians from each Plaintiff Group,[1] with the right to add two additional custodians following Plaintiffs' production of emails and other discovery. *See* Dkt. 107 ¶ 8.B. After a number of delays from Plaintiffs in providing the identities of potentially relevant individuals, Altice sent its selection of custodians to Plaintiffs on December 6, 2024. Ex. B. Plaintiffs responded the next week, refusing to search, review, or produce emails for Dennis Kooker (SME), Mark Piibe (SME), Oana Ruxandra (WMG), Natalie Madaj (WC), Eric Mackay (WC), and Tim Meade (WC), claiming that these individuals were not likely to possess documents that Plaintiffs believed were relevant.[2] *Id.*

Plaintiffs are wrong. Five out of the six contested employees are directly responsible for

---

[1] There are four Plaintiff Groups: (1) the "Warner Music Plaintiffs" as defined in paragraph 34 of the Complaint ("WMG"); (2) the "Sony Music Entertainment Plaintiffs," as defined in paragraph 43 of the Complaint ("SME"); (3) the "Warner Chappell Plaintiffs," as defined in paragraph 54 of the Complaint ("WC"); and (4) the "Sony Music Publishing Plaintiffs," as defined in paragraph 73 of the Complaint ("SMP").

[2] Plaintiffs seek to force Altice to select custodians unlikely to possess relevant email documents by identifying either duplicative custodians or employees who deal with Plaintiffs' copyright registrations or financials. In any event, Altice reserves its right to select such individuals in its supplemental list of additional custodians, pursuant to Paragraph 8.B of the ESI Order.

generating and implementing each Plaintiff's digital business strategy. Indeed, Dennis Kooker is SME's President of Global Digital Business and U.S. Sales, Mark Piibe is SME's Executive Vice President of Global Business Development and Digital Strategy, Oana Ruxandra is WMG's Chief Digital Officer and Executive Vice President of Business Development, and Eric Mackay and Natalie Madaj are Executive Vice Presidents in charge of WC's Global Digital Strategy. These individuals are therefore each intimately involved in determining how, when, and where Plaintiffs' works are exploited online, including the risks and benefits associated with the same. To the extent that P2P piracy poses a significant threat to Plaintiffs' exploitation of their works—as Plaintiffs repeatedly allege in their Complaint—then these individuals should be discussing P2P infringement. And even to the extent these individuals *do not* discuss P2P infringement, that fact, in and of itself, is relevant, as it refutes Plaintiffs' allegations and anticipated trial narrative that P2P piracy poses an existential threat to their businesses, causing huge drops in revenue, undermining Plaintiffs' ability to invest in their employees and talent, and undercutting their ability to innovate. *See, e.g.*, Compl. ¶ 108.[3]

The relevance of these custodians is further evidenced by the fact that Mr. Kooker has testified in at least one prior lawsuit brought by Plaintiffs asserting nearly identical claims of infringement against an ISP, and Mr. Kooker, Mr. Piibe, and Ms. Madaj have all testified before the Copyright Royalty Board concerning the development and growth of Plaintiffs' businesses in the digital landscape. Similarly, Ms. Ruxandra has made a number of public statements about the

---

[3] *See also Sony Music Entertainment et al. v. Cox Communications, Inc. et al.*, No. 1:18-cv-00950 (E.D. Va.), Dkt. 1 ¶ 103; *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, No. 8:19-cv-00710 (M.D. Fla.), Dkt. 1 ¶ 87; *UMG Recordings, Inc. et al v. Grande Communications Networks LLC et al*, No. 1:17-cv-365 (W.D. Tex.), Dkt. 1 ¶ 6; *Sony Music Entertainment et al. v. Cox Communications, Inc. et al.*, Case No. 1:18-cv-00950 (E.D. Va.), Dkt. 628 (Open. Statements) at 38:19-39:14; *UMG Recordings, Inc. et al v. Grande Communications Networks LLC et al*, No. 1:17-cv-365 (W.D. Tex.), Dkt. 464 (Open. Statements) at 52:4-54:14, 73:12-75:12.

modern state of the music industry and issues fundamental to or threatening its continued growth. In light of the clear relevance of each of these individuals, Plaintiffs must search for and produce emails responsive to topics for which Plaintiffs have agreed to produce documents.

Plaintiffs' refusal of the sixth individual, Tim Meade, is even further afield. Mr. Meade has been an employee of WC for over a decade and was described by WC's 30(b)(6) venue deponent as being ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. C, Dang Dep. Tr. 43:19-24. Because ▓▓▓▓▓▓▓▓ is at the heart of this case, there can be no doubt that Mr. Meade possesses emails relevant to the parties' claims and defenses. Plaintiffs' concern that Mr. Meade is in-house counsel who may possess privileged emails falls on deaf ears, as the mere fact that some emails may be privileged does not serve as a foundational bar to Mr. Meade's selection as a custodian. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2009 WL 3443563, at *10 (D.D.C. Oct. 23, 2009); *Wisk Aero LLC v. Archer Aviation Inc.*, 2022 WL 524065, at *2-4 (N.D. Cal. Feb. 22, 2022). Indeed, Plaintiffs themselves selected Altice's in-house counsel as one of their custodians. Plaintiffs cannot use privilege as both a sword to add burden for Altice and a shield to prevent the disclosure of their own relevant information.

