

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| WARNER RECORDS INC. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:23-cv-00576-JRG-RSP |
| v. | ) | |
| | ) | |
| ALTICE USA, INC. AND CSC HOLDINGS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO COMPEL *ALTICE I* EXPERT REPORTS AND INSTANT MESSENGER CONVERSATIONS RELEVANT TO CORE ISSUES

F███████████████████████████

I. **INTRODUCTION**

Plaintiffs are major record companies and music publishers who bring this action for secondary copyright infringement against Defendants Altice USA, Inc. and CSC Holdings, LLC (collectively, "Altice"), who are large internet service providers ("ISPs"). Other large music companies filed a closely related matter against Altice in this Court roughly a year before this action was filed: *BMG Rights Management (US) LLC et al. v. Altice USA, Inc. et al.*, Civil Action No. 2:22-CV-471-JRG (E.D. Tex) ("*Altice I*").[1] Both cases involve the same Defendants, same claims of secondary copyright infringement, same theories of liability, and largely overlapping infringement periods. Both cases hinge on Altice's failure to terminate or otherwise take meaningful action against accounts of known repeat infringers, and whether Altice is eligible for a statutory safe harbor from monetary liability under the Digital Millenium Copyright Act ("DMCA").

Through this motion, Plaintiffs seek (1) expert reports from *Altice I* that bear directly on issues in this case and (2) a small number of instant messenger conversations critical to understanding statements from Altice such as "████████."

II. **BACKGROUND**

***Expert reports***. On August 6, 2024, Plaintiffs moved to compel certain categories of discovery produced in *Altice I*. Dkt. 67. To resolve the motion, Altice agreed to produce certain material, including reports written by some but not all of Altice's experts. Dkt. 71. Plaintiffs expressly "reserve[d] the right to seek additional expert reports from the [*Altice I*] case at a later date." *Id.* On September 8, 2024, this Court granted Plaintiffs' unopposed motion to withdraw "without prejudice to refiling." Dkt. 73.

---

[1] The *Altice I* action settled earlier this year. *See Altice I*, Dkt. 183.

1

*Instant Messenger Conversations*. Instant messenger chats occur as back-and-forth messages that together make up a conversation. Altice produced roughly 2,700 instant message chats sent by its employees through Microsoft Teams. *See, e.g.*, Ex. A (WAR_ALT_BMG00057840).[2] Altice produced these chat log messages individually, not as conversations and without including any messages sent before or after the message-at-issue. *Id*. After careful review, Plaintiffs identified a small subset of messages (less than 3% of all chat log messages Altice produced) that require further context to understand them. *See* Ex. B. Plaintiffs asked Altice to produce the 10 messages sent before and 10 messages sent after the specific messages Plaintiffs identified, but Altice has categorically refused.

### III. ARGUMENT

#### A. Expert Reports About Altice's System for Processing Copyright Infringement Notices, Altice's Damages Theories, and Altice's Financial Data Are Highly Relevant

Plaintiffs seek production of expert reports from *Altice I* that speak directly to Altice's process for addressing repeat copyright infringement, the copyright infringement notices Altice received, the technical capabilities Altice had but chose not to pursue, and Altice's theory of damages. In particular, Plaintiffs seek the *Altice I* reports authored by Altice's experts (1) Dr. Mohan Rao and (2) Mr. George Strong, and by *Altice I* plaintiffs' experts (3) Dr. Terrence P. McGarty, (4) Dr. Debra J. Aron, (5) Mr. Christian L. Castle, (6) Ms. Barbara Frederiksen-Cross, and (7) Dr. Sam Malek.[3]

---

[2] All instant messages produced by Altice so far in this action were initially produced in *Altice I* and were also produced here as part of the resolution of Plaintiffs' August 6, 2024 motion.

[3] Altice recently offered to produce reports by Frederiksen-Cross to resolve Plaintiffs' motion because Plaintiffs have retained her, and Altice said it would "do the same for Malek if he is retained." Dec. 18, 2023 Email from S. Anderson. Plaintiffs have nevertheless included in this

2

Expert reports from *Altice I* concerning issues that are squarely at issue here are relevant and should be produced. *See Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442, at *1 (E.D. Tex. May 3, 2019) (Gilstrap, J) (granting motion to compel expert reports from prior case because "prior litigation positions regarding the same claims asserted in this case are relevant to the claims and defenses in this case").

This case and *Altice I* have overwhelming similarity. Both cases concern Altice's secondary liability for copyright infringement of sound recordings and musical works by Altice's subscribers even after Altice knew those subscribers were repeat infringers. The claims period in both cases overlap by two years (December 2020 through December 2022), during which Altice used ▮▮▮▮▮ *See* Altice's First Supplemental Response to *Altice I* Interrogatory No. 2 (Mar. 6, 2024). ▮▮▮▮▮ Altice ▮▮▮▮▮

The *Altice I* plaintiffs' expert reports are highly relevant to the claims and defenses here.

