UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTICE USA, INC., et al.,<br><br>Defendants. | Case No. 2:23-cv-00576-JRG-RSP |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
"PLAINTIFFS' MOTION TO COMPEL *ALTICE I* EXPERT REPORTS AND INSTANT
MESSENGER CONVERSATIONS RELEVANT TO CORE ISSUES"**

I.   **INTRODUCTION**

The two requests in Plaintiffs' Motion are improper and without any justification.

The *BMG* expert reports are not relevant and not discoverable. The *BMG* case involved different plaintiffs, different copyrights, different systems, different technologies, and largely different time periods. The case settled before any experts were deposed (save for one), before any *Daubert* motions were filed let alone adjudicated, and before any merits proceedings commenced. Those reports are nothing but inchoate expert disclosures in a distinct case that never made it through expert discovery. To be clear, Plaintiffs are in possession of any of the documents, data, and other sources of facts and information on which those reports were based to the extent those materials also are relevant here—e.g., internal emails and reports, data tables, source code, and financials, to name just a few categories. At base, Plaintiffs' request amounts to a fishing expedition for ideas on how to try their case, avoid potential dead ends, and catapult themselves forward in the litigation by piggybacking on the work product of other lawyers. While Plaintiffs may wish to scavenge the remains of prior cases, that does not render the materials on which they set their sights relevant or discoverable.

Plaintiffs' request for instant messages surrounding those produced from the *BMG* discovery is equally misguided. The request is completely outside both the parties' agreement regarding the production of materials from *BMG* and the Court's ESI Order that the parties spent nearly seven months negotiating. If Plaintiffs seek these additional messages, they have a path readily available to them: comply with the ESI Order and identify custodians, search terms, and date ranges, information that is obviously in their possession. Plaintiffs' attempt at an end run around both the parties' agreement and the ESI Order should be rejected.

Altice respectfully requests that the Motion be denied in its entirety.

## II. ARGUMENT

### A. Plaintiffs' Request for Expert Reports from *BMG*

There is no basis for the production of expert reports from *BMG*. Plaintiffs claim that these expert reports "speak directly" to issues they believe are relevant here. Mot. at 2. But as Plaintiffs well know, expert reports are comprised of opinions and analyses based on ***information in the record***. To the extent that the underlying information in those reports is relevant here, it has been produced. Indeed, to date, Altice has produced over 40,000 documents, millions of rows of data, and reams of financial information. What is clear is that Plaintiffs are less interested in the underlying information—which they have received in spades, months ago—but a second set of expert analyses, a roadmap to how different litigants, in a different case, tried distinct claims, relating to different systems and copyrights. That is improper. Nothing in the law requires their production.

Further, the *BMG* case settled in the midst of expert discovery. Thus, the *BMG* reports were not subjected to any scrutiny, the experts were not deposed (save for one), and the Court did not make any evidentiary rulings on any issue relating to these experts and their opinions. Moreover, not only are these reports *irrelevant* but their disclosure would be highly prejudicial to Altice. Injecting **13 more reports** into this case (on top of the potentially equal or greater number to be served here) will subject the parties to even more *Daubert* and *in limine* practice.

In support of their extraordinary request, Plaintiffs cite just one authority, *Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442 (E.D. Tex. May 3, 2019), though that patent decision is readily distinguishable. There, Judge Gilstrap ordered the production of the *plaintiffs'* expert report from a prior case because it contained the *plaintiffs'* theories of infringement and what constitutes invalidating prior art. *Id.*, at *2. Here, Plaintiffs unquestionably bear the burden of proof on copyright validity and infringement, and nothing in the *BMG* reports is at all relevant to those questions in any event. Plaintiffs cannot credibly argue otherwise.

Plaintiffs also grossly underestimate the burden associated with the production of these expert reports. In resolution of Plaintiffs' prior motion to seek these reports, which they withdrew without prejudice nearly four months ago, Altice was forced to undertake several rounds of painstaking review to apply redactions as Plaintiffs obtained piecemeal consent from third parties. Now, while Plaintiffs are not seeking the *BMG* plaintiffs' information from the remaining reports (Mot. at 5), the process of redacting that material would be unduly burdensome given the lack of any relevance to the reports. Moreover, the *BMG* plaintiffs designated the entirety of their reports under the Protective Order, and Plaintiffs have inexplicably failed to obtain their consent. Thus, Altice cannot presently produce any portion of those reports despite Plaintiffs' request. *Id*. at 5, n.5.

