UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALTICE USA, INC., et al., <br><br> Defendants. | Case No. 2:23-cv-00576-JRG-RSP |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO "COMPEL PRODUCTION OF CORE EVIDENCE
AND A RESPONSE TO INTERROGATORY NO. 3"**

## I. INTRODUCTION

Plaintiffs' Motion raises four issues, all of which were discussed during extensive meet and confer efforts back in August and early September 2024. Plaintiffs did not follow up with respect to Altice's responses to these requests for over *three months*. It was only when the Court recently set a hearing on *Altice's* motions to compel that Plaintiffs resuscitated these long-dormant requests. Given the months that had elapsed since those earlier discussions, Plaintiffs agreed during the parties' more recent conferrals to wait a few days so that Altice could reevaluate its prior positions. Despite this agreement, Plaintiffs filed the instant Motion before receiving a response.

As Plaintiffs would have learned had they simply honored that agreement, several of their requests are mooted. As detailed below, what Altice is agreeing to produce in response to each of Plaintiffs' requests is more than reasonable in light of the parties' claims and defenses. Accordingly, Plaintiffs' Motion should be denied in its entirety.[1]

## II. ARGUMENT

### A. Underlying Email Notices of Alleged Copyright Infringement

This dispute is mooted. Altice has agreed to produce what Plaintiffs seek: available email notices from December 1, 2019 to December 7, 2023 (the "Discovery Period"). As this is email discovery, it is subject to the parties' ESI Order. This constitutes Plaintiffs' ninth custodian; they have one remaining for a total of 10. *See* Dkt. 107, ¶ 8. While there is no longer a dispute, Altice also briefly addresses certain of Plaintiffs' arguments in order to correct the record on this issue.

First, on the discovery proceedings, Altice informed Plaintiffs several months ago that it

---

[1] Plaintiffs' Motion is replete with erroneous, misconstrued, or misrepresented factual statements and arguments regarding the merits of this action, none of which is remotely relevant to Plaintiffs' actual discovery requests. For this reason, Altice does not respond to each and every one of Plaintiffs' improper statements other than to the extent necessary to resolve the narrow set of issues that still require the Court's intervention.

would produce a full extract from its database in which it stores any parsed information from notices of alleged infringement received during the Discovery Period. Altice noted at the time that it would be both duplicative and burdensome to also collect and produce the underlying email files, given that their metadata are contained in the extract. Accordingly, Altice produced the extract on August 26. Then, over three months later, Plaintiffs resurfaced and again demanded the underlying emails and prematurely filed this Motion before awaiting Altice's response.[2]

Second, on the legal backdrop,

Plaintiffs contend that these emails provide ISPs with actionable "knowledge" of infringement, one of the two elements of their contributory infringement claim. *See, e.g.*, Dkt. 38 at 9-12. That is an overly simplistic rendition of the law. As the evidence will show, the notices do not prove any actual infringement (downloading or uploading), let alone that upon receipt of such a notice Altice has any certainty that a specific subscriber will infringe again.

Plaintiffs' improper factual and legal arguments aside, because Altice has agreed to produce its available underlying notice emails, the Motion as to this issue should be denied as moot.

### B.   Altice's Communications with Its Subscribers

Plaintiffs' assertion that Altice has refused to produce communications with its subscribers regarding alleged copyright infringement is not accurate. Altice explained to Plaintiffs that unlike other ISPs with which Plaintiffs' counsel may be familiar, Altice

---

[2] Plaintiffs make unsubstantiated statements about notices being "missing" from Altice's data. Mot. at 3-4. Plaintiffs have no experience with Altice's data and have yet to depose any witness on it either. Altice has no means to test the veracity of Plaintiffs' assertions, and they are irrelevant to the present request in any event. Any contention as to this data and what it means for the claims and defenses in this case will be resolved on the merits.

██████████████████████████████████████████

████████████████████████████████████████████.[3] ████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████.██████████████

████████████████████████. *See, e.g.*, Ex. B & C.

██████████████████████████████████████████

████████████████████████████ Altice made the source code for this system available to Plaintiffs in August, but they have yet to review it.[4] Altice also already produced to Plaintiffs ██████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████.[5]

Despite these disclosures, Plaintiffs represent in their Motion that they want every single one of these underlying form notices so they can confirm whether Altice really did send them when it says it does. Mot. at 5. Altice does not ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[3] Altice also readily agreed to produce to Plaintiffs any ████████████████
████████████████████████████████████████████████.
[4] Plaintiffs recently requested to begin their review later this month.
[5] *See, e.g.*, WAR_ALT_DATA_00000001 – 44.

