IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS INC., *et al.*<br>    Plaintiffs,<br><br>v.<br><br>ALTICE USA, INC. and CSC HOLDINGS, LLC,<br><br>    Defendants. | Case No. 2:23-cv-576-JRG-RSP |

### [PROPOSED] ORDER ON AGREEMENTS REGARDING PLAINTIFFS' AND DEFENDANTS' MOTIONS TO COMPEL (DKT. NOS. 74, 85, 86, 114, 115, 117)

Plaintiffs Warner Records Inc., Atlantic Recording Corporation, Atlantic Records Group LLC, Bad Boy Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Fueled by Ramen LLC, Lava Records LLC, Maverick Recording Company, Nonesuch Records Inc., Rhino Entertainment Company, Rhino Entertainment LLC, Roadrunner Records, Inc., Rykodisc, Inc., Warner Music Inc., Warner Music International Services Limited, Warner Music Nashville LLC, Warner Records/QRI Venture, Inc., Sony Music Entertainment, Arista Music, Arista Records, LLC, LaFace Records, LLC, Sony Music Entertainment US Latin LLC, Ultra Records, LLC, Volcano Entertainment III, LLC, Zomba Recording LLC, Warner Chappell Music, Inc., Cotillion Music, Inc., Gene Autry's Western Music Publishing Co., Golden West Melodies, Inc., Intersong U.S.A., Inc., Unichappell Music Inc., W Chappell Music Corp., W.C.M. Music Corp., Warner-Tamerlane Publishing Corp., Sony Music Publishing (US) LLC, Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music Inc., EMI Consortium Music Publishing, Inc., EMI Consortium Songs, Inc., EMI Entertainment World Inc., EMI Gold Horizon Music Corp., EMI

1

Miller Catalog Inc., EMI Mills Music Inc., EMI Robbins Catalog Inc., EMI U Catalog Inc., EMI UNART Catalog Inc., Famous Music LLC, Jobete Music Co., Inc., Screen Gems-EMI Music Inc., Stone Agate Music, and Stone Diamond Music Corp. (collectively, "Plaintiffs") and Defendants Altice USA, Inc. and CSC Holdings, LLC ("Defendants" or "Altice") (collectively, "Parties") hereby submit this Agreed Order regarding Defendants' Motion to Compel Documents Relevant to Key Statutory Damages Factors (Dkt. 74), Motion to Compel Information Regarding Plaintiffs' Purported Evidence of Direct Infringement (Dkt. 85), Motion to Compel Plaintiffs' Interrogatory Responses (Dkt. 86), and Motion to Compel Documents from Key Email Custodians, Documents Relevant to the Validity of Plaintiffs' Copyright Registrations, and Documents Concerning Payments Between Plaintiffs and Key Third Parties Relating to Direct Infringement Evidence at Issue (Dkt. 117) and Plaintiffs' Motion to Compel Production of Core Evidence and a Response to Interrogatory No. 3 (Dkt. 114) and Motion to Compel *Altice I* Expert Reports and Instant Messenger Conversations Relevant to Core Issues (Dkt. 115) (collectively, the "Motions").

On January 18-30, 2025, the Parties' lead and local counsel completed their meet and confer efforts and reached the following agreements regarding the Motions.

### I. Defendants' Motion to Compel Documents Relevant to Key Statutory Damages Factors (Dkt. 74)

A. <u>Plaintiffs' Revenue for the Works-in-Suit (No. 93)</u>

Plaintiffs agree to produce per-work revenues for the Warner Music Plaintiffs, based on a reasonable investigation.  Such production shall be substantially completed by February 7, 2025. Plaintiffs have already agreed to and have produced per-work revenues for the Warner Chappell Plaintiffs, Sony Music Entertainment Plaintiffs, and Sony Music Publishing Plaintiffs based on a reasonable investigation.

B. <u>Valuations of Plaintiffs' Copyrights (Nos. 77 & 79)</u>

2

Altice withdraws these requests from its motion without prejudice.

