# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS INC. et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:23-cv-00576-JRG-RSP |
| | ) |
| ALTICE USA, INC. AND CSC HOLD-INGS, LLC, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT ALTICE'S MOTION TO COMPEL INTERROGATORY RESPONSES (DKT. 136)

Without adhering to the Court's substantive meet-and-confer requirements, Altice moves (Dkt. 136) to (1) overrule all of Plaintiffs' compound and numerosity objections and (2) compel Plaintiffs to answer Interrogatory Nos. 14-25, without addressing any of Plaintiffs' remaining objections to those interrogatories. The parties only conferred (for roughly five minutes following an hour-long call on search terms) on Altice's blanket contention that its interrogatories are not compound. No meaningful conference was held on any specific interrogatory; on Plaintiffs' other objections to Interrogatories 14-25; or Altice's requested alternative relief. Altice's failure to confer is clear in its motion, which only raises one of Plaintiffs' objections: that Altice impermissibly combined interrogatories to circumvent the agreed limits. But Altice does not substantively explain why its interrogatories are permissible; it just asserts that they are. The motion also does not show any of Plaintiffs' other objections (much less address them), nor the text of Interrogatories 15-16, 19-20, or 24, despite asking the Court to compel Plaintiffs to respond to them.

The Court must not overrule Plaintiffs' remaining objections sight unseen, nor reward Altice with the excess discovery it requests as alternate relief. Altice has not shown good cause to do so and will soon depose Plaintiffs' witnesses on overlapping 30(b)(6) topics. *See* Ex. A (comparing topics). While Plaintiffs do not believe the parties ever reached impasse on the compound and numerosity issues, they oppose Altice's motion as set forth below and reserve all rights on the other objections not addressed in Altice's motion. The motion should be denied.

I.     **PROCEDURAL HISTORY**

Altice served 25 interrogatories comprising more than 50 discrete subparts. This is well above the agreed limit of "25 interrogatories per side." Dkts. 48, 50. For those beyond the agreed 25-parts (*i.e.*, Interrogatory Nos. 14-25), Plaintiffs objected on multiple grounds but rested on the threshold objection that Altice exceeded the 25-interrogatory limit. Plaintiffs stated the same numerosity objection, supported by the same case law, that Altice relied on in refusing to answer

several of Plaintiffs' venue interrogatories and RFAs, even quoting Altice's own objections. *See* Dkt. 136-1. Notably, Altice only answered those venue interrogatories (but not the RFAs) after Plaintiffs explained, in detail, why they were not compound during a meet and confer. On August 29, 2024, Plaintiffs made the same objections to three of Altice's First Interrogatories: 2, 4, and 5. Altice raised no issue and did not seek to confer. On January 22, 2025, Plaintiffs repeated the objections in responding to Altice's Second Set of Interrogatories.

On January 31, after an hour-long call on search terms, Altice asked if Plaintiffs intended to stand on the numerosity objection. Plaintiffs confirmed that they did, subject to an explanation why the challenged interrogatories are not compound. In a subsequent email, Altice categorically declared that six of its interrogatories were "logically and factually related to the primary request" and "therefore clearly subsumed" into one but did not address the specific language of those interrogatories and provided no further detail. *See* Ex. B. On February 5, Plaintiffs "reiterate[d] their request that Altice respond with substantive justifications for each of its compound interrogatories so that the parties may discuss the issue constructively." *Id*. Altice never responded, and instead filed this motion, where it stated its positions on Plaintiffs' compound objections for the first time. Altice never requested Plaintiffs' position on leave to exceed the agreed number of interrogatories.

## II.   LEGAL STANDARD

"When a multi-part interrogatory is challenged as being multiplicitous, the Court must decide what constitutes a 'discrete separate subject.'" *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016) (J. Bryson). Although there is no precise test, most courts follow the "related question" approach, which asks if the subparts are "logically or factually subsumed within and necessarily related to the primary question[.]" *See Moser v. Navistar Int'l Corp.*, 2018 WL 3614012, at *6 (E.D. Tex. July 27, 2018) (J. Mazzant). "Stated differently, 'where the first question can be answered fully and completely without answering the second question,

then the second question is totally independent of the first and not factually subsumed within it.'" *Id.* (cleaned up). The issue ultimately turns on a "case-by-case assessment." *Id.*

## III.   ARGUMENT

Plaintiffs address Altice's arguments, which were only to numerosity.

