██████████████████████████████

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Warner Records, Inc., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Altice USA, Inc., et al., <br><br> Defendants. | Case No. 2:23-cv-00576-JRG-RSP <br><br> ████████████ |

## DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT LIMITING PLAINTIFFS' CLAIMS FOR STATUTORY DAMAGES

██████████████████████████████████████

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF ISSUES ............................................................................................................. 3

STATEMENT OF UNDISPUTED FACTS .................................................................................... 3

ARGUMENT ................................................................................................................................... 6

    I.    Legal Standard. ........................................................................................................ 6

    II.    The At-Issue Sound Recordings Registered Together as Part of a Single Album or Compilation Must Be Treated as One Work for Purposes of Statutory Damages. ................................................................................................................. 7

    III.    Compositions and Derivative Sound Recordings Must Be Treated as One Work for Purposes of Statutory Damages. ............................................................. 11

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................6

*Arista Records, Inc. v. Flea World, Inc.*,
  2006 WL 842883 (D.N.J. Mar. 31, 2006) ............................................................................1, 6

*Bryant v. Media Right Prods.*,
  603 F.3d 135 (2d Cir. 2010) ....................................................................................................7

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ..............................................................................................................12

*Cullum v. Diamond A. Hunting, Inc.*,
  484 F. App'x 1000 (5th Cir. 2012) ..........................................................................................8

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016) ........................................................................................2, 11, 12

*Huffman v. Activision Publ'g, Inc.*,
  2020 WL 8678493, at *14-15 (E.D. Tex.), *report and recommendation
  adopted*, 2021 WL 2141352 .....................................................................................................6

*James v. State Farm Mut. Auto. Ins. Co.*,
  743 F.3d 65 (5th Cir. 2014) .....................................................................................................6

*Palladium Music, Inc. v. EatSleepMusic, Inc.*,
  398 F.3d 1193 (10th Cir. 2005) .............................................................................................11

*TQ Delta, LLC v. CommScope Holding Co.*,
  657 F. Supp. 3d 892 (E.D. Tex. 2023) ....................................................................................6

*UMG Recs., Inc. v. Grande Commc'ns Networks, LLC*,
  118 F.4th 697 (5th Cir. 2024) ........................................................................................ passim

*UMG Recs., Inc. v. MP3.COM, Inc.*,
  109 F. Supp. 2d 223 (S.D.N.Y. 2000) .....................................................................................7

*Wood v. Native Surf, LLC*,
  2024 WL 1516328 (E.D. Tex. Apr. 8, 2024) ...........................................................................6

**Statutes**

17 U.S.C. § 101 ..................................................................................................................2, 7, 10, 11

17 U.S.C. § 409(9) ...........................................................................................................10

17 U.S.C. § 504 ........................................................................................................ *passim*

17 U.S.C. § 1401 .............................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 56 .........................................................................................................1, 6

H.R. Rep. No. 94-1476 (1976) .....................................................................................8, 12

NIMMER ON COPYRIGHT ...................................................................................................11

PATRY ON COPYRIGHT .........................................................................................7, 11, 12

S. Rep. No. 94-473 (1975) ..............................................................................................12

Defendants Altice and CSC Holdings, LLC (collectively, "Altice") move for partial summary judgment under Rule 56, seeking to resolve as a matter of law the number of "works" eligible for an award of statutory damages under 17 U.S.C. § 504(c)(1).  *See UMG Recs., Inc. v. Grande Commc'ns Networks, LLC*, 118 F.4th 697 (5th Cir. 2024).

## INTRODUCTION

Since Plaintiffs filed this case, the Fifth Circuit has issued a controlling opinion emphasizing that the text of the Copyright Act means what it says as to statutory damages on a per-work basis: "all the parts of a compilation or derivative work constitute *one work*." *Grande*, 118 F.4th at 720 (quoting 17 U.S.C. § 504(c)(1) (emphasis added)).  This recent and controlling legal authority means that, even could they prove liability, Plaintiffs simply cannot recover multiple statutory-damages awards for multiple sound recordings on the same album, nor for both a musical composition and a sound recording of a performance of that composition.

