**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| WARNER RECORDS INC. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2:23-cv-00576-JRG-RSP |
| | ) | |
| ALTICE USA, INC. AND CSC | ) | ▮▮▮▮▮▮▮▮▮▮ |
| HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSED MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF DR. KEVIN C. ALMEROTH**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION .......................................................................................1

II.     LEGAL STANDARD..................................................................................3

III.    ARGUMENT ..............................................................................................4

        A.      The Court Should Exclude Dr. Almeroth's Improper Policy and Legal Opinions Because He Lacks Relevant Expertise, Did No Substantive Analysis, and His Opinions Invade the Court's and the Jury's Roles...................................................4

                1.      The Court Should Exclude Dr. Almeroth's Opinions on Copyright Policies and ISP Graduated Response Systems ....................................................5

                2.      The Court Should Exclude Dr. Almeroth's Opinions on Altice's Copyright Policies......................................................................................7

                3.      The Court Should Exclude Dr. Almeroth's Opinions on CAS.......................10

                4.      The Court Should Exclude Dr. Almeroth's Opinions Regarding Net Neutrality, U.S. ISP Regulation, and U.N. International Law for Lack of Expertise, Irrelevance, and Likelihood of Confusion .......................................................11

                5.      The Court Should Exclude Dr. Almeroth's Opinions on Domestic Copyright Law and the DMCA.........................................................................12

                6.      The Court Should Exclude Dr. Almeroth's Opinions About What Plaintiffs Should Have Done Instead of Filing this Suit .................................................13

        B.      The Court Should Also Exclude Dr. Almeroth's Technical Opinions That Are Based on Documents and Facts that Were Not Produced During Discovery........14

IV.     CONCLUSION .........................................................................................15

**TABLE OF AUTHORITIES**

## Cases

*Carlson v. Bioremedi Therapeutic Sys., Inc.*
  822 F.3d 194 (5th Cir. 2016) ............................................................................4

*Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*
  725 F. Supp. 3d 644 (E.D. Tex. 2024).........................................................4, 9

*Flood v. BBVA Compass, N.A.*
  2023 WL 3681713 (E.D. Tex. Jan. 18, 2023)....................................................3

*Knight v. Kirby Inland Marine Inc.*
  482 F.3d 347 (5th Cir. 2007) ............................................................................3

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137 (1999)...........................................................................................4

*Moore v. Ashland Chem. Inc.*
  151 F.3d 269 (5th Cir. 1998) ............................................................................3

*Moore v. Int'l Paint, L.L.C.*
  547 F. App'x 513 (5th Cir. 2013) ......................................................................3

*Owen v. Kerr-McGee Corp.*
  698 F.2d 236 (5th Cir. 1983) ............................................................................9

*Reitz v. Woods*
  85 F.4th 780 (5th Cir. 2023) .............................................................................5

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*
  No. 6:11-CV-455, 2014 WL 2859578 (E.D. Tex. June 21, 2014)......................3

*U.S. v. Frazier*
  387 F.3d 1244 (11th Cir. 2004) ........................................................................9

*U.S. v. Keys*
  747 F. App'x 198 (5th Cir. 2018) ..................................................................8, 9

*Viterbo v. Dow Chem. Co.*
  826 F.2d 420 (5th Cir. 1987) ............................................................................5

*Watkins v. Telsmith, Inc.*
  121 F.3d 984 (5th Cir. 1997) ............................................................................4

████████████████████████████████████

**Rules**

Fed. Rule of Evid. 702 ............................................................................................3, 4

**Other Authority**

17 U.S.C. § 512(i)(1)(A) ..........................................................................................1, 9

## I.     INTRODUCTION

The Court should exclude certain testimony of Dr. Kevin Almeroth, a retired computer-science professor and now professional expert for Altice. In this copyright-infringement action, Altice, a nationwide internet-service provider ("ISP"), asserts "safe harbor" immunity under the Digital Millenium Copyright Act ("DMCA") as its main defense. To qualify, Altice must show it "adopted and reasonably implemented, and informs subscribers … of, a policy that provides for termination in appropriate circumstances" of "repeat infringers." *See* 17 U.S.C. §§ 512(i)(1)(A). In support, Dr. Almeroth offers many non-technical opinions on Altice's copyright policies that are well beyond his expertise, lack reliable methodology, and invade the roles of the Court on the law and the jury on the ultimate question of safe harbor. Plaintiffs move to strike both these non-technical opinions and a handful of technical opinions on Altice's network where Altice failed to produce discovery for the opined facts. This motion will not prevent Dr. Almeroth from offering his actual technical opinions (e.g., how the Internet or BitTorrent works) or Altice from offering its safe harbor defense: Altice can offer its facts through its corporate witness and its other experts. But it will prevent the error of an unqualified expert opining directly on the ultimate issue.

