IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WARNER RECORDS INC. et al., | ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:23-cv-00576-JRG-RSP ) |
| ALTICE USA, INC. AND CSC HOLDINGS, LLC, | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' OPPOSITION TO ALTICE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT ON STATUTORY DAMAGES**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

RESPONSE TO ALTICE'S STATEMENT OF UNDISPUTED FACTS ..................................... 3

PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS ................................ 4

ARGUMENT .................................................................................................................................. 5

    I.    Legal Standard ................................................................................................................ 5

    II.    Each At-Issue Sound-Recording Should be Entitled to a Separate Statutory Damages Award, and Altice's Flawed Methodology for Calculating At-Issue Compilations Must Be Rejected. ..................................................................................... 5

    III.    At-Issue Sound Recordings and At-Issue Musical Composition Are Each Entitled to a Separate Statutory Damages Award. .............................................................................. 8

    IV.    Altice Erroneously Excludes Dozens of Works Eligible for Statutory Damages by Repeatedly Treating a *Compilation* of Sound Recordings (i.e., a Full Album) as Derivative of an *Individual* Musical Composition (i.e., a Single Song). ........................ 11

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Silverman*,
   899 F.3d 395 (5th Cir. 2018) ................................................................................................ 10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................................ 5

*EMI Christian Music Grp. v. MP3tunes, LLC,*
   844 F. 3d 79, 94–95 (2d Cir. 2016) ..................................................................................... 9, 10

*Flores v. Wal-Mart Stores Texas, L.L.C.*,
   855 F. Appx. 203 (5th Cir. 2021) ............................................................................................ 5

*Gamma Audio & Video, Inc. v. Ean-Chea*,
   11 F.3d 1106 (1st Cir. 1993) ................................................................................................... 6

*MCA Television Ltd. v. Feltner*,
   89 F.3d 766 (11th Cir. 1996) .................................................................................................. 6

*Meadaa v. K.A.P. Enters., L.L.C.*,
   756 F.3d 875 (5th Cir. 2014) .................................................................................................. 5

*Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) ................................................................................. 9

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ................................................................................................................ 6

*Saxon v. Blann*,
   1991 WL 35074 (W.D. Ark. Jan. 25, 1991), *aff'd*, 968 F.2d 676 (8th Cir. 1992) ........... 11

*Sullivan v. Flora, Inc.*,
   936 F.3d 562 (7th Cir. 2019) .................................................................................................. 6

*Teevee Toons, Inc. v. MP3.com, Inc.*,
   134 F. Supp. 2d 546 (S.D.N.Y. 2001) .................................................................................. 10

*UMG Recordings, Inc. v. Grande Comm'ncs Networks, LLC*,
   118 F.4th 697 (5th Cir. 2024) ........................................................................................ passim

*VHT, Inc. v. Zillow Grp., Inc.*,
   69 F.4th 983 (9th Cir. 2023) ................................................................................................... 6

*Walt Disney Co. v. Powell*,
   897 F.2d 565 (D.C. Cir. 1990) ............................................................................................... 6

*Xoom, Inc. v. Imageline, Inc.*,
   323 F.3d 279 (4th Cir. 2003) ........................................................................................... 6

**Statutes**

17 U.S.C. § 101 ................................................................................................................... 1, 11

17 U.S.C. § 102 ................................................................................................................... 1, 9

17 U.S.C. 504(c) ................................................................................................................. 5, 8, 9

**Other Authorities**

David Browne, *How the 45 RPM Single Changed Music Forever*, ROLLING STONE (Mar. 15, 2019),  https://www.rollingstone.com/music/music-features/45-vinyl-singles-history-806441 ............................................................................................................ 7

# INTRODUCTION

Plaintiffs respectfully disagree with Altice on both the law and facts relevant to its Partial Motion for Summary Judgment ("Mot.") concerning the number of statutory damages awards for which Plaintiffs are eligible in this action. *See* ECF 201. This issue is not ripe for summary judgment and granting the motion would not meaningfully alter the presentation of evidence at trial.