Plaintiffs' remaining arguments concerning burden are no more persuasive. If these individuals truly do not have emails on issues concerning P2P infringement or that are otherwise relevant to the parties' claims and defenses, then Altice's proposed search terms will return few hits, posing little-to-no burden. And to the extent that search terms *do* result in a material number of hits—which would only further evidence the relevance of these individuals—then Plaintiffs are free to discuss that burden with Altice to attempt to find a volume that captures documents relevant to this case while excluding extraneous hits. The way to minimize burden is not to refuse relevant custodians outright, but rather to work cooperatively and in good faith, as the ESI Order compels,

to select appropriate search terms based on the size, complexity, and issues of this specific case.

**II.     Plaintiffs with sound recordings-in-suit that were registered as works for hire refuse to produce documents substantiating their valid possession of rights in those works (Category No. 15).**

In order to assert a claim for copyright infringement, a plaintiff must have a validly registered copyright with the U.S. Copyright Office. 17 U.S.C. § 411(a). Similarly, in order to obtain statutory damages—as Plaintiffs seek here—the copyright must be validly and timely registered either before the alleged infringement or within three months of publication. 17 U.S.C. § 412. To support their claims of infringement of more than 10,700 allegedly copyrighted works, Plaintiffs agreed to produce documents "sufficient to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit," largely in the form of registration certificates and documents otherwise purporting to demonstrate that they possessed an exclusive right during the period of alleged infringement.

Importantly, however, eighteen of the Plaintiffs in this case registered many of their sound recordings-in-suit as works made for hire. When a party registers a sound recording as a work for hire, it becomes the "author" and, accordingly, the owner for the life of the copyright. 17 U.S.C. § 201(b); *see also Easter Seal Soc. for Crippled Child. & Adults of Louisiana, Inc. v. Playboy Enters.*, 815 F.2d 323, 328 (5th Cir. 1987). Notably, by registering the works in this manner—as opposed to by virtue of an assignment—Plaintiffs do not risk the actual author (*i.e.*, the musician who recorded the song) exercising his or her statutory termination and reversion rights and reclaiming control of the copyright. *See* 17 U.S.C. § 203. To prove these work-for-hire designations on their registrations are accurate, Plaintiffs must produce an agreement that establishes that the artist did in fact create the work as a work for hire. *See, e.g., Canada Hockey, L.L.C. v. Marquardt*, 2022 WL 252186, at *3 (5th Cir. Jan. 26, 2022). Altice has therefore requested, as narrowed from its original request (*see* Ex. A) during meet and confer discussions

– 5 –

between the parties, that Plaintiffs produce "all agreements with authors or performers who created the Copyright Work" for each work Plaintiffs registered as "made for hire."[4] Plaintiffs have refused. But absent confirmation that these are valid registrations, Plaintiffs may not be able to pursue claims or statutory damages for these works. Based on Altice's preliminary analysis, there appear to be 3,534 works registered as "made for hire" by Plaintiffs, covering 693 registrations. These works were created by 249 artists. Thus, Plaintiffs would be required to produce agreements for only these 249 artists, fewer than 14 per applicable Plaintiff on average, which Plaintiffs should have readily on hand in order to ascertain rights and make royalty payments. Where Plaintiffs argue they are entitled to more than $530 million in statutory damages based on these registrations, the request is clearly proportional to the needs of the case.

### III. Plaintiffs refuse to produce documents related to Plaintiffs' payments to the notice sender at the heart of this case (Category No. 109).

Plaintiffs' evidence of direct copyright infringement, which is a prerequisite to finding Altice liable for secondary infringement, is derived entirely from notices of alleged infringement generated and sent by certain third parties retained by Plaintiffs or their agents. As such, Altice seeks the production of documents concerning Plaintiffs' retention of, and payments to, those third parties as litigation consultants tasked with assessing and generating evidence in nearly-identical lawsuits filed against ISPs. Such documents bear directly on Plaintiffs' notice sender's motivations, bias, and credibility in this case, and therefore must be produced.