- Dr. Terrence McGarty opined on "Altice's policies and procedures for addressing copyright infringement." *Altice I* Dkt. 175. ▮▮▮▮▮

- Dr. Debra Aron opined on "data analyses and on certain economic issues relevant to harm and damages" in *Altice I*. *Id.* As noted above, both cases involve claims of secondary liability for sound recordings and musical works infringed by Altice subscribers who were known repeat infringers, and identical issues related to harm and damages predominate.

---

motion their request for Frederiksen-Cross and Malek reports because Altice's offer appears to be contingent on Plaintiffs dropping their request for additional reports, which Plaintiffs do not agree to do.

- Mr. Christian L. Castle provided a rebuttal report in response to Altice's statutory damages expert, Dr. Aram Sinnreich. Plaintiffs elected statutory damages in this action, and the relevant factors and considerations on statutory damages for Altice's infringement are materially the same in both actions.

- Ms. Barbara Frederiksen-Cross opined on "Altice's technical systems and source code for addressing copyright infringement and on certain systems and data related copyright infringement." *Id.* Altice's technical systems and source code for the two-year overlap in claims periods are the same in both actions.

- Dr. Sam Malek opined on the "technical capabilities of Altice." *Id.* Dr. Malek's reports appear to address the actions Altice could have taken, but chose not to take, in response to copyright infringement notices.

Plaintiffs retained Ms. Frederiksen-Cross and may retain Dr. Malek to perform similar analyses in this action. They should be allowed to refer to and rely on their previous analyses.

Altice's expert reports from *Altice I* are also highly relevant.

- Dr. Mohan Rao opined on "data relating to notices of alleged copyright infringement." *Altice I*, Dkt. 174. Because of the two-year overlap in claims periods, this report necessarily addresses █████████████████████████████████████████████████████████████

- Altice's financial expert, Mr. George Strong, opined on "issues relevant to statutory damages." *Id.* Plaintiffs elected statutory damages in this case, and Altice's view on what issues affect the proper measure of statutory damages are equally relevant here. The majority of relevant statutory damages factors are Altice-specific or otherwise are the same for both cases, including "expenses saved and profits reaped" by Altice, "the potential for discouraging the defendants," "whether the defendant's conduct was innocent or willful," "deterrent effect on others besides the defendant," and "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced." *Better Keiki, LLC v. MairicoDirect*, 2018 WL 5305571, at *6 (E.D. Tex. Aug. 29, 2018). Plaintiffs also should have access to Altice's theory of damages on identical issues in a prior, similar case. *See Infernal Tech., LLC*, 2019 WL 5388442, at *2.

Altice has primarily argued that production of these reports would "pose significant confidentiality issues." Dkt. 68, at 6. This is no impediment. Plaintiffs have already secured consent from all third parties referenced in the reports to receive their confidential information provided it

4

is governed by the protective order in this case.[4] Plaintiffs do not seek any confidential, financial, or competitively sensitive information of the *Altice I* plaintiffs, and such information can be redacted.[5] These reports address core issues in this case and should be produced.

### B. Select Instant Messenger Conversations Identified by Plaintiffs Are Highly Relevant and Require Additional Context

Plaintiffs carefully reviewed Altice's production of roughly 2,700 instant messenger conversations originally produced in *Altice I* and reproduced here and identified approximately 50 messages that require additional context. *See* Ex. B. Plaintiffs asked Altice to produce the 10 messages preceding and 10 messages following these specific messages to understand the relevant context. Altice categorically refused.[6]

The need for this follow-up request is due to how Altice produced its instant messenger chats. Though the messages occur as part of back-and-forth instant chat conversations, Altice produced messages individually without the context needed to understand the conversation, and typically without producing the messages before and after key individual chat messages. *See, e.g.*, Ex. A (WAR_ALT_BMG00057840). To piece together a back-and-forth chat conversation, Plaintiffs must find individual messages in Altice's production sent between the same participants on the same day and organize them by time sent. Because Altice did not produce the full sequence of back-and-forth chat conversations, it is impossible for Plaintiffs to do so.

---

[4] This includes OpSec Online LLC, Audible Magic, the Recording Industry Association of American, and Rightscorp. Declaration of J. Gould, ¶ 5.

[5] To be clear, while Plaintiffs do not seek the *Altice I* plaintiffs confidential, financial or competitively sensitive information, they do seek information in the *Altice I* plaintiffs' experts' reports that is designated confidential because it references Altice's confidential information.