These fatal defects with Plaintiffs' request aside, Plaintiffs also misleadingly characterize the purported similarities between *BMG* and this case. For purposes of expert reports, the two cases could not be more different. Altice addresses each expert in turn.

**Dr. Debra Aron** issued two reports that are irrelevant to Plaintiffs' claims. Dr. Aron analyzed the *BMG* plaintiffs' notices, . Ex. A. Moreover, the notices at issue were directed at different works than those asserted here, and . Ex. B. In any event, Altice has produced the underlying data and documents for the agreed-to Discovery Period here on which Dr. Aron relied, Plaintiffs have their own notices for their own works, and the parties are free to propound their own analyses on the processing of those notices. With respect to Dr. Aron's "economic issues," she opined

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

**Mr. Christian L. Castle** is an expert whom the *BMG* plaintiffs retained to rebut portions of the report by Dr. Aram Sinnreich, one of Altice's experts in *BMG*. Plaintiffs argue that these analyses were relevant to statutory damages and, because they too seek statutory damages, Mr. Castle's report is therefore discoverable. That is an oversimplification of not only the reports but the law. In any event, as Plaintiffs know, Dr. Sinnreich submitted reports ██████████ ██████████████████████████████████████████████████. ██████████ ████████████████████ Plaintiffs are different entities, experienced different harm, and may ███ ████████████████████████████████. Mr. Castle's rebuttal to Dr. Sinnreich's report (which, again, was ████████████████████████████████) is therefore irrelevant.

**Dr. Terrence McGarty** is an expert whom Plaintiffs have retained in several prior ISP cases. Dr. McGarty opined on ██████████████████████████████████████ ████████████████████. Like Plaintiffs' other experts, Dr. McGarty's opinion covers ████ ██████████████████████████████████████████████████. To the extent Dr. McGarty based his opinion on information that is relevant here, Plaintiffs already have it.

**Ms. Frederiksen-Cross** is an expert whom Plaintiffs have retained in multiple cases, and the *BMG* plaintiffs retained as well. Ms. Frederiksen-Cross's two reports are irrelevant.[1] While Ms. Frederiksen-Cross ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[1] While Altice maintains that there is not an adequate basis for the production of Ms. Frederiksen-Cross's reports, Altice explored with Plaintiffs the option of producing them as a potential resolution of this request in order to avoid burdening the Court with this dispute.

███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

Exs. A & B. Further, Ms. Frederiksen-Cross is set to review Altice's source code in a few weeks, so she will be able to form opinions relating to the facts relevant to this case as part of that process.

The balance of Ms. Frederiksen-Cross's *BMG* reports ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. Indeed, the parties in this case have already subjected the OpSec system to extensive review. Critically, Plaintiffs have not disclosed in their Motion whether Ms. Frederiksen-Cross has already reviewed the OpSec system here or is otherwise coordinating with OpSec in the preparation of her report here.

**Dr. Sam Malek** issued two reports on Altice's technological capabilities. Dr. Malek's report was focused on issues that have no bearing on Plaintiffs' claims in light of the different time periods and technical systems at issue between the two cases. Again, to the extent relevant here, the information relied upon by Dr. Malek has been produced to Plaintiffs. Thus, Plaintiffs are in possession of facts that will show them what actions Altice took or could have taken.

Plaintiffs' request for the remaining Altice expert reports from *BMG* is equally unavailing.

**Mr. George Strong** primarily opined on ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. None of that is at issue in this case, given that there are different plaintiffs, different works, and different infringement allegations. Indeed, Plaintiffs disclaim any interest in obtaining that information in any event. To the extent Mr. Strong

opined on Altice's financials, that too is irrelevant, as it relates to other time periods and other infringement allegations. Again, if information on which Mr. Strong relied also is relevant here, it has been produced—this ██████████████████████████████████████.

In connection with their request for Mr. Strong's reports, Plaintiffs again cite to *Infernal Tech., LLC*, this time as standing for the proposition that Altice's "theory of damages" is somehow relevant. Mot at 4. As explained above, Plaintiffs misread that opinion. *Supra* at 2. More importantly, Plaintiffs also misconstrue how statutory damages work. There are no "theories of damages," as there is in a case where actual harm must be shown. Rather, if liability is established, the Court will instruct the jury that it may consider a set of factors in determining where on the vast statutory damages range to set damages per work. What the jury looks to are the *facts* that the parties put forward on these various factors. As noted, Plaintiffs are in possession of such facts.