– 3 –

███████████████████████████████████

███████████████████████████████████

████████████." Altice will produce to Plaintiffs ████████████

███████████████████████████████████

████████████████ collectively constitute the information sought by Plaintiffs and, thus, the Motion as to this issue should also be denied as moot.

### C. Subscriber-Level Financial Data

Plaintiffs request broad subscriber-level financial data (both total monthly revenue and service tier) for a four-year period from ████████████████████████ ████████████████. On August 7, Altice readily agreed to produce this data for the subset of subscribers who *are alleged* to have infringed Plaintiffs' works-in-suit (once Plaintiffs identified their relevant notices, which they refuse to do despite having the burden)—but Plaintiffs rejected that offer out of hand. Knowing that their request was not necessary to advance their alleged claims, Plaintiffs waited nearly three months to press for this broader set of data, which, as discussed below, is irrelevant to any theory of liability or statutory damages.

With respect to vicarious liability, Plaintiffs must show that Altice "profit[ed] *directly* from the infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005) (emphasis added). Congress has made clear—as courts have repeatedly confirmed—that "'receiving a one-time set-up fee and flat periodic payments for service … [ordinarily] would not constitute receiving a financial benefit directly attributable to the infringing activity.'" *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (quoting S. Rep. 105-190, at 44) (alteration in original); *see also Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 232 (4th Cir. 2024) ("The continued payment of monthly fees for internet service, even by repeat infringers, was not a financial benefit flowing directly from *the copyright infringement itself*.") (emphasis in original). That is because ISPs receive the same fees regardless of what their subscribers do on the internet.

– 4 –

Thus, the amount Altice received in monthly subscription fees from subscribers who were the subject of notices has no relevance to whether Altice *directly profited from infringement*. And even if Plaintiffs wish to argue contrary to this well-established body of law, there is no possible relevance to the revenue that Altice received from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, Plaintiffs have requested this data for all subscribers who received *any volume* of notices. The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs' demand for four-plus years of monthly revenue for these subscribers under the guise that it constitutes Altice's *direct profits* from infringement is entirely illogical. This is nothing but a fishing expedition to manufacture a big dollar figure to present to a jury that is entirely untethered to Plaintiffs' actual claims in this case.

With respect to statutory damages, the case law is legion that what is relevant is the defendant's profits *from the infringement for which it has been found liable*—not unrelated alleged infringement relating to third party rightsholders and works not even at issue. *See, e.g.*, *Rare Blue Music, Inc. v. Guttadauro*, 616 F. Supp. 1528, 1530 (D. Mass. 1985) (profits "reaped by defendants *in connection with the infringement*") (emphasis added).[6] It would be highly prejudicial to inject into the record the financials for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Plaintiffs also are wrong that billing data that Altice agreed to produce in *BMG* should have been re-produced here in connection with the parties' agreement that Altice would provide Plaintiffs with the *BMG* discovery dated during the Discovery Period. The *BMG* billing data is contained in a database file with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] Plaintiffs cite *Better Keiki, LLC v. MairicoDirect*, 2018 WL 5305571, at *6 (E.D. Tex. Aug. 29, 2018), which does support their argument that profits from the "system" are relevant. *See* Mot. at 6. The language to which *Better Keiki* points comes from *Rare Blue Music* and other cases collected in *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986), which hold that the relevant profits are those "*in connection with the infringement*" being claimed. *See supra*.

███████████—most of which precede the relevant time period here. The database file cannot be simply filtered to exclude information from outside of the agreed-to *BMG* discovery time period, and the parties did not discuss, let alone agree, that Altice would do so. To the contrary, Altice made clear that it would not be producing the *BMG* billing data in this case. *See* Ex. D at 1.

In sum, with respect to Plaintiffs' present request, Altice has agreed to produce the detailed financial information that Plaintiffs seek for the subscribers who are actually alleged to have infringed the works for which Altice is being sued for secondary liability—this is exactly what Plaintiffs sought with their original request before they later expanded it to *all* subscribers who received *any* notices. Mot., Ex. A; *see also* Ex. D. To the extent that Plaintiffs wish to make broader (and irrelevant) arguments about revenue or profits received from subscribers who are not at issue, Altice has produced data showing its total revenue, its profit margin, its total number of subscribers, its average revenue per user, and other detailed financial information from which any number of analyses can be performed. There is no basis to require the production of reams of detailed financial data for subscribers entirely irrelevant to Plaintiffs' claims and statutory damages.

Finally, Plaintiffs have long been in possession of the very same information as Altice that would permit them to identify the subscribers for whom they would like financial information. The process for identifying subscribers with this data is burdensome. Whether Plaintiffs are seeking information on all subscribers or the subset who received their notices, Plaintiffs should have but failed to come forward with a particularized list of subscribers. The onus should not be on Altice.