C. <u>Agreements with Digital Service Providers (No. 96)</u>

This Court previously ordered the plaintiffs in the case styled *BMG Rights Management (US) LLC et al. v. Altice USA, Inc. et al.*, Civil Action No. 2:22-CV-471-JRG (E.D. Tex) ("*Altice I*") to produce, over the *Altice I* plaintiffs' objection, their agreements and any amendments with digital service providers relating to the exploitation of any portion of their catalogues, including the copyrighted works at issue in that case. *Altice I*, Dkt. 110. In recognition of that order in *Altice I*, Plaintiffs agree to produce their agreements, and any amendments related thereto, with Spotify, Apple Music, Amazon, and Pandora (the "Third-Party DSPs") in effect during December 1, 2020 to present relating to the exploitation of any portion of Plaintiffs' respective catalogues. Plaintiffs are to provide the Third-Party DSPs with prompt notice of this Order, upon which Plaintiffs, Altice, and the relevant Third-Party DSPs are to work together to pursue an agreed-upon structure for the production to ensure adequate protection of the Third-Party DSPs. Plaintiffs shall take reasonable steps within their power to ensure that the production be made within 30 days of this Order. If the production is not completed within 30 days of this Order, Plaintiffs shall file a status update with the Court detailing what remains to be produced and why.

D. <u>Relationship with Musicians and Motivation for Lawsuit (Nos. 11, 105-107, 110-111)</u>

1. <u>Nos. 11, 105-106, 110</u>: Altice withdraws these requests from its motion without prejudice.

2. <u>No. 107</u>: Based on Plaintiffs' representation that they do not currently possess any responsive documents, this request is resolved and withdrawn without prejudice.

3. <u>No. 111</u>: Plaintiffs agree to supplement their production of their financial statements for the period 2019-2023 to include an annual total for the amount of royalties paid. This obligation is premised on Plaintiffs' ability to generate this information. The production shall be substantially completed by February 14, 2025.

3

    E. <u>Documents Relating to the Impact of Copyright Infringement and Plaintiffs' Mitigation Efforts (Nos. 19-24, 53, 78, 84, 86-89, 114)</u>

        1. <u>Nos. 19, 21-24, 78, 84, 88-89</u>: Altice withdraws these requests from its motion without prejudice.

        2. <u>Nos. 20, 87, 114</u>: Plaintiffs agree to search for and produce responsive, non-privileged electronic mail ("email") or other forms of electronic correspondence, as defined by the ESI Order, subject to the parties' agreement on search terms and custodians. Altice withdraws these requests as to non-email and non-electronic correspondence without prejudice.

        3. <u>No. 53</u>: Based on Plaintiffs' representation that they do not possess any responsive documents, this request is resolved and withdrawn without prejudice.

        4. <u>No. 86</u>: Plaintiffs agree to produce all non-privileged documents relating to the RIAA's July 30, 2015 letter to BitTorrent, Inc. in their possession, custody, and/or control for the three months before and after the date of the letter, after a reasonable search. The production of these documents shall be substantially completed by January 31, 2025.

**II. Defendants' Motion to Compel Information Regarding Plaintiffs' Purported Evidence of Direct Infringement (Dkt. 85)**

    A. <u>Plaintiffs' Relationship with Third Parties (Nos. 36, 108)</u>

        1. <u>No. 36</u>: Plaintiffs agree to produce non-privileged documents and communications with or from the RIAA, OpSec, and Audible Magic regarding the works-in-suit in connection with peer-to-peer ("P2P") infringement. The production of non-email and non-electronic correspondence shall be substantially completed by January 31, 2025. The production of email and electronic correspondence, as defined by the ESI Order, shall be made in accordance with the parties' separate agreements on the timing of such productions.

        2. <u>No. 108</u>: Altice withdraws this request from its motion without prejudice.

    B. <u>Information Regarding the Works-in-Suit (Nos. 5, 6, 17 & Interrogatory No. 1)</u>

Plaintiffs agree to produce authentic copies of the sound recordings-in-suit containing ISRCs in the metadata, to the extent they can be located based on a reasonable search. Plaintiffs agree to consider requests from Altice for additional ISRCs related to the sound recordings-in-suit, as necessary. Based on Plaintiffs' representation that the Music Publisher Plaintiffs do not readily possess recordings of their works-in-suit, this request is resolved and withdrawn without

4

prejudice as to the Music Publisher Plaintiffs. The production of these documents shall be substantially completed by January 31, 2025.

C. Works and ISPs Targeted in Plaintiffs' Notice Program (Nos. 54 and 30)

1. No. 54: Based on Plaintiffs' representation that (i) they do not possess information regarding when they or an entity acting on their behalf, including OpSec, first began sending notices relating to the works-in-suit or otherwise became aware of their works-in-suit being available on P2P networks, and (ii) that they are informed by OpSec that OpSec also does not have this information reasonably accessible, this request is resolved and withdrawn without prejudice.