### A.   Altice's Interrogatories Far Exceed 25 Discrete Subparts.

**Interrogatory No. 2.** This interrogatory asks Plaintiffs to state on an annual basis, for each of 10,700 works in suit, (1) gross revenue and (2) net revenue, both organized by work and channel (*i.e.*, streaming, download, physical copy), (3) "the number of units per channel," and "how such [4] gross and [5] net revenue was calculated." *See* Dkt. 136-1 at 1. Altice asserts but does not explain why the "subparts [are] plainly related to and subsumed within the primary request." Mot. 5. Even crediting Altice's assertion, this request has at least three discrete subparts: (1) revenue for each work by channel; (2) number of units per channel; and (3) a description of how the revenue was calculated. Because revenue is necessarily stated without identifying the number of "units per channel" or describing the calculation methodology, these questions are not "factually subsumed" within the primary request. *Moser*, 2018 WL 3614012 at *6. Indeed, collecting the revenue is a distinct task from identifying and collecting the unit information.

**Interrogatory No. 4.** Altice again asserts without explanation that the request "clearly subsumes the subparts." Mot. 5. In fact, the primary request is to (1) identify works-in-suit "first issued or released together" on an album or compilation. Discrete subparts follow, seeking (2) the name of the original album for each such work, and (3) the album's release date. Dkt. 136-1 at 1. The primary question can be fully answered without identifying the album name or release date. Both subparts required distinctly burdensome factual investigations, as explained in prior declarations regarding this interrogatory. Dkt. 93-2, 93-3. Even crediting Altice's position, it has at least two parts: (1) identification of works released together and (2) album name and date.

3

**Interrogatory No. 5.** For this interrogatory, Altice offers one conclusory sentence. This interrogatory asks Plaintiffs to (1) "provide all details" about the "origin" of each of more than 6,700 "audio file produced in this litigation." The "details" requested are not "factually subsumed" into the primary request because they relate, not to the "origin," but Plaintiffs' "receipt and download" of files—including, (2) "the date of receipt or download," (3) "the source from which it was received or downloaded," (4) "all systems involved in the receipt or download," and (5) "all individuals involved in the receipt or download." Dkt. 136-1 at 1-2. *See, e.g.*, *Duron v. Cosco Wholesale Corp.*, 2024 WL 2243305, at *3 (W.D. Tex. Feb. 2, 2024) (holding when Plaintiff first gained knowledge of an event is separate from request for details of plaintiff's location and clothing at the time of event). Even crediting Altice's position, this has at least three discrete subparts: (1) origin of the file, including date and source, (2) systems involved, and (3) all individuals involved.

**Interrogatory No. 18.** Again, Altice only asserts a conclusion that the subparts are "elaboration on the primary request." This request asks Plaintiffs to identify (1) what portion of a hypothetical damage award or settlement from this lawsuit will be remitted to artists/songwriters; (2) the methodology for determining said amount; (3) hypothetical plans for said distribution; (4) documents governing said distribution; and (5) three persons most knowledgeable of the foregoing. The primary request is for *identification* of a sum certain; the distinct subparts ask for unrelated description, factual inquiry, and analysis about the *distribution* of a hypothetical award. *See Dimitrijevic v. TV&C GP Holding Inc.*, 2005 WL 8164073, at *4 (S.D. Tex. Aug. 24, 2005) (principal question in "Interrogatory No. 3" sought details of termination and subpart concerning documents related to termination "is a separate question"); *Eli Lilly*, at 197 (request for description of "mechanism" separate from identification of "Persons" and "Documents" concerning mechanism).

4

**Interrogatory No. 22.** Altice makes the same conclusory assertion as Interrogatory No. 18. In fact, this interrogatory counts as 12—four requests about three separate litigations—seeking: (1) identification of portions of settlements from other lawsuits remitted to artists; (2) description of the methodology of such distribution; (3) identification of artist agreements or policies governing such distribution; and (4) identification of three people most knowledgeable on the foregoing. The primary request asks Plaintiffs to *identify* three sums certain. The first subpart asks for a description of the methodology used to *distribute* such sums, which is neither subsumed into nor required to fully answer the primary request for specific monetary figures. The remaining two subparts demand Plaintiffs undertake a complicated investigation to identify, potentially, thousands of artist agreements governing distribution from other lawsuits and separately identify the three people "most knowledgeable." *See Dimitrijevic*, 2005 WL 8164073, at *4; *Eli Lilly*, at 197.

**Interrogatory No. 25.** Altice baldly asserts that this request is "a single topic." Mot. 6-7. This Interrogatory asks Plaintiffs to (1) "describe in detail" the process for Plaintiffs' creation of complex financial spreadsheets generated for this litigation at Altice's request, and (2) a technical description of each spreadsheet's contents. The primary request—how Plaintiffs created each spreadsheet—can be fully and completely answered without answering the second question—a technical description of the "meaning of the terms, abbreviations, and/or headings of the rows and/or columns contained within." This makes "the second question [] totally independent of the first and not factually subsumed within it." *Moser*, 2018 WL 3614012, at *6.

**Interrogatory Nos. 11-14, 17, 18, and 21-23**. Each of these interrogatories includes a copy-and-paste subpart to "identify the three (3) Persons most knowledgeable about [each respective] topic." Without addressing the specifics of any interrogatories, Altice asserts the "law is clear" that these are not separate subparts, but it provides no authority to that effect. *See* Mot. 2-3.