It is a straightforward exercise to apply this legal rule to the ▓▓▓▓ sound recordings and compositions Plaintiffs assert in this case, and doing so at this stage will aid a just and orderly disposition of this dispute.  Undisputed facts establish that the maximum number of works eligible for statutory damages is roughly half of what Plaintiffs claim, lowering Altice's total potential liability by more than $750 million.  Establishing this now will clarify the value of this case for the parties and the Court, and remove from any trial a laborious but mechanical work-counting exercise that would bore the jury and waste time.  Courts have recognized that number-of-works issues are appropriately resolved by the Court prior to trial.  *See Arista Records, Inc. v. Flea World, Inc.*, 2006 WL 842883, at *22 (D.N.J. Mar. 31, 2006) (granting partial summary judgment to "limit available statutory damages" to one award per registered album).

The "one work, one award" rule applies here in two respects.

1

*First*, when a plaintiff sues for infringement of multiple sound recordings that are part of a single compilation—most often an album—those sound recordings are treated as one work for purposes of statutory damages. *Grande*, 118 F.4th at 720–22. Thus, when Plaintiffs assert infringement of 14 tracks from Led Zeppelin's 1975 album *Physical Graffiti* (as they do here), only one award is available for the album. *See id.* Here, ▮▮▮▮▮▮▮ of the sound recordings for which Plaintiffs claim infringement by Altice subscribers were registered with at least one other at-issue sound recording as part of an album or other compilation. *See infra*, Statements of Undisputed Fact ("SUF") 6–7.

*Second*, when a plaintiff sues for infringement of both a copyrighted musical composition and a sound recording of a performance of that composition, the pair are treated as a single "work" because the sound recording is definitionally a "derivative work." § 504(c)(1); *see also, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 95 (2d Cir. 2016) ("Sound recordings are defined in section 101 as a species of derivative work of the underlying musical composition …." (citation omitted)). Thus, while Plaintiffs can allege infringement of, for example, both the sound recording and composition of Leonard Cohen's haunting ballad *Suzanne*, they must be treated as a single work for purposes of statutory damages. Nearly half of the compositions Plaintiffs assert in this case have a corresponding, derivative sound recording also at issue.

No issues of material fact prevent this Court from applying *Grande* at summary judgment. Based on Plaintiffs' interrogatory responses, the relevant Copyright Office records related to the works-in-suit, and other record evidence, the ▮▮▮▮ sound recordings and compositions that Plaintiffs assert were infringed comprise no more than ▮▮▮ "works" for purposes of statutory damages, no matter what evidence Plaintiffs may put forth as to liability. This Court should tackle

2

this issue now, at summary judgment, and provide the parties with a binding decision on the scope of the potential statutory damages in this case.

## STATEMENT OF ISSUES

The issue is the number of "works" potentially eligible for an award of statutory damages under § 504(c)(1), including (1) whether that number is reduced to account for sound recordings registered together as part of an album or compilation, and (2) whether that number is reduced to account for sound recordings that are derivative of at-issue musical compositions.

## STATEMENT OF UNDISPUTED FACTS

1.  Altice is one of the largest internet service providers in the country. Plaintiffs are titans of the music industry, with a significant combined portfolio of copyrighted compositions and sound recordings. Compl., Dkt. 1, ¶ 203.

2.  Plaintiffs claim Altice is liable for contributory and vicarious copyright infringement based on allegations that Altice's customers, while accessing Altice's internet services and via P2P networks, unlawfully reproduced or distributed files that embody musical compositions and sound recordings of which Plaintiffs are legal or beneficial copyright owners. *Id.* ¶¶ 109–126.

3.  [1]

---

[1] Citations to "Ex. __" refer to exhibits to the concurrently filed declaration of Jennifer A. Golinveaux in support of this Motion. Pincites refer to the page numbers in the bottom center of the page, in the format "Golinveaux Declaration Ex. __ – Page __." Citations to "App'x A" refer to Appendix A to the Golinveaux Declaration.