Dr. Almeroth's impermissible opinions include non-technical legal and business opinions: **(1)** U.S. net-neutrality and caselaw; **(2)** a U.N. declaration on human rights; **(3)** the legal terms of an expired agreement between ISPs and copyright holders called the Copyright Alert System ("CAS"); **(4)** the Federal Corrupt Practices Act; **(5)** the legal and business actions Dr. Almeroth believes Plaintiffs should have taken against Altice, Altice's subscribers, and third-parties; and, critically, **(6)** the reasonableness and effectiveness of Altice's business and legal polices for handling copyright-infringement notices—i.e., <u>Altice's DMCA safe harbor defense</u>.

But, as explained below, Dr. Almeroth is unqualified to offer these opinions. He has zero experience in designing and administering copyright-infringement policies of any kind, including

1

the type of "graduated-response" system Altice employs. He has never worked full time at an ISP, much less a large ISP like Altice, with millions of users. He has no sufficient experience with net neutrality, copyright law, CAS, enforcing copyrights, whether to bring legal actions, or whether to serve a subpoena. At most, he has old and narrow experience assisting (but not managing) part of an educational internet consortium called Internet2 (over 20 years ago) and serving on internet-related committees at his university (U.C. Santa Barbara ("UCSB")) when he was a professor.

Not only is Dr. Almeroth unqualified, his "methodology" for his non-technical opinions is fatally unreliable. To reach his opinions, he repeats / summarizes Altice's interrogatory responses and Altice witness testimony, including private off-the-record conversation with Altice witnesses, such as with Altice in-house counsel, then repeats Altice's litigation positions. Other courts have struck similar opinions by Dr. Almeroth in ISP cases under *Daubert* for this same practice.[1][2]

Dr. Almeroth also offers a handful of technical opinions that should be excluded. These opinions involve instances where Dr. Almeroth offers complex factual opinions about Altice's network, but Altice failed to produce substantive discovery (sometimes any discovery). Instead of relying on documents for these opinions, Dr. Almeroth, generally, relies only on statements by

---

[1] *See Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-950, 2019 WL 9088257, at *1 (E.D. Va. Nov. 19, 2019) ("The motion to exclude testimony regarding the reasonableness of the ISP infringement policies is granted, as Dr. Almeroth is not qualified to give that opinion. Opining on questions of reasonableness would usurp the jury's factfinding role."), *see also UMG Recordings, Inc. v. Bright House Net., LLC*, No. 8:19-cv-710, ECF No. 638 (M.D. Fla. June 8, 2022) (striking Almeroth opinions on net neutrality and human rights violations); *Warner Recs. Inc. v. Charter Commc'ns, Inc.*, No. 19-cv-00874, 2022 WL 2702928, at *10 (D. Colo. July 12, 2022) (same).

[2] Courts in this District have also granted *Daubert* against Dr. Almeroth. *See, e.g.*, *SB IP Holdings, LLC v. Vivint, Inc.*, 4:20-cv-886-ALM, ECF No. 427 (E.D. Tex. filed Oct. 10, 2023) (excluding certain Almeroth opinions); *Entropic Communications, LLC v. Charter Communications, Inc.*, 2:22-cv-1025-JRG-RSP, ECF No. 358 (E.D. Tex. Nov. 29, 2023) (ordering deposition for relying on conversation with defendant's employee); *Video Solutions PTE. LTD. v. Cisco Systems, Inc.*, 2:23-cv-222-JRG (E.D. Tex. Jan. 31, 2025) (striking Almeroth opinion on legal issue); *Touchstream Technologies, Inc. v. Charter Communications, Inc.*, 2:23-cv-59-JRG-RSP, ECF No. 329 (E.D. Tex. Feb. 17, 2025) (striking reference to other litigation).