At a high level, this case concerns Altice's infringement of ▇ sound recordings owned by a number of Record Company Plaintiffs, and ▇ musical compositions separately owned by a number of Music Publisher Plaintiffs—comprising a total of ▇ distinct works in suit. Sound recordings and musical compositions are separate types of copyrighted works under the Copyright Act, 17 U.S.C. § 102(a)(2) & (a)(7), and the distinction is important to this motion.

A "musical composition" is the music and lyrics of a song written by a songwriter. Each at-issue musical composition is an independent work, registered for copyright protection, and separately licensed and commercialized from any sound recording of that work. A "sound recording" is the recorded performance of a song (*i.e.*, the fixation of sounds in a tangible medium by a recording artist). 17 U.S.C. § 101. Each at-issue sound-recording is an individual work that is independently commercialized, distributed, and licensed. Each sound recording is registered for copyright protection, sometimes individually and sometimes with other sound recordings on an album or compilation. Some, but not all, at-issue sound recordings are recordings of at-issue compositions.

Altice contends that (1) all at-issue sound recordings that were registered together are collectively eligible for a single statutory damages award, Mot. 7–10, and (2) each at-issue sound recording that is "derivative" of an at-issue musical composition are together eligible for just one statutory damages award, *id.* at 11–13. On these bases, Altice contends that Plaintiffs are eligible

1

for only ▮▮▮ statutory damages awards for the ▮▮▮ works in suit. Plaintiffs disagree for several reasons.

*First*, each of the ▮▮▮ at-issue sound-recordings should be eligible for a separate statutory damages award, regardless of whether it is also part of an album or compilation. Plaintiffs recognize that recent Fifth Circuit law holds otherwise, *see UMG Recordings, Inc. v. Grande Comm'ncs Networks, LLC*, 118 F.4th 697 (5th Cir. 2024). But, as seven other circuit courts have found differently, Plaintiffs respectfully disagree with *Grande* and oppose its application in order to preserve the issue for appeal. Regardless, Altice's oversimplified method for applying *Grande* creates dozens of genuine factual issues and must therefore be rejected as a means of determining the total number of available statutory damage awards.

*Second*, a sound recording and the musical composition it embodies are separate works for purposes of calculating statutory damages when each is owned by different rightsholders in the same action—as is the case here. Altice's claim otherwise is contrary to the plain language of the Copyright Act and would punish different rightsholders of different works for joining their claims in a single case. Altice's reading would lead to absurd results that force copyright owners to file multiple separate cases and unnecessarily waste judicial resources. *Grande* did not address this issue, and Altice cites no in-circuit law to support its position.

*Third*, even if the Court agrees with Altice on the foregoing two issues, Altice's over-simplified calculation yields the wrong number of statutory awards available to Plaintiffs in this case. This is because Altice counts certain albums—*i.e.*, collections of multiple sound recordings—as derivative of individual musical compositions. It is self-evident, however, that a *collection of multiple* sound recordings is not derivative of an *individual* musical composition. The effect of Altice's approach is to improperly reduce the number of eligible awards in multiple instances.

████████████████████████████████████████

Finally, even if the Court grants Altice's motion in its entirety, that would not meaningfully change the presentation of evidence to the jury. In all events, Plaintiffs will still need to present the jury with evidence on all works infringed, including how many tracks are on infringed albums and whether a "work" for damages includes both a sound recording and a musical composition. The Court should deny the motion.

### RESPONSE TO ALTICE'S STATEMENT OF UNDISPUTED FACTS

1. Disputed as to characterization.

2. Undisputed.

3. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4. Undisputed, with the important clarification that the parties share different views about what constitutes a "work infringed," as discussed in the body of this brief.

5. Disputed as to Altice's characterization of Plaintiffs' statements and responses throughout discovery, which the Court may read for itself. *See* ECF 221-3. Undisputed as to the fact that Plaintiffs seek statutory damages in this case.

6. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3

## PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS

10. Plaintiffs are comprised of 26 record labels (the "Record Company Plaintiffs") and 27 music publishers (the "Music Publisher Plaintiffs"). The Record Company Plaintiffs are comprised of the Sony Music Entertainment Plaintiffs and the Warner Music Plaintiffs. The Music Publisher Plaintiffs are comprised of the Sony Music Publishing Plaintiffs and the Warner Chappell Plaintiffs. *See* Complaint ¶¶ 15-73.