Altice requested "[a]ll Documents concerning payment or other compensation to any Notice Sender or Infringement Verifier for providing documents, data, or evidence in connection

---

[4] While Altice agreed to further limit its request to a subset of these agreements in *BMG Rights Management (US) LLC et al. v. Altice USA, Inc. et al*, No. 2:22-cv-00471 (E.D. Tex.), it did so as part of an omnibus discovery compromise resolving multiple requests. Altice cannot accept the same here, as SME and WMG are two of the largest record companies in the world that are, as detailed herein, seeking more than $530 million in damages for works implicated by this issue.

with any of the ISP Lawsuits or any past, current, or projected litigation." Ex. A. Such documents are squarely relevant to Plaintiffs' vendors' potential bias and motivations regarding the sending of notices of alleged infringement. *See, e.g., Burke v. Blue Cross Blue Shield of Texas*, 2020 WL 6938444, at *3 (E.D. Tex. Jan. 16, 2020) (compelling production because "[i]t is uncontested that a reviewer's compensation or evaluation could cause bias"). While Plaintiffs claim that no such payment documents exist, as payments concerning their notice sending program flow through the Recording Industry Association of America ("RIAA"), Plaintiffs and their agents have *separately* retained the notice sender at issue in this case, OpSec, as a "consultant" in prior lawsuits against other ISPs. Specifically, Plaintiffs' counsel entered into "consulting" agreements with OpSec (f/k/a "MarkMonitor") to assist in the collection and analysis of infringement data to be used in those lawsuits. *See, e.g., Sony Music Entertainment et al. v. Cox Communications, Inc. et al.,* Case No. 1:18-cv-00950 (E.D. Va.), Dkt. 738 at 14 ("Plaintiffs produced a consulting agreement between their outside counsel and MarkMonitor, dated November 1, 2018, relating to MarkMonitor's assistance with preparing for this litigation."); *Warner Records, Inc. et al. v. Charter Communications, Inc.*, Case No. 1:19-cv-00874 (D. Colo.), Dkt. 287-1 (Decl. of Matthew J. Oppenheim), ¶ 5 ("I directed a project in February 2016 to analyze infringement data from the RIAA Notice Program for the purpose of informing Plaintiffs' potential litigation strategy in this and other cases against other ISPs."). These documents, and the financial incentive and potential bias generated by Plaintiffs' and OpSec's symbiotic relationship, bear directly on the credibility of OpSec and, specifically, OpSec's incentive to generate notices and assist Plaintiffs in this lawsuit, and therefore must be produced.

## CONCLUSION

Based on the foregoing, Altice respectfully requests that the Court grant the Motion in full.

Dated: December 23, 2024

Respectfully submitted,

By: /s/ Michael S. Elkin

| | |
|---|---|
| Claire A. Henry<br>State Bar No.: 24032294<br>MILLER FAIR HENRY, PLLC<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>(903) 757-6400<br>claire@millerfairhenry.com<br><br>Thomas M. Melsheimer<br>State Bar No.: 13922550<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>(314) 453-6500<br><br>Sean H. Suber*<br>WINSTON & STRAWN LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601<br>(312) 558-5600<br><br>Clement S. Roberts*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>405 Howard Street<br>San Francisco, CA 94015<br>(415) 773-5700 | Michael S. Elkin*<br>Krishnan Padmanabhan*<br>Sean R. Anderson*<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700<br>melkin@winston.com<br><br>Jennifer A. Golinveaux*<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 94111<br>(415) 591-1506<br><br>Diana Leiden*<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071<br>(213) 615-1700<br><br>Christopher J. Cariello*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 506-5000<br><br>Mark S. Puzella*<br>David Hosp*<br>Sheryl Garko*<br>Laura Najemy*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>222 Berkely Street, Suite 2000<br>Boston, MA 02116<br>(617) 880-1801 |

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

*Pro Hac Vice

## CERTIFICATE OF GOOD FAITH CONFERENCE

I, Michael S. Elkin, lead counsel for Defendants, participated in a call with Claire Henry, local counsel for Defendants, Matthew J. Oppenheim, who was lead counsel for Plaintiffs in August 2024, Rudy Fink, local counsel for Plaintiffs, among other attorneys, discussing Category No. 15 on August 21, 2024 and RFP No. 109 on August 27, 2024, and over subsequent correspondence. I also participated in a call with Claire Henry, local counsel for Defendants, Jeffrey M. Gould, current lead counsel for Plaintiffs, Rudy Fink, local counsel for Plaintiffs, among other attorneys, discussing Category No. 15, Category No. 109, and Plaintiffs' refusal to search the emails of certain custodians on December 12, 2024, and over subsequent correspondence. While the parties remain at impasse, I understand Plaintiffs intend to assess whether they can compromise on Category No. 109 before this motion is heard. I certify that Defendants have complied with Local Rule CV-7(h). The present motion is opposed.

*s/ Michael S. Elkin*
Michael S. Elkin

## CERTIFICATE OF SERVICE

I certify that on December 23, 2024 a true and correct copy of the foregoing was served by email to the parties of record.

*s/ Michael S. Elkin*
Michael S. Elkin