[6] Plaintiffs sought to confirm whether all of the additional messages they seek exist and are not privileged. Altice was not able to opine on either issue during the conferral process.

5

The chat conversations Plaintiffs seek bear on critical issues and should be produced here. *See* Ex. B. The messages Plaintiffs identified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. B, at row 8 (WAR_ALT_BMG00058857). Fiber-to-the-home is a type of internet service that accounts for roughly 10% of Altice's customer base. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Altice did not produce portions of this instant chat conversation responding to this question.

In another example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. B, at row 22 (WAR_ALT_BMG00061187). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The DMCA safe harbor requires that an ISP "has adopted and reasonably implemented … a policy that provides for the *termination* in appropriate circumstances of subscribers … who are repeat infringers." 17 U.S.C. §512(i)(1)(a). Altice ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is highly relevant. Again, Altice did not produce a response.

In other instances, messages in chat conversations beg for additional context. For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6

 Ex. B, row 1 (WAR_ALT_BMG00057840). Altice produced no other messages between ▮▮▮ and ▮▮▮ from this date. Plaintiffs are entitled to the surrounding context for these critical messages.

All messages identified by Plaintiffs were sent in 2020 or later, and thus fall well within the Discovery Period to which the parties generally have been using (December 1, 2019 to December 7, 2023).

Altice's objection to producing these plainly relevant documents is based on a technicality that the ESI Order says documents originally produced in *Altice I* "shall be produced [here] in the same manner and form as they were produced in" *Altice I*. Dkt. 107, at ¶10. But Plaintiffs do not contend that Altice violated the ESI Order. Altice also argues that if Plaintiffs want these targeted messages, they should propose search terms and try to get them through ESI negotiations. This misses the point and seeks a substantive gain on procedural grounds. Plaintiffs reviewed Altice's production and identified a narrow set of important documents that exist and can be easily identified with precision by Altice (but not Plaintiffs). Plaintiffs should not have to guess what the missing messages say and dream up search terms in hopes of hitting on messages that Altice knows exist and knows how to find. It is routine in discovery to make follow-up requests for production of additional documents based on information in existing productions. Altice does not claim otherwise.

IV. **CONCLUSION**

Plaintiffs respectfully request that the Court order Altice to produce the expert reports and instant messages Plaintiffs seek.

Dated: December 20, 2024

Alexander Kaplan (*pro hac vice*)
Carly Kessler Rothman (*pro hac vice*)
Bret Matera (*pro hac vice*)
Lauren Bergelson (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
carly@oandzlaw.com
bmatera@oandzlaw.com
lbergelson@oandzlaw.com

Respectfully submitted,

*/s/ Jeffrey M. Gould w/permission Rudolph Fink IV*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
THE DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Jeffrey M. Gould (*pro hac vice*)
Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
Keith Howell (*pro hac vice*)
Jeff Kane (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: 202-480-2999
jeff@oandzlaw.com
matt@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com
jkane@oandzlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between Plaintiffs and Altice have reached an impasse and that this motion is opposed, as summarized below:

1. On June 28, 2024, Plaintiffs initially requested the *Altice I* Discovery Material via email, and the Parties subsequently exchanged multiple emails.

2. On July 11, 2024, Matthew J. Oppenheim, lead counsel for Plaintiffs, Rudy Fink, local counsel for Plaintiffs, Michael Elkin, lead counsel for Defendants, Claire Henry, local counsel for Defendants, and other attorneys, met and conferred telephonically for approximately an hour and half regarding the *Altice I* Discovery Material.

3. On July 16, July 25, and August 5, 2024, the parties further discussed the *Altice I* Discovery subject to this motion in subsequent correspondence.

4. On December 2, 2024, Plaintiffs requested the instant messages at issue in this motion. Altice replied on December 11, 2024, denying Plaintiffs' request.

5. On December 13, 2024, Jeffrey M. Gould, lead counsel for Plaintiffs, Rudy Fink, local counsel for Plaintiffs, Michael Elkin, lead counsel for Defendants, Claire Henry, local counsel for Defendants, and other attorneys, met and conferred telephonically for approximately thirty minutes total regarding Plaintiffs' requests included in this motion. The parties have been unable to resolve these disputes.

6. I certify that Plaintiffs have complied with Local Rule CV-7(h). The present motion is opposed.

                                               */s/ Jeffrey M. Gould*
                                               Jeffrey M. Gould

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via electronic service on December 20, 2024, to all counsel of record via the Court's CM/ECF system per Local Rule CV-5(a).

/s/ Rudolph Fink IV
Rudolph Fink IV