**Dr. Mohan Rao**, like Dr. Aron, opined on ████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████ In any event, Altice has produced the entirety of its notice processing database from *BMG* on which Dr. Rao relied, so they can do their own analyses.

### B. Plaintiffs' Request for an Expansion of ESI from *BMG*

After Plaintiffs filed this lawsuit, they requested that Altice produce all discovery from *BMG*. Following extensive negotiations, the parties agreed that Altice would produce the documents that it had produced in *BMG* dated between December 1, 2019 and December 7, 2023 (the Discovery Period here). Plaintiffs did ***not*** reserve the right to ask Altice to supplement the *BMG* record by searching for and producing ***new*** documents that were ***never produced*** in *BMG*.[2] At the

---

[2] Plaintiffs only reserved the right to seek *BMG* documents pre-dating December 1, 2019, as the parties were then still negotiating the "discovery period." Ex. C.

same time, the parties were negotiating the ESI Order, which took nearly seven months to complete. The ESI Order plainly states that "[t]o obtain email or electronic correspondence, parties must propound specific e-mail and electronic correspondence production requests by complying with the procedures outlined in Paragraphs 8 and 9 below." Dkt. 107, ¶ 7. Those paragraphs make clear that Plaintiffs must serve requests and identify custodians, search terms, and time frame, and the total number of custodians from whom this discovery may be requested is limited. *Id.*, ¶¶ 8-9.

In sum, with Plaintiffs' request for Altice to collect, review, and produce the ten messages before and after the 62 subject messages at issue, Plaintiffs are asking Altice to contravene the parties' agreement and/or violate the ESI Order. The request is improper and has subjected Altice to needless expense and distraction. The path for Plaintiffs is clear: follow the ESI Order.

Given this clear path and the information already in their possession, Plaintiffs are in no way prejudiced. Indeed, as Plaintiffs know, 49 of the 62 messages are from custodians that they have selected in this case. Moreover, the majority of the messages hit on the search terms that Altice has already agreed to run. Given that the ESI Order here requires the parties to review the ten messages before and after those that hit on their terms and produce all relevant messages (which is what Plaintiffs are asking Altice to do on the *BMG* documents), **most of the messages they seek with their Motion will be produced as part of normal ESI discovery**. For those handful that do not currently hit on Plaintiffs' custodians and search terms, Plaintiffs have the ability to seek them by propounding targeted requests consistent with the ESI Order. They have not done so.

Plaintiffs' request to flout the parties' agreements and the Court's Order should be rejected.

### III.  CONCLUSION

Based on the foregoing, Altice respectfully requests that the Court deny Plaintiffs' Motion.

Dated: January 6, 2024

Respectfully submitted,

By: */s/ Michael S. Elkin*

| | |
|---|---|
| Claire A. Henry<br>State Bar No.: 24032294<br>MILLER FAIR HENRY, PLLC<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>(903) 757-6400<br>claire@millerfairhenry.com | Michael S. Elkin*<br>Krishnan Padmanabhan*<br>Sean R. Anderson*<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700<br>melkin@winston.com |
| Thomas M. Melsheimer<br>State Bar No.: 13922550<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>(314) 453-6500 | Jennifer A. Golinveaux*<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 94111<br>(415) 591-1506 |
| Sean H. Suber*<br>WINSTON & STRAWN LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601<br>(312) 558-5600 | Diana Leiden*<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071<br>(213) 615-1700 |
| Clement S. Roberts*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>405 Howard Street<br>San Francisco, CA 94015<br>(415) 773-5700 | Christopher J. Cariello*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 506-5000 |
| | Mark S. Puzella*<br>R. David Hosp*<br>Sheryl K. Garko*<br>Laura B. Najemy*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>222 Berkely Street, Suite 2000<br>Boston, MA 02116<br>(617) 880-1801 |

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

*Pro Hac Vice

**CERTIFICATE OF SERVICE**

I certify that on January 6, 2025 a true and correct copy of the foregoing was served by email to the parties of record.

*/s/ Michael S. Elkin*