### D. The Identification of Subscribers Terminated for Non-Payment

Plaintiffs' Interrogatory No. 3 is confused, irrelevant, and seeks information cumulative of that already in the record. Moreover, complying with it would be burdensome in light of the analyses required of Altice. In their Motion, Plaintiffs request that Altice do one of two things. One, analyze data that Plaintiffs also possess to identify the subscribers who received three or more

notices (irrespective of whether they received *Plaintiffs'* notices), query each and every one of those subscribers across a billing database to ascertain whether any were terminated for non-payment, and then collect identifying information for each such subscriber.[7] Two, in the alternative, identify all subscribers who were terminated for non-payment (irrespective of whether they received any notices of alleged infringement), ███████████████.

Plaintiffs claim this evidence is relevant to rebut "Altice's contention that the reason it did not terminate subscribers for infringement was because 'internet service is essential to modern life' and termination is supposedly too extreme." Mot. at 7 (quoting Dkt. 25 at 26). Alice has not made that argument and does not intend to make it. Rather, Plaintiffs misleadingly quote Altice's motion to dismiss the vicarious liability claim where it argued that any notion that people *sign up* for internet to infringe—i.e., that it was a draw to the service—is implausible in light of the importance of internet in the modern era. That is an entirely different argument, as Plaintiffs know.

In any event, to the extent Plaintiffs wish to rebut an argument that Altice has not and does not intend to make, they can do so with the very data that they have used in prior cases that Altice has produced—i.e., presenting the sheer number of subscribers who were terminated for nonpayment without identifying their specific accounts details. In any event, Altice has agreed to provide the requested information for the subscribers who actually received Plaintiffs' notices (the same as it has agreed to produce for financial data, above), so if Plaintiffs wish to make the arguments that they describe with respect to the specific subscribers who are relevant here, they could do so.

### III.    CONCLUSION

Based on the foregoing, Altice respectfully requests that the Court deny Plaintiffs' Motion.

---

[7] Plaintiffs have refused to explain the relevance of subscribers who receive three or more notices, despite repeated requests, including Altice's Interrogatory No. 8. *See* Dkt. 86 (motion to compel).

Dated: January 9, 2025                                       Respectfully submitted,

                                                             By: /s/ Michael S. Elkin

| | |
|---|---|
| Claire A. Henry | Michael S. Elkin* |
| State Bar No.: 24032294 | Krishnan Padmanabhan* |
| MILLER FAIR HENRY, PLLC | Sean R. Anderson* |
| 1507 Bill Owens Parkway | WINSTON & STRAWN LLP |
| Longview, TX 75604 | 200 Park Avenue |
| (903) 757-6400 | New York, NY 10166 |
| claire@millerfairhenry.com | (212) 294-6700 |
| | melkin@winston.com |
| Thomas M. Melsheimer | |
| State Bar No.: 13922550 | Jennifer A. Golinveaux* |
| WINSTON & STRAWN LLP | WINSTON & STRAWN LLP |
| 2121 N. Pearl Street, Suite 900 | 101 California Street, 35th Floor |
| Dallas, TX 75201 | San Francisco, CA 94111 |
| (314) 453-6500 | (415) 591-1506 |
| | |
| Sean H. Suber* | Diana Leiden* |
| WINSTON & STRAWN LLP | WINSTON & STRAWN LLP |
| 35 W. Wacker Dr. | 333 South Grand Avenue, 38th Floor |
| Chicago, IL 60601 | Los Angeles, CA 90071 |
| (312) 558-5600 | (213) 615-1700 |
| | |
| Clement S. Roberts* | Christopher J. Cariello* |
| ORRICK HERRINGTON & SUTCLIFFE LLP | ORRICK HERRINGTON & SUTCLIFFE LLP |
| 405 Howard Street | 51 West 52nd Street |
| San Francisco, CA 94015 | New York, NY 10019 |
| (415) 773-5700 | (212) 506-5000 |
| | |
| | Mark S. Puzella* |
| | R. David Hosp* |
| | Sheryl K. Garko* |
| | Laura B. Najemy* |
| | ORRICK HERRINGTON & SUTCLIFFE LLP |
| | 222 Berkely Street, Suite 2000 |
| | Boston, MA 02116 |
| | (617) 880-1801 |

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

*Pro Hac Vice

### CERTIFICATE OF SERVICE

I certify that on January 9, 2025 a true and correct copy of the foregoing was served by email to the parties of record.

*/s/ Michael S. Elkin*