2. No. 30: Based on Plaintiffs' representation that they do not have any agreements with ISPs regarding the sending of notices of alleged copyright infringement, excluding as to the Copyright Alert System, this request is resolved and withdrawn without prejudice.

D. Chain of Custody Relating to Verifications of Works-in-Suit and Alleged Direct Infringement Evidence (Nos. 57 & 58)

In response to these requests, Plaintiffs agree to produce non-privileged email and electronic correspondence based on agreed-upon search terms, pursuant to the ESI Order, in connection with the RIAA notice program at issue in this case that resulted in the purported detection of alleged infringement on Altice's network and the notices sent to Altice. Based on Plaintiffs' representation that they do not possess any responsive non-email and non-electronic correspondence, this request is resolved as to non-email and non-electronic correspondence and withdrawn without prejudice. The production of email and electronic correspondence shall be made in accordance with the parties' separate agreements on the timing of such productions.

III. **Defendants' Motion to Compel Plaintiffs' Interrogatory Responses (Dkt. 86)**

1. Interrogatory No. 4

The Sony Music Entertainment Plaintiffs and Warner Music Plaintiffs agree to supplement their response to this interrogatory by identifying, to the extent such information can be determined from their available business records, which of the pre-1972 Sound Recordings-

in-Suit were first released on an album or compilation and the name of such album or compilation.  Plaintiffs expressly preserve all objections to the relevance or admissibility of this response.  Plaintiffs shall supplement the interrogatory by January 31, 2025.  Altice reserves the right to raise issues with the sufficiency of Plaintiffs' supplemental response.

A. <u>Interrogatory No. 6</u>

Plaintiffs agree to supplement their response to this interrogatory by identifying each notice of alleged copyright infringement corresponding to each work-in-suit sent to Altice in the 2020 RIAA Notice Program. Plaintiffs shall supplement the interrogatory by February 14, 2025.

B. <u>Interrogatory No. 8</u>

Plaintiffs agree to supplement their response to this interrogatory by providing a substantive response.  Plaintiffs shall supplement the interrogatory by January 31, 2025.  Altice reserves the right to raise issues with the sufficiency of Plaintiffs' supplemental response.

C. <u>Interrogatory No. 10</u>

Plaintiffs agree to supplement their response to this interrogatory by providing a substantive response.  Plaintiffs shall supplement the interrogatory by January 31, 2025.  Altice reserves the right to raise issues with the sufficiency of Plaintiffs' supplemental response.

IV. **Defendants' Motion to Compel Documents from Key Email Custodians, Documents Relevant to the Validity of Plaintiffs' Copyright Registrations, and Documents Concerning Payments Between Plaintiffs and Key Third Parties Relating to Direct Infringement Evidence at Issue (Dkt. 117)**

A. <u>Plaintiffs' Refusal to Produce Email Communications from Key Custodians</u>

1. <u>Executive Custodians</u>: Plaintiffs agree to add the individuals defined as the "Executive Custodians" in their Opposition as ESI custodians and will produce their documents relating to the impact of peer-to-peer infringement on Plaintiffs' businesses, subject to the parties' subsequent agreement on search terms and custodians.

2. <u>Tim Meade:</u> Altice withdraws the portion of this request regarding the inclusion of Mr. Meade as an ESI custodian from its motion without prejudice.

B. <u>Work-for-Hire Agreements for the Sound Recordings-in-Suit (No. 15)</u>

Altice withdraws this request from its motion without prejudice.

C. <u>Payments to Notice Senders (No. 109)</u>

Plaintiffs agree to produce documents showing their payments made to OpSec in connection with their prior lawsuits against internet service providers. The production of these documents shall be completed by January 31, 2025.

V. **Plaintiffs' Motion to Compel Production of Core Evidence and a Response to Interrogatory No. 3 (Dkt. 114)**

A. *Category 25*

Altice will produce all notices of alleged infringement in its possession, custody, or control that it received during the Discovery Period (December 1, 2019 through December 7, 2023), based on a reasonable investigation. For the avoidance of doubt, this production shall not count as one of Plaintiffs' 10 custodians under the terms of ESI Order. *See* Dkt. 107. This compromise shall, however, be considered in determining the reasonableness of any request by Plaintiffs for additional search terms or additional custodians beyond the ten provided by the ESI Order. The production of these documents shall commence on February 7, 2025 and be substantially completed by February 21, 2025.