5

Altice relies on two decisions from Judge Schneider—*Keranos* and *EMG Tech.*—that only state, in related dicta, that a request to identify persons does not "*automatically*" count as separate. *See, e.g.*, *Keranos*, 2013 WL 5763738, at *2 (E.D. Tex. Aug. 5, 2013) (emphasis added). Similarly, in *Advanced Neuromodulation Sys.*, the court said identification of a person with knowledge was "permissible" in requesting "the basis" of a denial to allegations of misrepresentation in a patent prosecution. 2005 WL 8161796, at *3 (E.D. Tex. Oct. 25, 2005). Neither case provides the "clear" law Altice contends sets a blanket rule.

By contrast, in Plaintiffs' more recent *Moser* case, Judge Mazzant considered interrogatories with a subpart requesting identities of individuals involved in the subject matter of the primary request. 2018 WL 3614012, at *6-7. Judge Mazzant held that because each primary request could be completely answered without answering the challenged subpart, they were separate. *Id.* at 7-9. As in *Moser*, Altice issued nine primary requests, each followed by a separate subpart asking for identification of persons "most knowledgeable" about the primary request, and in all nine cases, the latter is not needed to answer the former. These requests require separate investigations Plaintiffs would need to undertake. For example, as shown in Nos. 18 and 22 (above), Plaintiffs would need to conduct a separate investigation from, generally speaking, investigations into calculations and documents, to identify persons knowledgeable on the topic and then determine those "most knowledgeable."[1] Stepping back, Altice's position would mean *every* interrogatory issued in *every* case could tack on an independent request for persons with the "most knowledge."

---

[1] Plaintiffs acknowledge that they included similar subparts in two of their interrogatories, which should be treated as separate requests if the Court agrees with Plaintiffs' position here.

6

### B. Altice Does Not Show Good Cause for Expanding the Number of Agreed Interrogatories.

Altice's only arguments for good cause amount to (1) citing the amount in controversy, which is irrelevant to a good cause analysis, *see June Med. Serv., LLC v. Gee*, 2018 WL 9946296, at *1 (M.D. La. Sept. 25, 2018) ("[T]he issue becomes whether the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party."), and (2) the unilateral contention that its interrogatories ask for "information fundamental to the parties' claims and defenses," Mot 1, even though the information sought by No. 22, for example, will be summarily excluded per the Court's Standing Order on Motions *In Limine* in Non-Patent Civil Cases. *See, e.g.*, Court MIL No. 8 (precluding "evidence, testimony, or argument regarding either party's other litigations"). Neither conclusory assertion establishes good cause here.

Nor should Altice be rewarded with excess discovery after failing to comply with the Court's meet-and-confer requirements. *See Emerging Automotive LLC v. Kia Corp.*, 2:23-cv-00437-JRG, Dkt. 156 (E.D. Tex. Feb. 15, 2025) (Gilstrap, J.) (denying motion explaining that "[t]he meet and confer rules applicable in this District require thoughtful, detailed, and meaningful communications between counsel. The Court expects nothing less. Those expectations in this case have not been met."). Altice agreed to a limit on interrogatories and should be held to it. Altice's request to more than double the limit at this late stage would prejudice Plaintiffs. Altice is not without options to obtain discovery and will depose Plaintiffs' witnesses on the same topics it wants leave to also pursue through excessive interrogatories. Ex. A.

### IV. CONCLUSION

For the foregoing reasons, Altice's motion should be denied.

Dated: February 28, 2025

Respectfully submitted,

*/s/ Jeffrey M. Gould w/permission*
*Rudolph Fink IV*

| | |
|---|---|
| William E. Davis, III | Jeffrey M. Gould (*pro hac vice*) |
| Texas State Bar No. 24047416 | Matthew J. Oppenheim (*pro hac vice*) |
| bdavis@davisfirm.com | Corey Miller (*pro hac vice*) |
| Rudolph "Rudy" Fink IV | Keith Howell (*pro hac vice*) |
| Texas State Bar No. 24082997 | OPPENHEIM + ZEBRAK, LLP |
| rfink@davisfirm.com | 4530 Wisconsin Avenue, NW, 5th Floor |
| THE DAVIS FIRM, PC | Washington, DC 20016 |
| 213 N. Fredonia Street, Suite 230 | Telephone: 202-480-2999 |
| Longview, Texas 75601 | jeff@oandzlaw.com |
| Telephone: (903) 230-9090 | matt@oandzlaw.com |
| Facsimile: (903) 230-9661 | corey@oandzlaw.com |
| | khowell@oandzlaw.com |

Alexander Kaplan (*pro hac vice*)
Bret Matera (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
bmatera@oandzlaw.com

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this February 28, 2025 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Rudolph Fink IV*
Rudolph Fink IV