███████████████████████████████████████████████

4.  Plaintiffs allege that they have the right to seek statutory damages under § 504(c) "in an amount up to $150,000 with respect *to each work infringed*." Compl. ¶¶ 116, 125 (emphasis added).

5.  Plaintiffs have (1) stated that they intend to seek statutory damages in this case; (2) refused to provide information on "the amount of any actual harm (including lost revenue), if any, that [they] experienced as a result of Altice alleged infringement in this Action"; (3) asserted in verified interrogatory responses that "calculating actual damages is impossible in these circumstances"; and (4) objected to providing information regarding any alleged actual harm as "irrelevant" because they seek statutory damages "regardless of whether actual damages occurred or can be proven." Ex. 2 at 3–4.

6.  ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████   ██████████████
████████████████████████████████████████████████

---

[2] There are also many pre-1972 sound recordings at issue that were included on a compilation or album with other pre-1972 sound recordings. But this Motion does not address those sound recordings or seek partial summary judgment on the number of "works" associated with those recordings. That is because pre-1972 sound recordings, which were not protected by the federal copyright laws until the passage of the Music Modernization Act in 2019, are not registered with the Copyright Office and thus lack the prima facie evidence of their status as compilations that is present for post-1972 sound recordings. *See Grande*, 118 F.4th at 722. Determining whether such pre-1972 recordings were parts of albums or compilations is thus more factually involved than for the post-1972 recordings. *See* 17 U.S.C. § 1401.

███████████████████████████████████████

███████████████████████████████████████

████████████████████

7.  ███████████████████████████████████████

███████████████████████████████████ All, by their nature, are registrations of multiple sound recordings together (which alone suggests they are compilations). *See* Ex. 1 at 2–4, 65–142; App'x A. And the registration documents also uniformly include other hallmarks of being a compilation. ████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

8.  ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████

---

[3] Plaintiffs might associate more than one registration number with an album or compilation when, for example, they separately registered both an unedited, "explicit" version of the relevant album and an edited, "clean" version, or when there is both an original and renewal registration for the same album. *Compare, e.g.*, Ex. A-599 (registration for Nas's 1996 album "It Was Written"), *with* Ex. A-600 (supplement to original registration for "It Was Written"); *compare also* Ex. A-111 (registration for explicit version of Korn's 2016 album "The Serenity of Suffering"), *with* Ex. A-468 (registration for clean version of "The Serenity of Suffering").

9. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

## ARGUMENT

### I. Legal Standard.

"Summary judgment is proper when the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *TQ Delta, LLC v. CommScope Holding Co.*, 657 F. Supp. 3d 892, 898 (E.D. Tex. 2023) (Gilstrap, J.) (quoting Fed. R. Civ. P. 56(a)). "The substantive law identifies the material facts … [and] evidence must be viewed in the light most favorable to the nonmovant." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)). Summary judgment can be granted on all claims in a case, on a particular claim or defense, or, as relevant here, on only part of a claim or defense. Fed. R. Civ. P. 56(a) (allowing a party to seek summary judgment on "part of" a claim or defense); *Wood v. Native Surf, LLC*, 2024 WL 1516328, at *5 (E.D. Tex. Apr. 8, 2024) (granting summary judgment on some elements of a single claim). Courts—including this one—have used summary judgment to consider the scope of damages available to the copyright owner under § 504. *See Arista*, 2006 WL 842883, at *22 (granting partial summary judgment to "limit available statutory damages" to one award per registered compilation); *Huffman v. Activision Publ'g, Inc.*, 2020 WL 8678493, at *14–15 (E.D. Tex.) (Payne, J.), *report and recommendation adopted*, 2021 WL 2141352 (determining that a copyright owner could show a nexus to seek disgorgement of profits). When the nonmovant would bear the burden as to an issue or claim at trial, the movant need only point out the lack of supporting evidence—summary judgment is then appropriate unless the nonmovant produces evidence that could sustain a finding in their favor. *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 68 (5th Cir. 2014).

## II. The At-Issue Sound Recordings Registered Together as Part of a Single Album or Compilation Must Be Treated as One Work for Purposes of Statutory Damages.