Altice witnesses, primarily off-the-record statements.  Plaintiffs must be allowed to contest (but presently cannot) Altice's testimony, since the underlying documents showing these alleged facts are unproduced. Absent exclusion, Altice can invent "facts" from thin air.

Without the Court's action, Dr. Almeroth will opine at trial that Altice's copyright policies, primarily its graduated response system, were reasonable and effective—*i.e.*, that the requirements of the DMCA's safe harbor are met. But he has no personal experience or expertise in these areas, having never worked in, conducted research on, or taught these areas in his career. He will, in short, be the classic "hired gun" that *Daubert* cases tell courts to reject, only parroting the arguments of Altice's counsel and telling the jury what to think on Altice's primary defense.

## II.    LEGAL STANDARD

Fed. Rule of Evid. (FRE) "702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013). The offering party bears the burden of proving by "a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). In deciding whether to exclude expert testimony, the Court must consider whether "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Flood v. BBVA Compass, N.A.*, 2023 WL 3681713, at *2 (E.D. Tex. Jan. 18, 2023). "The reliability analysis applies to all aspects of an expert's testimony," including the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion. *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 355 (5th Cir. 2007). "[A]ny step an expert takes in formulating his opinion that renders the analysis unreliable … renders the expert's testimony inadmissible." *ThinkOptics, Inc.*

*v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 WL 2859578, at *1 (E.D. Tex. June 21, 2014) (internal quotations omitted). "When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it. *Int'l Paint*, 547 F. App'x at 515 (citation omitted).

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (finding expert's "qualifications do not align with or support his challenged … testimony"). "[A]pplication of the *Daubert* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (affirming rejection of expert); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). "To determine whether expert testimony is sufficiently reliable, the court may consider [w]hether experts are 'proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation or whether they have developed their opinions for the purposes of testifying.'" *Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 644, 661 (E.D. Tex. 2024) ("*EEOC*") (quoting Rule 702 notes).

## III.    ARGUMENT[3]

### A.    The Court Should Exclude Dr. Almeroth's Improper Policy and Legal Opinions Because He Lacks Relevant Expertise, Did No Substantive Analysis, and His Opinions Invade the Court's and the Jury's Roles.

Dr. Almeroth is miles outside the wheelhouse of his expertise as a computer-science academic, offering a host of business policy and legal opinions that he calls "technical" opinions.

---

[3] Recognizing that the Court may want to review the specific paragraphs of Dr. Almeroth's reports, Plaintiffs have attached the potions they seek to strike highlighted. Exs. 1 (April 21, 2025 Almeroth Opening Report ("Report"));2 (May 26, 2025 Almeroth Rebuttal Report ("Rebuttal")).

For example, despite his lack of experience in operating or managing ISPs; designing or implementing copyright DMCA programs, or anything related to copyright law, he seeks to opine on: **(1)** the appropriateness of the design and implementation of Altice's copyright policy; **(2)** the terms of CAS and its participants' intentions; **(3)** net neutrality and international law; **(4)** the interpretation of U.S. copyright law; and **(5)** the feasibility of certain legal and business actions that he says Plaintiffs should have taken in lieu of suing Altice. But he "brings no additional facts or analysis to bear" and instead "merely parrot[s] [Altice's] testimony, dressing it up and sanctifying it as the opinion of an expert." *Reitz v. Woods*, 85 F.4th 780, 788 (5th Cir. 2023) (cleaned up) (affirming exclusion of expert who "render[ed] bare legal conclusions regarding [the party's] policies and actions) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).