11. No Record Company Plaintiff owns or has made a claim regarding any musical composition at issue in this suit, and no Music Publisher Plaintiff owns or has made a claim regarding any sound recording at issue in this suit. *See* ECF 221-2, at Exs. A & B (showing works claimed by each Plaintiff group).

12. The Record Company Plaintiffs protect their sound recordings via copyright registrations with the U.S. Copyright Office. Some at-issue sound recordings were registered individually, some were registered together with other sound recordings, and some registrations expressly claim copyrights in both individual recordings and a compilation. At the time of the infringement by Altice's subscribers, those sound recordings were commercialized individually even if also available as part of an album at some point in time, and each copyrighted asset had its own economic value. *See* J. Gould Decl., Ex. A (herein, "Ex. A") (Plaintiffs' Verified Second Supplemental Response to Interrogatory No. 3, at p. 13 (April 11, 2025)); *see also, e.g.*, ECF 202-11 (showing distinct claims to sound recordings and compilation).

13. [REDACTED] *See* Sealed Declaration of Jason Manley in Support of Sony Music Publishing Plaintiffs' Motion for Partial Summary Judgment re Ownership (ECF 255), at ¶ 5; Sealed Declaration of Jeremy Blietz in Support of Warner Chappell Plaintiffs' Motion for Partial Summary Judgment re Ownership (ECF 255), at ¶ 6.

4

14. A musical composition and a sound recording are two separate works, and each musical composition is exploited individually and separately from the sound recordings in suit. *See* Ex. A (Plaintiffs' Verified Second Supplemental Response to Interrogatory No. 3, at p. 6 (April 11, 2025)).

## ARGUMENT

### I. Legal Standard

Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). For a dispute to be genuine, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* at 248; *Flores v. Wal-Mart Stores Texas, L.L.C.*, 855 F. Appx. 203, 203-04 (5th Cir. 2021).

### II. Each At-Issue Sound-Recording Should be Entitled to a Separate Statutory Damages Award, and Altice's Flawed Methodology for Calculating At-Issue Compilations Must Be Rejected.

The parties have a legal dispute over whether compilations are the appropriate measure of statutory damages. Additionally, if the Court rules that compilations are the appropriate measure, there is a genuine factual dispute over the number of works eligible for statutory damages awards.

At the core of this dispute is Section 504(c)(1) of the Copyright Act, which provides that "the copyright owner may elect . . . to recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work," and that "[f]or the purposes of this subsection, all the parts of a compilation or derivative work constitute one work." After Plaintiffs filed this case, the Fifth Circuit issued *UMG Recordings, Inc. v. Grande Comm'ncs Networks, LLC*, which clarified aspects of Fifth Circuit law regarding the availability of statutory damages

5

under Section 504(c)(1). 118 F.4th 697 (5th Cir. 2024). Specifically, the Fifth Circuit panel held that, solely for purposes of calculating statutory damages, "the statutory text constrains Plaintiffs' eligible award to statutory damages for each *album*, rather than each *song* in suit." *Id.* at 722 (emphasis in original).

Plaintiffs respectfully disagree with the *Grande* ruling, which departs from the "functional test" adopted by the seven other circuit courts over the prior 20 years,[1] and briefly offer the following to preserve their rights for appeal. At the time of infringement, each at-issue sound recording was published, distributed, available for consumption, and/or licensed by the Record Company Plaintiffs as an individual work. SUMF ¶ 12. That is true regardless of whether the sound recordings were also available as (or registered as) part of an album or compilation. *Id*. Each at-issue sound-recording has an independent economic value. *Id*. Sound recordings do not lose their status or value as individual works merely because they were also available at some point as part of an album or compilation. Thus, a per-track award should apply under the prevailing law across the nation. Functionally, *Grande*'s ruling on this issue will only encourage rightsholders to register fewer albums and more individual sound recordings—a formalistic distinction that does nothing to spark artistic creation and will only result in more paperwork for the Copyright Office and higher costs all around.