B. *Category 12 and 16*

Altice will produce the Email Notification Table (reflecting notices from approximately July 2021 through December 7, 2023) and any standalone emails with Altice subscribers regarding notices of alleged infringement in its possession, custody, or control for the Discovery Period (December 1, 2019 through December 7, 2023), subject to a reasonable investigation. This production shall not count as one of Plaintiffs' 10 custodians under the terms of ESI Order. *See* Dkt. 107. This compromise shall, however, be considered in determining the reasonableness of

any request by Plaintiffs for additional search terms or additional custodians beyond the 10 provided by the ESI Order. Altice shall produce the Email Notification Table by January 31, 2025. The production of standalone emails shall be substantially completed by February 21, 2025.

C. *Categories 57 and 59*

Altice will produce documents sufficient to show the actual monthly revenue that Altice received, on a subscriber-by-subscriber basis, from each subscriber that was the subject of one or more notice(s) of alleged infringement during the Discovery Period (December 1, 2019 through December 7, 2023), based on a reasonable investigation. Such documents shall also include the level or tier of internet service Altice provided to each such subscriber. The production of these documents shall be completed by February 14, 2025.

D. *Interrogatory No. 3*

To the extent Plaintiffs respond to Altice's Interrogatory No. 8 by explaining that Plaintiffs are seeking to hold Altice liable for secondary infringement upon receipt of a third or later notice of alleged infringement for a given subscriber, Altice will supplement its response to Interrogatory No. 3 to identify, by account number or customer ID (as used in Altice's DMCA customer table), all subscribers who were the subject of a third or later notice of alleged infringement during the Discovery Period whose internet service Altice terminated for non-pay. Subject to the conditions above, Altice shall supplement its response to this interrogatory within 21 days of receipt of Plaintiffs' response to Interrogatory No. 8.

**VI.     Plaintiffs' Motion to Compel *Altice I* Expert Reports and Instant Messenger Conversations Relevant to Core Issues (Dkt. 115)**

E. *Altice I Expert Reports*

Altice will produce all expert reports served in *Altice I*, by any *Altice I* expert that Plaintiffs retain in this action. Subject to the next paragraph, such production shall be made promptly upon

Plaintiffs' disclosure of such retention. Altice will also produce all expert reports served in *Altice I* by any of the *Altice I* experts that Altice retains in this action. To the extent not already produced, and subject to the next paragraph, such production shall be made contemporaneously with the first expert report served by such expert in this action.

To the extent any *Altice I* expert report produced in this case are designated by the *Altice I* plaintiffs under the *Altice I* protective order or contain material designated by the *Altice I* plaintiffs under the *Altice I* protective order, Plaintiffs shall obtain consent from the *Altice I* plaintiffs to receive such materials in this case. Absent such consent, Plaintiffs shall file a motion with the Court requesting permission to receive such information subject to the Protective Order in this case. Altice shall not oppose such a motion by Plaintiffs. For the avoidance of doubt, Plaintiffs in this action are not seeking the *Altice I* plaintiffs' internal proprietary or financial information (i.e. their business strategies, financials, contractual terms, etc.), which may be redacted from such reports.

F. <u>Instant Messenger Conversations</u>

Altice will produce the relevant messages surrounding the messages identified by Plaintiffs in Exhibit B (Dkt. 115-3) that are not otherwise within the review universe in this case (the "Subject Messages"). Altice shall review the 10 messages before and 10 messages after the Subject Messages and produce all messages within that range that are independently responsive to Plaintiffs' requests or otherwise necessary to understand the context of the Subject Messages. If Plaintiffs believe that messages outside of the scope of review described above are necessary to understand the context of the Relevant Messages, then Altice will consider reasonable requests for the review and production of such additional messages. The production of these documents shall be completed by February 14, 2025. With respect to the messages identified by Plaintiffs in

Exhibit B (Dkt. 115-3) that are already within the current review universe in this case, those messages will be produced consistent with the ESI Order (Dkt. 107).

Any item in the Motions (Dkt. Nos. 74, 85, 86, 114, 115, 117) not specifically addressed above is considered resolved by the Parties and withdrawn.