The Copyright Act provides that, for purposes of statutory damages, "all the parts of a compilation … constitute one work." § 504(c)(1). It defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* § 101. And it provides that one species of compilation is "collective works," defining a "collective work," in turn, as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id.*; *see also Grande*, 118 F.4th at 723 (noting that a "collective work" is "a species of compilation"); 6 PATRY ON COPYRIGHT § 22:185 (noting that under the Copyright Act, "'collective work' is subsumed as a species of compilation").

An album comprising multiple songs is a "compilation." *See Bryant v. Media Right Prods.*, 603 F.3d 135, 140–41 (2d Cir. 2010) ("An album falls within the Act's expansive definition of compilation. An album is a collection of preexisting materials—songs—that are selected and arranged by the author in a way that results in an original work of authorship—the album."); *Grande*, 118 F.4th at 723–24 ("[M]any of the works in suit are compilations (albums) comprising individual works (songs)."). And given the Copyright Act's plain language, this means that "statutory damages for all infringements" of the songs on an album (or any other compilation of songs) "should result in only one statutory damage award." § 504(c)(1); *Bryant*, 603 F.3d at 141; *UMG Recs., Inc. v. MP3.COM, Inc.*, 109 F. Supp. 2d 223, 225 (S.D.N.Y. 2000) (allowing statutory damages "on a 'per-song' rather than 'per-CD' basis" would "make a total mockery of Congress' express mandate that all parts of a compilation must be treated as a single 'work' for purposes of computing statutory damages, since, as the House Report expressly recognizes, the copyrighted

7

parts of a compilation will often constitute 'independent works for other purposes'" (citing H.R. Rep. No. 94-1476 (1976))).

The Fifth Circuit has adopted this reasoning, concluding that "[w]henever more than one of [the sound recordings asserted by plaintiffs] appeared on the same album, [p]laintiffs are entitled to only one statutory damages award for that album, regardless of how many individual recordings from the album were infringed." *Grande*, 118 F.4th at 720. This is required by the "plain language of the Copyright Act." *Id.* at 721.

*Grande* also considered—and expressly rejected—out-of-circuit cases holding that songs registered together as part of a compilation may nonetheless support separate statutory damages if those songs have "independent economic value," based on "where the market assigns value," or because the "copyright holder or publisher issues material on an independent basis" such as sales of "singles." *Id.* at 721–22. "'One work,'" *Grande* emphasized, "means *one* work." *Id.* at 723 ("If parts of a compilation are counted independently of the compilation and as additive *to* the compilation, they—mathematically and axiomatically—no longer constitute 'one work.'").

Applying *Grande*'s rule here is straightforward, because *all* at-issue sound recordings that were registered together with one or more other at-issue sound recordings are part of albums or other compilations.

*First*, ▮▮▮▮▮▮▮▮▮▮ include one or more separate sound recordings "under a single copyright registration number." *See Cullum v. Diamond A. Hunting, Inc.*, 484 F. App'x 1000, 1002 (5th Cir. 2012) (district court appropriately treated collection of photographs as single work when the plaintiff registered them "under a single copyright registration number"); *see also Grande*, 118 F.4th at 720 n.6 (citing *Cullum*). This alone establishes that the registrations are for "compilations (albums) comprising individual works (songs)" (*Grande*, 118 F.4th at 723–24),

8

particularly given the Sony Plaintiffs' *admission* that ▮

*Second*, while the Warner Plaintiffs have been cagier—▮

▮—the evidence shows that *all* these ▮ registrations bear unmistakable "hallmarks" of albums or other compilations, including those identified in *Grande*. *See* 118 F.4th at 722–23. ▮ expressly indicate that they are works made for hire,[5] and ▮ list a singular album title as the title of the registered work (both of which *Grande* recognized as "hallmarks" of compilations). *Id.*; Exs. A-1–A-755; Ex. 3 at 5–20. These two hallmarks alone account for ▮.[6] Exs. A-1–A-755; Ex. 3 at 5–20. And even a cursory review of the registration documents shows ▮

---

[5] As *Grande* noted, record companies can register sound recordings together as works made for hire only if they are part of a compilation or collective work. 118 F.4th at 723 (noting that, in this context, "the only two possible bases for 'work made for hire' registration are that the work is a 'compilation' or a 'collective work,' which is a species of compilation").