> **1.    The Court Should Exclude Dr. Almeroth's Opinions on Copyright Policies and ISP Graduated Response Systems.**

Dr. Almeroth's opinions regarding Altice's copyright policies and graduated response system should be excluded for the simple and stubborn truth that he lacks the expertise to opine on either. Almost all of his professional career was spent as a computer-science academic at a single university—UCSB—and he has never worked as an employee at a commercial ISP or as a consultant on copyright issues. Ex. 3 ("CV"), p. 4; Ex. 4, May 28, 2025 Depo. of Kevin Almeroth ("Depo."), 13:13-25. He retired in late 2020, last published a paper in 2015, and his last grad student graduated then as well. Depo. 20:4-15, 13:13-15:20. Dr. Almeroth has worked, increasingly since at least 2008, as an expert witness. He has been deposed at least 200 times. Depo. 6:22-7:3. He does not list any full-time experience with an ISP business on his CV. *See* CV. He is not a lawyer and not an expert in the law. Depo. 41:15-18. He has never conducted research on copyright law and never published research on copyright law or papers that have "talked specifically about copyright law." *Id.* 43:12-24. He could not recall ever conducting research on

the DMCA, publishing a paper on the DMCA, or counseling or advising a business on the DMCA. *Id.* 51:20-52:23, 56:14-57:1. He has not conducted any direct research on the graduated response systems of ISPs related to copyright infringement, *id.* 92:24-93:14, nor the effectiveness of an ISP's graduated-response system. *Id.* 93:16-95:15. He has not published or conducted studies on the effectiveness of such systems and has "likely not" taught them either. *Id.* 95:17-97:7.

Dr. Almeroth also confirmed that he has no definite experience developing a policy to prevent copyright infringement and could not recall ever advising a business on developing a policy to prevent copyright infringement. Depo. at 46:4-9. He was unsure if he had ever developed a policy to prevent copyright infringement or a DMCA compliance program. *Id.* 45:4-13, 54:6-14, 73:16-74:5. If he had, he could not remember the details of what policy was put in place or when. *Id.* 45:15-46:25. Developing policies to prevent copyright infringement has never been his regular responsibility. *Id.* 47:1-8, 51:2-10. He could not recall ever designing a graduated-response system for addressing copyright infringement (though he believed UCSB might have had an escalation policy). *Id.* 55:8-16. Outside of his expert litigation work here, he does not provide consulting services to businesses on DMCA compliance or responding to infringement notices. *Id.* 60:4-18. He has never conducted studies on rates of copyright-infringement on the Internet or on infringement notices sent to ISPs. Depo. 97:14-99:1, 99:14-100:8, 100:10-17.

He also could not recall the specifics of any ISP's infringement policy other than Altice's— including those of the institutions he relies on for his limited experience. *Id.* 218:6-219:18, 220:23-223:4 (unable to recall substance of UCSB policy); 219:19-220:21 (same); *Id.* 223:6-11 (unable to recall specifics of Internet2's copyright policy); 225:20-226:10 (unable to recall details of infringement policies for any other ISPs). Dr. Almeroth's only experience with a "policy" to prevent copyright infringement is very limited: he believes he may have received some notices in

his lab years ago and talked to at least one student, but he did not recall details. Depo. 47:9-48:25.

He recalled no experience administering a DMCA compliance program, *id.* 55:1-6, and no experience administering a graduated response system for addressing copyright infringement (though claims he might have "tangentially" with his university work). *Id.* 55:17-24.

### 2. The Court Should Exclude Dr. Almeroth's Opinions on Altice's Copyright Policies.

Dr. Almeroth's opinions on the design and implementation of Altice's copyright policies and his opinions attacking other experts who consider Altice's copyright policies should be excluded[4] for his lack of qualification, the unreliability of his opinions, and invading the Court's and the jury's roles. Dr. Almeroth, apparently, recognizes the problem created by his lack of expertise, calling his business and policy opinions, "technical opinions." *See* Depo. 148:16-149:16; Report at ¶¶ 185, 249. But there is nothing technical at all; he just summarizes non-technical facts, including Altice's interrogatory responses and corporate-witness testimony. When asked what he meant by "technical opinion" he acknowledged his use of the term was not limited to technical areas (e.g., computer systems, networks, or engineering skill). *See* Depo. 149:9-151:8.

---

[4] **Report** ¶¶ 4, 37, 38, 39, 40, 46; 22, 222, 224-227, 233, 234, 236-37, 249-257, 259, 262, 272, 311 (*e.g.,* ); **Rebuttal** ¶¶ 2 (e.g., "I … come to conclusions regarding whether … Altice adopted and reasonably implemented policies that provided for termination of subscribers in appropriate circumstances"); 4, 9 (*e.g.,* , 10, 11, 12 , 16, 20-25, 28, 60, 81, 96, 97, 100, 101, 107, 109, 117, 118, 122, 123, 131, 136, 137 (*e.g.,* , 139-145, 146-148, 160-169, 197.