Assuming the Court endorses *Grande* here, it must nevertheless reject Altice's flawed methodology for calculating the number of compilations eligible for a statutory damages award,

---

[1] *See VHT, Inc. v. Zillow Grp., Inc.*, 69 F.4th 983, 990 (9th Cir. 2023) ; *Sullivan v. Flora, Inc.*, 936 F.3d 562, 572 (7th Cir. 2019); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117-18 (1st Cir. 1993); *Walt Disney Co. v. Powell*, 897 F.2d 565, 570 (D.C. Cir. 1990); *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 101 (2d Cir. 2016); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 (2010).

*see* SUMF ¶¶ 6–7, Mot. 8–10 (using shared registration number as the basis for identifying compilations at issue), because it both overcounts the number of compilations and undercounts the number of works eligible for a statutory award. The parties have a genuine dispute on this issue.

First, Altice *overcounts* the number of compilations because at least ▆ of the ▆ "albums or other compilations" it claims to have identified correspond to singles and "B-side" tracks that were registered and released individually and separately.[2] These registrations do not bear the "hallmarks of compilations" that *Grande* held should be used to determine whether sound recordings registered together should be considered albums. 118 F.4th at 722. For example, many of the registrations do not include a singular album title as the title of the work. Rather the titles of the works are the name of each registered sound recording. Other registrations do not "feature express notations like 'Basis for registration: collective work,' 'compilation of sound recordings,' and 'sound recordings registered as a collective works,'" that *Grande* held were indicative of compilations. *Id.* And all registrations for singles and B-side sound recordings-in-suit fail to identify "preexisting material to be excluded from the registration." *Id*. This is not surprising as singles and B-sides are referred to in the music industry as just that, and not albums.[3] As a result, Altice's overcounting the number of compilations undercounts the number of Plaintiffs' works-in-suit eligible for statutory damages.

Second, Altice's flawed methodology also *undercounts* Plaintiffs' available statutory awards because it does not account for at least ▆ registered compilations for which Plaintiffs

---

[2] *See, e.g.*, ECF Nos. 209, 210, 216, 217, 218 (containing Mot. Exs. A-326, A-341, A-351, A-361, A-374, A-376, A-381, A-657, A-680, A-691, A-704, A-715, A-716, A-719, A-720, A-722, A-723, A-725, A-729, A-731, A-732, A-733, A-740).

[3] *See* David Browne, *How the 45 RPM Single Changed Music Forever*, ROLLING STONE (Mar. 15, 2019) (discussing the rise of the two-sided rpm vinyl "single") (available https://www.rollingstone.com/music/music-features/45-vinyl-singles-history-806441/) (last visited July 1, 2025).

asserted only one track in suit.[4] This is a consequential omission because Altice also seeks to discount these specific compilations as "derivative" of individual music compositions.[5] *See infra* § III. And depending how the Court rules on the derivative issue, this will impact the total number of works eligible for statutory damages. *See infra* § IV. Additionally, it appears that Altice omits from its final tally at least 55 pre-1972 works that may also fall into this category, notwithstanding the fact that Altice expressly stated it was not moving for summary judgment with respect to pre-1972 works on this issue. *See* Mot. n.2.

Because Altice's simplistic method for calculating the number of compilations-in-suit exposes dozens of genuine factual issues, the Court cannot rely on that method in granting Altice's requested relief, which must be rejected.

### III.  At-Issue Sound Recordings and At-Issue Musical Composition Are Each Entitled to a Separate Statutory Damages Award.

The Record Company Plaintiffs and the Music Publisher Plaintiffs are separate and distinct companies that own different types of copyrighted works registered under the Copyright Act, and each have suffered their own harm. Nonetheless, Altice asks this Court to grant summary judgment precluding these different plaintiffs from recovering separate statutory damage awards for a sound recording and the musical composition it embodies. Mot. 11-13. Altice contends that these two distinct types of copyrighted works are a single work for calculating statutory damages awards based on its reading of 17 U.S.C. § 504(c)(1). While the Fifth Circuit has not ruled on this issue, a plain reading of the statutory text demands otherwise.

---

[4] *See* Ex. B (registrations for ▇ compilations for which Plaintiffs have sued on only one sound recording from the compilation).