[6] The remaining two are also plainly albums. One lists the "title" as a series of tracks by artist Calvin Harris, but then refers to the "title of the larger work" as "18 Months," Harris's 2012 studio album. Ex. A-233. The other is for a two-song "single" released by The Eagles in 1976 and expressly refers to a "2 s[ided] 7 in. 45 rpm." Ex. A-740. Plaintiffs presumably will not even contest that this is a compilation—they surely have no good-faith basis to do so, as it is easy to find corroboration of this collective two-song release. *See, e.g.*, https://www.discogs.com/master/60110-Eagles-New-Kid-In-Town.

additional indicia that they are for albums or other collections of songs, including hundreds each that:

- list a series of tracks or songs associated with the registration, which aligns with the definition of a collective work as including a "number of contributions … assembled into a collective whole" (§ 101);

- list preexisting material to be excluded from the registration, which *Grande* states is a hallmark of a compilation (118 F.4th at 722 (citing § 409(9)));

- include an express reference to being a "compilation," "collective work," "collection," or "album," or complete sections of the registration application intended only for a compilation or derivative work (which again, *Grande* says is a hallmark of a compilation (118 F.4th at 722)); and/or

- describe the media associated with the registration consistent with an album, such as "album," "compact disc" or "one sound disc."

*See* SUF 7; Exs. A-1–A-755; Ex. 3 at 5–20.  In short, the registration certificates and Copyright Office records unambiguously show that, just as in *Grande*, and as the Sony Plaintiffs have admitted, the sound recordings registered together in this case are parts of albums or compilations.

Because there is no genuine dispute that ▮ of the at-issue sound recordings in this case are associated with ▮ albums or compilations, applying *Grande* and § 504(c)(1) is simple—those ▮ sound recordings can be treated as no more than ▮ separate "works" for purposes of statutory damages.[7]  This Court should hold as much and grant Altice partial summary judgment on this issue.

---

[7] Even if Plaintiffs dispute this specific number, and even were the Court to conclude that there were some genuine issue of fact on a small number of these albums (and there is not), the Court should still grant summary judgment on this issue as to all sound recordings for which Plaintiffs present no genuine dispute that they are part of a compilation (and as to ▮▮▮ that Plaintiffs admit overlap with an at-issue composition, as discussed in Section III).

10

### III. Compositions and Derivative Sound Recordings Must Be Treated as One Work for Purposes of Statutory Damages.

In addition to treating all parts of a compilation as a single work, § 504(c)(1) applies the same rule to all parts of any "derivative work." *See Grande*, 118 F.4th at 723 ("[A]ll the parts of a compilation *or derivative work* constitute one work." (emphasis added)). A "derivative work" is defined to include any "work based upon one or more preexisting works" and expressly includes a "sound recording." § 101. Courts have thus agreed that a sound recording is derivative of any underlying musical composition. *E.g.*, *EMI Christian Music Grp.*, 844 F.3d at 95 ("Sound recordings are defined in section 101 as a species of derivative work of the underlying musical composition…." (quoting 6 PATRY ON COPYRIGHT § 22.186)); *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1197 (10th Cir. 2005) ("A sound recording is a derivative work in relation to the musical work recorded therein, just as a motion picture is a derivative work in relation to the novel or screenplay upon which it is based." (quoting 2 NIMMER ON COPYRIGHT § 2.10[A])).

Application of this rule to this record is again straightforward: Where Plaintiffs allege that reproduction or distribution of a particular song infringed both a musical composition and a sound recording embodying that composition, that pair is a single "work" for purposes of statutory damages. *See, e.g.*, *EMI Christian Music*, 844 F.3d at 95 ("[T]he District Court's decision to permit only one award of statutory damages for the musical composition and the corresponding sound recording comports with both the plain text and the legislative history of the Copyright Act."); 6 PATRY ON COPYRIGHT § 22:186 & n.1 ("Sound recordings are … [a] derivative work of the underlying musical composition, and, as such, both fall within the one work, one award rule for statutory damages.") (collecting cases). "'One work' means *one* work." *Grande*, 118 F.4th at 723 (quoting § 504(c)(1)).