███████████████████████████████████████████

*Not the product of reliable principles and methods*. Dr. Almeroth's opinions on these business and policy areas lack any scientific methodology or substantive analysis. He did not rely on any study or research for the metrics he used to evaluate Altice's policy and graduated response system, just his general experience from other research (none on point), Depo. 153:22-154:25, and he parrots Altice's interrogatory responses and 30(b)(6) testimony. *See, e.g.*, Report at ¶¶ 211, 214, 224-25, 232-37. For example, he just looks to see that the number of subscribers went down as the graduated response system progresses and declares that the system was "effective." Depo. 127:3-128:14, 132:7-133:1. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Dr. Almeroth has no opinion on how many subscribers would need to be reduced from one level of the system to be effective, and he did no comparison to any other version of the system. Depo. 133:7-134:20. Nor did he compare Altice's graduated-response approach to any other approach or system. *See* Depo. 128:15-133:4, 139:6-140:11. He claims any comparison would be impossible because "no other system has been proposed with enough specificity." He claims that, to be "effective," there only needs to be some reduction between the levels of a funnel, and he punted on "a hypothetical question about whether or not with a different data set [it] would still be sufficient to be effective." *Id.* 134:23-135:11. This is not a reliable methodology.

*Usurping the Jury*.  Altice also cannot substitute the jury's judgment as trier-of-fact with Dr. Almeroth's unqualified opinions. Courts in this circuit have held that an expert cannot offer opinions that "tell the jury what result to reach" or give legal conclusions. *See U.S. v. Keys*, 747 F.

8

App'x 198, 208 (5th Cir. 2018) (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). And "[c]ourts have warned that when 'an expert becomes an advocate for a cause, he … departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *EEOC*, 725 F. Supp. 3d at 661 (internal quotations omitted).

Dr. Almeroth seeks to tell the jury what result to reach on safe harbor, including whether "Altice <u>adopted and reasonably implemented policies</u> that provided for termination of subscribers in <u>appropriate circumstances</u>" and "Altice <u>reasonably implemented</u> its Graduated Response Systems." Rebuttal at ¶¶ 2, 137 (emphasis added). This language tracks the DMCA safe harbor statute. 17 U.S.C. § 512(i)(1)(A). It is tantamount to instructing the jury on "what result to reach." *Keys*, 747 F. App'x at 208. His related opinions on the purported "effectiveness" of Altice's policy components likewise have the "potential to mislead or confuse" the jury, *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004), into equating "effectiveness" with "reasonableness." As explained above, Dr. Almeroth performed *no* causal analysis (*i.e.*, no methodology) and thus should be precluded from opining that any aspect of Altice's program was "effective" at anything. He is just stating Altice's policies, not performing analysis. While a jury may need an expert to tell them if a complex patent has been infringed, it does not need an unqualified "hired gun" to tell them that Altice's business policies or implementation are reasonable. Juries are smart and can decide that for themselves.

Because he lacks qualifications, performed no meaningful analysis, merely echoes Altice's litigation position, and aims to tell the jury what result to reach, Dr. Almeroth's opinions regarding the design and implementation of Altice's copyright repeat infringer policy should be excluded.[5]

---

[5] *See, e.g.*, **Report** ¶¶ 4, 37, 38, 39, 40, 46; 22, 222, 224-227, 233, 234, 236-37, 249-257, 259, 272, 311; **Rebuttal** ¶¶ 2, 9-12, 16, 20–22, 24–25, 28, 60, 81, 96-98, 100-101, 104, 107, 109, 117-118, 122-123, 131, 136-137, 139-145, 146-148, 160-169, 197.