[5] *See* Ex. A, at pp. 7–25 (showing list of "overlapping" sound recordings and musical compositions in suit, with highlighting where Plaintiffs have sued on only one sound recording from the compilation shown in Ex. B)

8

To begin, sound recordings and musical compositions are distinct categories of copyrighted works. *See* 17 U.S.C. § 102(a)(2) & (a)(7); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002) ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights."). Each is separately registered as a different category of copyrighted work. SUMF ¶¶ 12–13.

Importantly, § 504(c)(1) precludes the same "copyright owner" (singular) from recovering multiple statutory damages awards when that owner holds multiple copyrights in the same work (such as in a derivative work and the original work on which it is based). The repeated use of the singular term "copyright owner" in § 504 assumes that the same person or entity owns multiple copyrights implicated by the same infringement, which necessarily limits its application to that specific circumstance. Here, by contrast, the owner of the copyright in and to each sound recording (*i.e.*, a Record Company Plaintiff) is different from the owner of the copyright in and to each musical composition (*i.e.*, a Music Publisher Plaintiff). SUMF ¶ 11. The unambiguous and repeated use of the singular "copyright owner" reflects Congress's intent not to encompass multiple owners. The Court should follow the statutory text as it is written.

The out-of-circuit case upon which Altice principally relies, *EMI Christian Music Grp. v. MP3tunes, LLC*, held that a derivative work and underlying work are "one work" for statutory damages even if owned separately. 844 F. 3d 79, 94–95 (2d Cir. 2016). *EMI* is not binding here, and this Court should not adopt its result, especially in light of the Fifth Circuit's express rejection of *EMI* on the compilation issue, *see supra*, since that holding could not "be squared with the statutory text." *See Grande*, 118 F.4th at 722. Altice embraced *Grande*'s rejection of *EMI* on that issue, quoting in its brief, "'[o]ne work' means *one* work." Mot. 8 (quoting *Grande*, 11 F.4th at 723). And yet on the derivative issue, Altice asks the Court to dispense with the plain statutory

9

text of § 504(c) and adopt *EMI*, which ignored the deliberate decision by Congress to use the singular term "copyright owner" in the statutory provision and apparently did not even consider the distinction. But if "'[o]ne work' means '*one* work,'" then the singular "copyright holder," as it is used in the *very same provision*, must refer to only a singular "copyright holder."[6]

Altice's own argument also highlights the absurdity of its position by acknowledging that, "[b]y its plain text, the rule operates . . . as to each *action*." Mot. 12 (emphasis in original); *see* 17 U.S.C. § 504(c) ("for all infringements in the action"). By Altice's logic and admission, the owner of the derivative work and the owner of the underlying work could avoid the unduly harsh and inefficient outcome that Altice seeks here simply by bringing separate lawsuits. But such an outcome would serve only to increase the burden on courts and parties. As Judge Rakoff recognized, it would be an absurd result if suing separately allowed rights holders to recover their own statutory damages award, but if suing together in the same action, they are limited to a single award. *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 (S.D.N.Y. 2001), *disagreed with by, EMI*, 844 F. 3d 79. For that reason, along with the statute's use of the singular, "copyright owner," Judge Rakoff determined Congress meant only to preclude a single plaintiff from recovering multiple statutory damages for infringements of several different versions of a single work. *Id*.

Before the Court are separately registered works with separate economic values and separate owners. SUMF ¶¶ 12–14. Applying the entirety of the statutory provision as written, Plaintiffs

---

[6] Altice also relies, in part, on the legislative history to arrive at its interpretation. Mot. 12. But where the statutory text is clear and unambiguous, the "judicial inquiry is complete." *Grande*, 118 F.4th at 721. Moreover, because Altice's interpretation of the legislative history is at odds with the plain reading of the provision's use of the singular "copyright holder," reliance on it would be improper. *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018) ("[T]he Supreme Court has stated repeatedly that where a statute's text is clear, courts should not resort to legislative history.").

are entitled to separate statutory damage awards for Altice's infringement of a Record Label Plaintiff's sound recording and a Music Publisher Plaintiff's corresponding musical composition.