11

During discovery, Plaintiffs wrongly suggested that this rule may apply differently if different parties (here, different Plaintiffs) own the copyrights to the at-issue sound recording and the musical composition it embodies. That position is inconsistent with "both the plain text and the legislative history of the Copyright Act." *EMI Christian Music*, 844 F.3d at 95; *see also* 6 PATRY ON COPYRIGHT § 22:186 & n.1 (noting that the notion that statutory damages depend on the number of owners is "clearly erroneous: the statute makes no such distinction and the legislative history is to the contrary"). Nothing in the statute suggests that the ownership of the underlying copyrights matters. By its plain text, the rule operates not as to each owner, but as to each *action*. § 504(c)(1) (statutory damages available "for all infringements involved in the action, with respect to any one work"); *see also Grande*, 118 F.4th at 721 (courts "must presume that a legislature says in a statute what it means and means in a statute what it says there" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992))). And were there any ambiguity in the statute (and there is not), it would be resolved by legislative history, which rejects the notion that the presence of "multiple owners" impacts the calculation of statutory damages:

> Subsection (c)(1) [of 17 U.S.C. § 504] makes clear ... that, although they are regarded as independent works for other purposes, "all the parts of a compilation or derivative work constitute one work" for th[e] purpose [of assessing statutory damages]. Moreover, although the minimum and maximum amounts are to be multiplied where multiple "works" are involved in the suit, the same is not true with respect to multiple copyrights, multiple owners, multiple exclusive rights, or multiple registrations. This point is especially important since, under a scheme of divisible copyright, it is possible to have the rights of a number of owners of separate "copyrights" in a single "work" infringed by one act of a defendant.

H.R. Rep. No. 94-1476, at 162 (1976); S. Rep. No. 94-473, at 144 (1975). Thus, "Congress did not intend for separate statutory damages awards for derivative works such as sound recordings, even when the copyright owner of the sound recording differs from the copyright owner of the musical composition." *EMI Christian Music*, 844 F.3d at 95.

Applying this legal rule to the undisputed facts here could not be simpler. ▮

This Court should thus hold that these overlapping compositions and sound recordings must be combined in determining the number of statutory-damages "works."

\* \* \* \*

## CONCLUSION

The Court should grant Altice's partial motion for summary judgment and limit Plaintiffs' statutory damages request to no more than ▮ eligible "works."



13

Dated: June 5, 2025

Respectfully submitted,

By: /s/ Michael S. Elkin

| | |
|---|---|
| Jennifer P. Ainsworth<br>State Bar No. 00784720<br>WILSON ROBERTSON &<br>VANDEVENTER, P.C.<br>909 ESE Loop 323, Suite 400<br>Tyler, TX 75701<br>(903) 509-5000<br>jainsworth@wilsonlawfirm.com | Michael S. Elkin*<br>Krishnan Padmanabhan*<br>Sean R. Anderson*<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 294-6700<br>melkin@winston.com |
| Thomas M. Melsheimer<br>State Bar No.: 13922550<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>(314) 453-6500 | Jennifer A. Golinveaux*<br>WINSTON & STRAWN LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 94111<br>(415) 591-1506 |
| Sean H. Suber*<br>WINSTON & STRAWN LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601<br>(312) 558-5600 | Diana Leiden*<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071<br>(213) 615-1700 |
| Clement S. Roberts*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>405 Howard Street<br>San Francisco, CA 94015<br>(415) 773-5700 | Christopher J. Cariello*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 506-5000 |
| | Mark S. Puzella*<br>David Hosp*<br>Sheryl Garko*<br>Laura Najemy*<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>222 Berkeley Street, Suite 2000<br>Boston, MA 02116<br>(617) 880-1801 |

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

\*Pro Hac Vice

14

## CERTIFICATE OF SERVICE

I certify that on June 5, 2025, a true and correct copy of the foregoing was served by email to the parties of record.

/s/ *Michael S. Elkin*
Michael S. Elkin