███████████████████████████████

### 3.    The Court Should Exclude Dr. Almeroth's Opinions on CAS.

Dr. Almeroth also offers a series of improper opinions regarding CAS, a private agreement that expired, in 2016, between a few ISPs and copyright holders regarding ISPs' handling of infringement notices. The Court should exclude his opinions regarding **(1)** the CAS parties' reasoning and goals for participating in the program; **(2)** Altice's (and its predecessor Cablevision's) understanding of CAS; **(3)** congressional testimony about CAS; **(4)** negotiations about extending CAS prior to its expiration; and **(5)** 2013 reports issued by third-party auditor Stroz Friedberg regarding the copyright policies of ISPs involved in CAS. *See* Report ¶¶ 188-212, 218, 262; Rebuttal ¶¶ 23, 27, 98, 103, 104, 138. Simply, CAS expired four years before the Claims Period (2020-23).  In addition to a lack of qualification or experience to opine on CAS, these opinions should also be struck as unreliable and likely to confuse the jury on the applicable law (e.g., that CAS is an applicable contract) in this case.

Dr. Almeroth is unqualified to opine on CAS for all the same reasons above (e.g., lack of ISP and copyright experience). *See supra*, Section II.A.1-2. But he also has not conducted any research on CAS outside of his work as an expert in ISP cases. Depo. 80:7-20. He has not published any academic work or consulted on CAS. *Id.* 80:22-81:12. He was not involved in the drafting of the CAS agreement and has not been employed by any ISP that participated or helped draft CAS. *Id.* 81:13-82:5; *see also id.* 85:1-19 (not a participant in any ISP development or ISP administration of CAS). He has never taught any classes on CAS. *Id.* 82:7-11. He has "likely not" ever administered a program for compliance with CAS. *Id.* 82:20-25. He has never been involved in or a participant at any ISP evaluating the effectiveness of CAS. *Id.* 85:20-86:13. On the rights-holder side, he is not aware of ever working for a copyright owner in CAS. Depo. 88:21-89:14.

With respect to third-party Stroz Friedberg's reports from 2013, Dr. Almeroth has no recollection of seeing the reports before this case and no memory of citing the reports in his

████████████████████████████████████████████████

academic publications. *Id.* 201:24-202:18. No discovery was taken from any other ISPs in this case, and he is not relying on the confidential documents, including policy documents, of any other ISPs in this case. Depo. 75:17-77:10, 79:19-24. ████████████████████████████

████████████████████████████████████████████████

████████████████████████. To allow Dr. Almeroth to 1) present the hearsay within hearsay of these reports as fact about what other ISPs actually did in 2013, and 2) opine that it is relevant or indicative of any ISPs policies in 2020-2023, without any actual knowledge, is not helpful to the jury. This is especially true given Dr. Almeroth's lack of, copyright, DMCA, and ISP experience.

### 4.    The Court Should Exclude Dr. Almeroth's Opinions Regarding Net Neutrality, U.S. ISP Regulation, and U.N. International Law for Lack of Expertise, Irrelevance, and Likelihood of Confusion.

Dr. Almeroth offers a series of opinions suggesting that historic U.S. net-neutrality regulations and a U.N. declaration of human rights would apply to issues in this case. These opinions (Report ¶¶ 43, 44, 161, 253, 254, 272, 275-76, 279-281, 289; Rebuttal ¶¶ 14, 57, 71, 83-89; 90, 133), which discuss net-neutrality, the U.N., and actions by other ISPs, are irrelevant to this case and unsupported by his experience and qualifications.  Such references should also be struck as unreliable and likely to confuse the jury about the applicable law (e.g., the U.N. is U.S. law).

In addition to his general lack of qualification, Dr. Almeroth has never published research on net neutrality and never taught it as a formal topic, though he "believe(s) [he] has talked to students on what net neutrality is." Depo. 63:22-64:7. He has never worked for the Federal Communications Commission, never testified before Congress on net neutrality and he does not consider himself a net-neutrality scholar. *Id.* 64:8-18. He is "doubtful" that he has ever counseled an organization on what net neutrality was, nor could he provide an example of counseling an organization on how to apply net neutrality rules. *Id.* 65:6-16. He also had no recollection of

publishing research on free speech or teaching classes on free speech. Depo. 65:24-66:13. Free speech was not a focus of his research or his teaching. *Id.* 66:14-23; CV p. 3. He has no direct involvement in the U.N. declaration, and he cites no authority to indicate that it has any binding effect in the U.S., and he has never used the declaration by name in his research. Depo. 199:6-25.