IV. **Altice Erroneously Excludes Dozens of Works Eligible for Statutory Damages by Repeatedly Treating a *Compilation* of Sound Recordings (i.e., a Full Album) as Derivative of an *Individual* Musical Composition (i.e., a Single Song).**

Even if the Court endorses *Grande*'s view of compilations, and also rules that a work and its derivative are only eligible for a single statutory award, Altice's proposed application of those two rulings is wrong and yields an incorrect total number of eligible statutory awards. *See supra* § II. This is because Altice treats certain *compilations* of sound recordings as derivative of *individual* musical compositions and excludes those compilations from damages eligibility entirely. This creates another genuine factual dispute.

Under the Copyright Act, a compilation is "a work formed by the collection and assembling of preexisting materials . . . that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. A "derivative work" is one "based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." *Id.* The distinction between the two has been explained in the House Report as follows:

> A 'compilation' results from a process of selecting, bringing together, organizing, and arranging previously existing material of all kinds, regardless of whether the individual items in the material have been or ever could have been subject to copyright. A 'derivative work', on the other hand, requires a process of recasting, transforming, or adapting 'one or more preexisting works....' H.R.Rep. No. 94–1476, 94th Cong.2d Sess. at p. 57 (1976). *See also* M. Nimmer, 1 Nimmer on Copyright §§ 3.01–3.02 (1990).

*Saxon v. Blann*, 1991 WL 350748, at *7 (W.D. Ark. Jan. 25, 1991), *aff'd*, 968 F.2d 676 (8th Cir. 1992). Thus, while an *individual* sound recording may, in some instances, be derivative of an

11

*individual* musical composition, it makes no sense to treat a *compilation* (here, the selection and arrangement of multiple sound recordings) as derivative of an *individual* musical composition.

Altice fails to account for this and, as a result, erroneously excludes at least ▇ compilations from its calculation. *See* Ex. B.[7] Specifically, where Plaintiffs sued on just one sound recording from a compilation, Altice treats it as an individual sound recording rather than as part of a compilation. This contradicts Altice's contention that all sound recordings registered together must be treated as a compilation. *Compare* Mot. 7–10 (arguing that, for purposes of statutory damages, the number of individual tracks at-issue is irrelevant when registered as part of the same compilation or album) *with* Mot. 13 (discounting all ▇ "overlapping" *tracks* identified by Plaintiffs without regard to whether those tracks were registered as albums or compilations). The effect of Altice's approach is to exclude from damages all compilations for which Plaintiffs sued on just one track from that compilation and also happened to sue on the musical composition underlying that track. The compilation and the musical composition are each entitled a separate damage award.

Thus, assuming the Court applies *Grande* and rules in favor of Altice on the derivative issue, Plaintiffs are entitled to claim an award for each registered compilation—regardless of whether they sued on one or a dozen sound recordings from that compilation—and an award for each musical composition that "overlaps" with a sound recording from that compilation. To rule otherwise, would mean that, if Plaintiffs sued on five sound recordings from a given compilation as well as the five musical compositions underlying those sound recordings, Plaintiffs would receive only five awards—one for each sound recording/composition "pair," but not an award for

---

[7] This figure does not account for any of the "overlapping" pre-1972 sound recordings that may also fall under this category. Indeed, it appears that Altice forgot to account for at least 55 pre-1972 works in its final tally of eligible statutory awards notwithstanding the fact that it claimed not to be moving for summary judgment on those works and specifically asked the Court to enter an order that does not account for them.

the compilation. This is the wrong result as it would preclude Plaintiffs from any award for the compilation. The proper result in this scenario would be six awards: one for the compilation of sound recordings and one for each at-issue musical composition.

## CONCLUSION

For the foregoing reasons, the Court should deny Altice's motion.

Dated: July 2, 2025

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Respectfully submitted,

*/s/ Jeffrey M. Gould w/permission Rudolph Fink IV*

Jeffrey M. Gould (*pro hac vice*)
Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
Keith Howell (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: 202-480-2999
jeff@oandzlaw.com
matt@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan (*pro hac vice*)
Bret Matera (*pro hac vice*)
Yunyi Chen (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
bmatera@oandzlaw.com
ychen@oandzlaw.com

***Counsel for Plaintiffs***

13

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this July 2, 2025, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ *Rudolph Fink IV*
Rudolph Fink IV