### 5.    The Court Should Exclude Dr. Almeroth's Opinions on Domestic Copyright Law and the DMCA

Dr. Almeroth offers opinions on copyright law, including what is necessary to show copyright infringement; what he believes the "relevant" legal standards are; what is required to legally operate a DMCA email address and provide notice—opining that Altice's customers were "subject to" Altice's Acceptable use policy; and his opinions on the legal terms of third-party notice sender OpSec's contractual agreements, fees, and business practices.  These opinions (other than the statement of law from his counsel) should be struck.  *See* Report ¶ 293; Rebuttal ¶¶ 14, 99 (e.g., "Dr. McGarty relies entirely on an irrelevant standard"), 101 ("the notices are allegations of infringement—not dispositive proof"), 114 (opining decommissioning a DMCA email box is "common and routine"); 117 (e.g., "[i]n my opinion, content owners and senders of infringement notices were on notice of the change"), 121 (opining Plaintiffs' positions may contradict on "secondary copyright liability"), 131, 149 (opining on what the "average subscriber" likely understands about a copyright infringement notice), 151, 154 (e.g., "it is completely commonplace and routine to decommission the legacy DMCA email addresses"), 155, 160, 197.

Dr. Almeroth also opines that Plaintiffs' experts failed to identify circumstances that "would have satisfied Plaintiffs," "would have avoided the present lawsuit," or would have allowed Altice to "be eligible for DMCA safe harbor." First, such opinions would be improper for Plaintiffs' experts to offer.  Second, as the Court likely appreciates, it highlights Dr. Almeroth's belief that he is offering such opinions on these ultimate issues. Third, it is confusing and

misleading for Dr. Almeroth to criticize Plaintiffs' experts for failing to offer legally improper opinions. These opinions, often "thrown in" to larger paragraph, should be struck throughout Dr. Almeroth's rebuttal report: Rebuttal 13 (partial); 33; 56-58, 64, 105, 109, 110 (describing, without citation, Altice's belief on DMCA senders), 118, 120, 126, 138, 194, 238-248 (opining on OpSec agreements and OpSec's notice sending procedures). Similarly, Dr. Almeroth opines on the Federal Corrupt Practices and these opinions should be struck in his reports: Rebuttal ¶¶ 129 (e.g., describing FCPA); 130 (e.g., "no evidence that employees were acknowledging that Altice had an affirmative duty").

As above, Dr. Almeroth has no expertise or qualifications to testify on any of these matters,[6] conducted no analysis but merely repeats statements of others outside his expertise, and allowing him to testify on these issues would likely confuse the jury on the law.

### 6.    The Court Should Exclude Dr. Almeroth's Opinions About What Plaintiffs Should Have Done Instead of Filing this Suit.

Dr. Almeroth offers opinions on legal and business actions he claims Plaintiffs could have or should have taken instead of bringing this lawsuit, including suing Altice subscribers, attempting to identify subscribers via subpoena, informing Altice of legal decisions concerning subscribers, and initiating lawsuits against other third parties. These opinions (Report ¶¶ 47, 295-310, Rebuttal ¶¶ 15, 23, 26, 27, 78, 143, 170-190, 194-95) should be struck as irrelevant and unreliable, likely contrary to the Court's Standing MIL No. 8 on other proceedings, and likely to confuse the jury on the law, including whether such actions were possible or required. And, as explained, Dr. Almeroth has no personal experience or qualifications to offer these opinions.

---

[6] Specific to DMCA email addresses, Dr. Almeroth does not believe he has ever administered the email address for a DMCA compliance program, and he has never managed a business that provides email services. Depo. 58:7-11, 59:4-9.

While Dr. Almeroth opines on what the Plaintiffs, who hold music copyrights, should do, he has never worked in the music business nor consulted with a business engaged in litigation to protect its musical works. Depo. 62:12-63:20. He has never personally brought a copyright suit. *Id.* 192:14-16. He has no recollection of being part of an organization that was in a lawsuit (though he suspects UCSB probably was), and he has no recollection of ever being in a position of deciding whether to bring suit on behalf of an organization. *Id.* 69:12-70:10, 70:12-71:14. He has never been in a position of deciding whether or not to bring a copyright suit or to bring suit against an ISP. *Id.* He could not think of an example of ever being involved in a decision whether to subpoena a party. *Id.* His "experience" is only that he has read articles in the "technical press and the popular press" describing that such suits have occurred. *Id.* 192:20-195:5. He had no specific recollection of ever working for an organization that ever undertook any of the actions he suggests are possible. *Id.* 196:12-197:17.

**B.     The Court Should Also Exclude Dr. Almeroth's Technical Opinions That Are Based on Documents and Facts that Were Not Produced During Discovery.**

Plaintiffs also move to strike the handful of Dr. Almeroth's technical opinions where he repeats the testimony of Altice witnesses, often in off-the-record hearsay conversations, regarding detailed technical facts of Altice's systems. This is improper. If Altice wanted to introduce these technical facts, it should have produced documents, especially since Altice relies on these systems for its affirmative expert reports. Without that corresponding production, Plaintiffs have no way to verify these facts or cross examine Dr. Almeroth. Altice cannot be allowed to conjure helpful "facts" from thin air, denying Plaintiffs the ability to challenge the assertions. Plaintiffs move to

strike such opinions.[7] In addition to lacking material for rebuttal, Altice's actions would place Plaintiffs in conflict with the Court's MIL on asking questions on discovery. Court MIL No. 1.

Dr. Almeroth also relies on tests from his "colleagues." *See* Report ¶ 278. In deposition, he admitted the "colleagues" were attorneys at Winston and Strawn, but he could not remember their names. Depo. 202:19-203:22. This opinion should be struck as, essentially, allowing unnamed Altice's attorneys to testify through hearsay. His report also provides no details on these "tests," including failing to disclose the conditions of the experiments, the results, etc.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs ask the Court to exclude the opinions of Dr. Almeroth discussed in this report and as highlighted in exhibits 1 and 2.  As the Court can see from exhibits 1 and 2, Plaintiffs have attempted to only exclude those paragraphs and portions of paragraphs where Dr. Almeroth offers the improper opinions discussed above.

---

[7] See **Report** ¶¶ 93 (relying on interrogatory response and deposition testimony), 114 (relying on private conversation for footnote 25); 135 (same, footnote 135); 155 (same, footnotes 86 and 87); 178 (no citation at all); 179 (same, footnote 137); 182 (same, footnote 143); 184 (same, footnote 146); **Rebuttal** ¶¶ 40 (same, footnote 47); 42-43 (opining on ▮▮▮▮▮ where no substantive details have been produced and relying on private conversation and document Altice representative could not comment on); 45-50 (relying on private conversations for footnotes 58, 62, 63, 65-68); 49 (same, footnote 68); 108 (no citation for Altice's belief); 110-112 (private conversation for footnotes 161-168); 152-153 (relying on testimony by Altice's in-house counsel for the technical operation of its walled garden); 158-159 (opining Plaintiffs experts should have conducted cost analysis but sufficient detail of "resources (costs and/or personnel)" is unproduced); 221 (private conversation, footnotes 241-243); 235 (same, footnotes 281-283); 281 (same, footnote 375).

███████████████████████████

Dated: June 16, 2025

Respectfully submitted,

*/s/ Jeffrey M. Gould*
*w/permission Rudolph Fink IV*

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
THE DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Jeffrey M. Gould (*pro hac vice*)
Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
Keith Howell (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: 202-480-2999
jeff@oandzlaw.com
matt@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan (*pro hac vice*)
Bret Matera (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
bmatera@oandzlaw.com

***Counsel for Plaintiffs***

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel have complied with the meet-and-confer requirements  of Local Rule CV-7(h) and (i) and that discussion between Plaintiffs and Altice have reached an impasse and that this motion is opposed, as summarized below:  On June 13, 2025, the Parties exchanged correspondence regarding this motion, including to schedule a lead and local meet and confer.  On June 16, 2025, the parties' lead and local counsel conducted a telephonic meet-and-confer, during which Altice confirmed that the relief requested in this motion was opposed.

/s/*Jeffrey M. Gould*
Jeffrey M. Gould


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this June 16, 2025 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ *Rudolph Fink IV*
Rudolph Fink IV

