███████████████████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

WARNER RECORDS INC. et al.,                )
                                           )
              Plaintiffs,                  )
        v.                                 )        Case No. 2:23-cv-00576-JRG-RSP
                                           )
ALTICE USA, INC. AND CSC                   )        ██████████████████████
HOLDINGS, LLC,                             )
                                           )
              Defendants.                  )

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON ALTICE'S DMCA SAFE HARBOR DEFENSE

i

████████████████████████████████████████████

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................. 1

STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ....................................... 4

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 5

   A.   The Parties ....................................................................... 5

   B.   Altice's Repeat Infringer Policy ............................................ 5

       1.   ████████████████ .................................. 6

       2.   ████████████ .......................................... 6

       3.   ███████████████ ....................................... 7

       4.   █████████████████████ ................................ 7

   C.   Failures of Altice's Implementation of its Repeat Infringer Policy ............... 10

       1.   ████████████████ ................................. 10

       2.   ███████████████ .................................. 10

       3.   ████████████████████████████████ ................ 11

       4.   ██████████████ .................................... 12

       5.   █████████████████ ................................. 13

       6.   The Effect of Altice's ████████ on Facilitating Repeat Infringement ............... 14

LEGAL STANDARD ............................................................................. 14

ARGUMENT .................................................................................... 15

    I.   The Design and Implementation of Altice's Repeat Infringer Policy Led to Massive Repeat Infringement and ████████████ . ................................ 16

       A.   The Design of Altice's Repeat Infringer Policy ................................. 16

       B.   The Implementation of Altice's Repeat Infringer Policy ....................... 17

       C.   Resulting Repeat Infringement and █████████ ........................... 19

    II.   Altice's Objectively Unreasonable Repeat Infringer Policy Disqualifies it from the DMCA Safe Harbor ....................................................... 20

III.  Altice's Repeat Infringer Policy ████████████████████████
      ██████████ and Thus Fails to Satisfy the Statute. ........................................... 24

IV.  Even if Altice's Policy Does Not Wholly Disqualify It from Safe Harbor Protection,
      Altice Should Still Lose Protection in Two Specific Circumstances. ...................... 27

      A.  Altice ████████████████████████████████████
          ██████████████████ ........................................................................ 27

      B.  Altice ████████████████████████████████████████
          ██████████████████ ........................................................................ 28

CONCLUSION ........................................................................................................ 29

███████████████████████████

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................ 15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   881 F.3d 293 (4th Cir. 2018) ........................................................................ *passim*

*Capitol Records, Inc. v. MP3tunes, LLC*,
   821 F. Supp. 2d 627 (S.D.N.Y. 2011) ............................................... 21, 24, 25

*Capitol Records, LLC v. Escape Media Grp.*,
   2014 WL 12698683 (S.D.N.Y. May 28, 2014) ................................. 21, 24, 25

*Capitol Records, LLC v. Escape Media Grp.*,
   2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ................................... 21, 24, 29

*Capitol Records, LLC v. Vimeo, LLC*,
   826 F.3d 78 (2d Cir. 2016) ................................................................................. 15

*Capitol Records, LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 500 (S.D.N.Y. 2013) ............................................................. 25

*Corbis Corp v. Amazon. Com, Inc.*,
   Supp. 2d 1090 (W.D. Wash. 2004) .................................................................. 25

*Cosmetics Ideas, Inc. v. IAC/Interactivecorp.*,
   606 F.3d 612 (9th Cir. 2010) ............................................................................. 25

*Disney Enterprises, Inc. v. Hotfile Corp.*,
   2013 WL 6336286 (Sept. 20, 2013) ................................................... 21, 22, 26

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) .......................................................................... 23

*EMI Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016) ................................................................................. 15

*Fame Publ'g Co. v. Ala. Custom Tape, Inc.*,
   507 F.2d 667 (5th Cir. 1975) ............................................................................ 24

*Flores v. Wal-Mart Stores Texas, L.L.C.*,
   855 Appx. 203 (5th Cir. 2021) ......................................................................... 15

*In re Aimster Copyright Litig.*,
   252 F. Supp. 2d 634 (N.D. Ill. 2002) .............................................................. 24

*In re Aimster Copyright Litig.*,
   334 F.3d 643 (7th Cir. 2003) ............................................................... 21, 24, 25

*Meadaa v. K.A.P. Enters., L.L.C.*,
   756 F.3d 875 (5th Cir. 2014) ............................................................................ 14

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
 2015 WL 4394673 (W.D. Wash. July 16, 2015) ................................................. 25

*Perfect 10 v. CCBill LLC*,
 488 F.3d 1102 (9th Cir. 2007) ............................................................... 16, 22

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
 213 F. Supp. 2d 1146 (C.D. Cal. 2002) ..................................................... 26

*UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*,
 118 F.4th 697 (5th Cir. 2024) ................................................................. 24

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
 384 F. Supp. 3d 743 (W.D. Tex. 2019)..................................................... *passim*

*United States v. Texas*,
 507 U.S. 529 (1993)................................................................................. 24

**Statutes**

17 U.S.C. § 512(a) ................................................................................... 1

17 U.S.C. § 512(i)................................................................................. *passim*

**Other Authorities**

H.R. Rep. 105-551 (II) (1998) ......................................................... 15, 26

S. Rep. 105-190 (1998) ...................................................................... 15, 26

*Termination*, Black's Law Dictionary (12th ed. 2024)............................ 25

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................. 14

███████████████████████████████████

Plaintiffs respectfully move for summary judgment on Altice USA, Inc.'s and CSC Holdings, LLC's (together, "Altice") affirmative defense of safe harbor protection under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(a).

## **INTRODUCTION**

This case concerns mass copyright infringement on Altice's network, and Altice's knowing contribution to, and the substantial profits it reaped from, that infringement.

Plaintiffs are some of the world's leading record companies and music publishers that own or control exclusive rights to popular sound recordings and musical compositions. Altice is one of the largest internet service providers ("ISP") in the country. During the Claims Period, Altice ████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████, Altice did as little as possible. And despite claiming to have a repeat infringer policy that called for termination, Altice ████████████

██████████████████████████████ Altice ████████

████████████ it ████████████████████████████

███████████████████████████ Altice ████████

████████████████████████████████████████

███████████████████████████████ Altice ████

████████████████ it ████████████████████████

████████████████ Altice ██████████████████████

████████████████████████████████████████

████████████ Altice ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████. The result of

Altice's actions, both by design and effect, was to provide its users with a safe haven to infringe.

Altice's response to massive infringement on its network is completely at odds with the copyright law. In an attempt to balance the rights of content owners and online service providers, Congress established a series of safe harbors in the DMCA. Under the DMCA safe harbor, internet service providers like Altice that meet certain conditions are immune from monetary liability for infringement occurring through their service. To qualify, Altice bears the burden to prove, among other things, that it "adopted and reasonably implemented, and inform[ed] subscribers and account holders of . . . a policy that provides for the termination in appropriate circumstances" of repeat infringers. 17 U.S.C. § 512(i)(1)(A).

The questions for the Court in assessing Altice's safe harbor defense are, *first*, whether Altice implemented a repeat infringer policy that includes termination in appropriate circumstances, and *second*, whether Altice implemented that policy reasonably—not just as to *Plaintiffs'* infringement notices, but as to notices from *all* copyright owners. Altice's policy does not come close on either front.

First and foremost, the design and implementation of Altice's policy are the antithesis of reasonable, making a farce of the DMCA's repeat infringer termination policy requirement. Altice

███████████████████████████████████████████████

████████████████████████ At most, Altice ██████████████████████████

███████████████████████████████████████████████

██████████████████████ Altice's rules are dizzying, and here's the kicker: d█████████

████████████████████ Altice ████████████████████████████████

████████████████████████ Altice refers to this as ██████████████████████

███████████████████████████████████████████

████████████████████████████████████ Whether Altice ███████████████████

███████████████████████████████████████████████ Altice ████

█████████████████████████████████████

This is no mere hypothetical. ██████████████████████████████████████

████████████████ Altice ████████████████████████████ Altice ███████████████

███████████████████████████████████████████████ Altice's

████████████████████████████████████████████████████████

███████████████████████ Altice claims to ███████████████████████████████

█████ Altice █████████████████████████████████████████████████

Altice's ██████████████████████████████████ Altice's expert testified that ██

████████████████████████████████████████████████████████████

██████████████████████

Meanwhile, Altice ███████████████████████████████████████████

██████████████████████████████████ Beyond that, Altice ███████████████████

████████████████████████████████████ Its internal emails make clear that ███

███████████████████████████████. While Altice claims to ███████████████████

████████████████████████, safe harbor protection demands more. As an Altice DMCA

lead project manager astutely observed: █████████████████████████████ Altice's policy

██████████████████████████████████████████ Altice's own data expert, Dr.

Mohan Rao, determined that during the Claims Period alone, ███████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

By any measure, Altice is ineligible for the safe harbor at all. But beyond the global failings that foreclose the safe harbor defense in full, Altice is plainly not entitled to safe harbor protection for (1) infringements by ████████████████ because Altice ████████████████████ ████████████████, or (2) any infringements by any accounts ████████████████████ ████████████ because Altice ████████████████████████████████████.

The undisputed facts establish that Altice does not qualify for the safe harbor and the issue is ripe for determination. *Every* court to consider an ISP's safe harbor defense at summary judgment in a peer-to-peer infringement case like this one has granted summary judgment for plaintiffs, and this Court should too. Resolving the issue now will substantially narrow the issues for trial as safe harbor is Altice's primary affirmative defense and the relevant facts are undisputed.

### STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

Whether Altice is entitled to the DMCA safe harbor where (i) its repeat infringer termination policy is unreasonable by design and implementation; (ii) its repeat infringer policy ████████████████████████████████████████████; (iii) its repeat infringer policy █████████ ████████████████████████, and (iv) Altice ████████████████████████████ ████████████████████.

---

[1] When considering the full Discovery Period, Plaintiffs' expert counted more egregious repeat infringement, including ████████████████████████████████████████████████ ████████████████████████████████████████████. While Plaintiffs reserve the right to present this evidence at trial, for purposes of summary judgment, Dr. Rao's more conservative numbers are undisputed and still staggering.

██████████████████████████████████████████

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  The Parties

1.     Plaintiffs are leading record companies and music publishers. Compl., Dkt. 1, ¶ 2.

2.     Altice is one of the largest ISPs in the country. As of the end of 2023, Altice had approximately 4.74 million customers, including 4.36 million residential and 380,400 commercial customers. Ex. 1 (2023 10-K) at 2-3.[2] It also had 341,400 fiber customers, and its fiber network (offering high-speed fiber-optic internet) was available to 2.7 million homes. *Id*. at 3, 53.

3.     During the Claims Period, through the Recording Industry Association of America ("RIAA"), Plaintiffs sent more than ███████████████████████ to Altice ██████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████ Altice █████████████████████████████████████ ████████████████████████

### B.  Altice's Repeat Infringer Policy

4.     Altice's public-facing Copyright Infringement Policy includes a statement reserving the right to "terminate, in appropriate circumstances" subscribers who infringe copyright, "including repeat infringers." Exs. 4 (Optimum's Copyright Infringement Policy) at 1; 5 (Suddenlink's Copyright Infringement Information) at 1. Altice's internal files state, ████ ██████████████████████████████████████████ █

5.     Between December 1, 2019 through December 31, 2023 (the "Discovery Period) and December 7, 2020 through December 7, 2023 (the "Claims Period"), Altice maintained ████

---

[2] Citations to "Ex. __" refer to exhibits to the Gould Declaration filed in support of this Motion.

██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Altice's ██████████

████████████████████████████████████████████

████████████████████████████████████████

1. ████████████████████

6. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

7. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

2. ████████████████████

8. ██████████████████████████████████████████

██████████████████████████████████████

9. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

**3.**   ████████████████████

10.     In 2021, Altice acquired assets of Morris Broadband, ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

11.     ████████████████  Altice ██████████████████████████

████████████████████████████████████  Altice  ████

████████████████████████████████████████████████

██████████████████████████████████  Altice  ████████████

████████████████████████████████████████████████

██████████████████████████████████████████

**4.**   ████████████████████████████

12.     In  2016,  Altice  ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

13.    ██████████████████████████████████████

████████████████████████████████████████████

Between 2020 and 2023, Altice had 376,200 to 381,900 commercial subscribers, comprising 7.5-8% of its subscriber base. Exs. 17 (2020 10-K) at 2-3; 18 (2021 10-K) at 2-3; 19 (2022 10-K) at 2-3; 1 at 2-3.

14.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

15.    ████████████ Altice ████████████████████████

████████████████ Altice ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████, Altice

████████████████████████████████████████████

████████████████████████████████████████, Altice

████████████████████████████████████████████

████████████████████████, Altice ████████████████████

██████████████████████████

16.    ██████████████████████████████████████

██ Altice ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ Altice

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

17.    ██████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████, Altice ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ Altice's corporate designee testified that Altice ██████████████████

███████████████████████████████████████████████

18.    ██████████████████████████████████████████

███████████████████████████████████ Altice's ██████████

██████████████████ Altice ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

---

3 ███████████████████████████████████

19. ██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████▌

20. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ Robert Egan, a former technical

manager at Altice, described ████████████████████████████████

██████ Altice ████████████████████████████████████████

████████████████████████████████████████████████

██████ Altice's ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

C.  **Failures of Altice's Implementation of Its Repeat Infringer Policy**

1. ███████████████████████

21. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ Altice ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

2. ████████████████████████

---

[4] ████████████████████████████████████████████████

██████████████████████████████████████████████

22.    At the end of 2020, Altice ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

23.    Altice's corporate designee ███████████████████████████████

████████████████, and Altice ███████████████████████████████████

████████████████████████████████████ Altice's corporate designee

testified that, █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

24.    ████████████████████████████████, Altice ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████, Altice ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

**3.**    ████████████████████████████████████████████

25.    Altice ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Altice ███████████████████████████

████████████████████████████████████████ Altice's corporate

11

designee was ███████████████████████████████████

████████████████████████████████████████████████

███████████████

     **4.**  ██████████████████

   26.  ████████████████████████████████████

█████████████, Altice ██████████████████████████████

███████████

   27.  ████████████████████████████████████

█████████████, Altice ██████████████████████████████

█████████ Altice's data expert, Dr. Mohan Rao, testified that ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

   28.  Specifically, Altice ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████ Altice ████████████████████████████████████████████

███████████████████

29.    During the Claims Period, Altice ████████████████████████████████████

███████████████████████████████████████

**5.**    ████████████████████████

30.    ███████████████ Altice's ███████████████████████████████████

███████████████ Altice's ██████████████████████████████████████, Altice

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ Altice ███████████████████████████████

██████████████████████████████████████ Altice ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████

31.    ████████████████████████████████████████████ Altice

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

32.    Altice ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ Altice's ██████████████

██████████████████████████████████████████████████

13



**6.  The Effect of Altice's ███████████ on Facilitating Repeat Infringement**

33.    According to Altice's data expert, Dr. Rao, during the Claims Period ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

34.    During the Discovery Period, Altice ████████████████████████

████████████████████

35.    Plaintiffs' expert, Kristofer Buchan, estimated that Altice's ████████████

████████████████████████████████████

36.    During the Claims Period, Altice ████████████████████████

██████████████████████████████████████████████████

████████████████████

## LEGAL STANDARD

A party may move for summary judgment with respect to "each claim or defense" or a "part of each claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). For a dispute to be genuine, the evidence must be "such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986) ("[t]he mere existence of a scintilla of evidence . . . will be insufficient" to oppose summary judgment). A fact is material if it "might affect the outcome of the suit." *Id.* at 248; *Flores v. Wal-Mart Stores Texas, L.L.C.*, 855 F. Appx. 203, 203-204 (5th Cir. 2021).

## ARGUMENT

To qualify for DMCA safe harbor protection, Altice must prove that it "adopted and reasonably implemented, and inform[ed] subscribers and account holders of … a policy that provides for the termination in appropriate circumstances of subscribers and account holders of [its] network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Repeat infringers are those who "infringe[] a copyright more than once," not "the narrow subset of those who have been so adjudicated by a court." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 301 (4th Cir. 2018); *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) ("'repeat' [] mean[s] 'a person who does something . . . again or repeatedly,' . . . while an 'infringer' is '[s]omeone who interferes with one of the exclusive rights of a . . . copyright.'"). The purpose of § 512(i) is to ensure that "those who repeatedly or flagrantly abuse their access to the Internet through disrespect for the intellectual property rights of others should know that there is a realistic threat of losing that access." H.R. Rep. 105-551 (II), at 61 (1998); S. Rep. 105-190, at 52 (1998).

An ISP asserting the DMCA safe harbor defense "'bears the burden of . . . demonstrating that it has . . . taken the steps necessary for eligibility.'" *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 754 (W.D. Tex. 2019) (quoting *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 94 (2d Cir. 2016)). A defendant "must establish 'beyond controversy every essential element,' and failure to do so will render [a defendant] ineligible for

████████████████████████████████████████████████████████████

the [§ 512(i)] safe harbor's protection." *Grande*, 384 F. Supp. 3d at 754. "Section 512(i)(1)(A) requires an assessment of the service provider's 'policy,' not how the service provider treated a particular copyright holder." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007). Altice cannot meet its burden due to fatal flaws in both the design and implementation of its repeat infringer termination policy.

I.    **The Design and Implementation of Altice's Repeat Infringer Policy Led to Massive Repeat Infringement and** ████████████████████████

A.  **The Design of Altice's Repeat Infringer Policy**

By design, Altice's ██████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████, an Altice subscriber ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████, Altice

████████████████████████████████████████████████████████████

██████████████████████████████████████ Altice ██████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

Other choices further ensured continued repeat infringement. Altice ██████████████████

████████████████████████████████████████████████████████████

███████████████████████ Altice's ████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████ Even Altice

████████████████████████████████████████

████████████████████████████████████

Altice's ████████████████ Altice ████████████████████████

████████████████████████████████████ Altice ████████

████████████████████ Altice ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ Altice ████████████

████████████████████████████████████████

████████████████████████ The system defies all reason.

## B. The Implementation of Altice's Repeat Infringer Policy

Altice's implementation of its policy by the Unified System was completely unreasonable.

*First,* ████████████████████████████████████, Altice ████████

████████████████████████████████████████

████████████████████████████████████████

████ Altice ████████████████████████████████████████

████ To this day, Altice ██████████████████████████████ *Inexcusable.*

In addition, ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Altice ████████████████████

████████████████████████████████ And again, Altice

████████████████████████████████████████

17

██████████████████████████████████████████

███████████████████████, Altice ████████████████████████ It ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████ Altice's

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████, Altice ████████████████████

████████████████ *Indefensible.*

*Second*, ██████████████████████ Altice's repeat infringer program. ████████████████

████████████████████████ Altice's infringement policies. SUMF ¶ 25. Altice ████

██████████████████████████████████ And Altice ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *Irresponsible.*

*Third*, Altice ████████████████████████████████████ For the

entire Claims Period, Altice █████████████████████████████████████

██████████████████████████████████████████████ Altice

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ In May 2022, Altice ██████████████████

█████████████████████████████████ Still, Altice ██████████████████

████████████████████████████████████████████████████

█████████████████████████████████ Altice consistently ██████████████████

18

██████████████████████████████████████

██████ Altice's corporate designee and VP of Data Warehouse, George Ziegler, summarized it well when he admitted that Altice's DMCA processes had ██████████████████ ████████████████████████████ *Confounding.*

*Fourth*, Altice ████████████████████████████████

████████████████████████████████████████

███████████████████████ Altice also claims that █████████████████

███████████████████ But Altice ████████████████████████

████████████████████████████████████████████, and Altice

████████████████████████████████████████

Altice's ██████████████████████████ *Incredible.*

### C. Resulting Repeat Infringement and ████████████

The impact of Altice's design and implementation is exactly what one would expect: Altice

████████████████████████████████████████

████████████████████████ Altice's data expert determined that during the

Claims Period, ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

During the Claims Period alone, Altice ████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[5] *See also* ████████████████████████████████
████████████████████████████████████



Altice

Altice

- Altice admits that

- During the two years of the Claims Period that followed, Altice claims to Altice's data expert, Dr. Rao, described as

- Altice's Altice

- Altice

- Even crediting Altice's

Altice

Altice

## II. Altice's Objectively Unreasonable Repeat Infringer Policy Disqualifies it from the DMCA Safe Harbor.

For the multiple reasons discussed above, Altice's unreasonable repeat infringer policy wholly fails to satisfy § 512(i). Altice's policy was designed to The predictable result was of repeat infringers who continued to infringe through Altice's service. A repeat

████████████████████████████████████████

infringer policy with this objective and outcome does not satisfy § 512(i). *See, e.g.*, *Disney Enterprises, Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *8, *24, *48 (S.D. Fla. Sept. 20, 2013) (granting summary judgment of no safe harbor because repeat infringer policy was "legally insufficient" where defendant had "official policies forbidding infringement" but "did not significantly address the problem of repeat infringers" despite having terminated 43 users); *Capitol Records, LLC v. Escape Media Grp.*, 2014 WL 12698683, at *32 (S.D.N.Y. May 28, 2014), report and recommendation adopted, 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) (granting summary judgment of no safe harbor where the defendant "permits an extensive amount of repeat infringement to occur without taking action").

Indeed, the direct consequence of Altice's repeat infringer policy was that subscribers could infringe repeatedly without consequence, the opposite of § 512(i)'s goal. *See, e.g.*, *In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) (service provider must "prevent the use of its service by 'repeat infringers'"); *BMG*, 881 F.3d at 302 (subscribers that infringe copyrights "should face a 'realistic threat of losing' their Internet access") (quoting the DMCA's legislative history); *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 637 (S.D.N.Y. 2011) ("service providers that . . . fail to terminate users despite their persistent and flagrant infringement are not eligible for protection under the safe harbor").

By establishing an ████████████████████████████, Altice ████████████
████████████████████████████████████████████████████
████████████████ Altice's corporate representative admitted that Altice's ████████████
████████████████████████. And Altice was well aware of ████████████
████████████████████ As an Altice DMCA lead project manager observed, ████████████
████████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████, Altice ████████████████████████

███████████████████████████████

Moreover, a system that ██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ *C.f.*, *Disney Enterprises*, 2013 WL 6336286 at *8, *48

(finding no safe harbor where "repeat infringer policy was not tied to notices of infringement").

Under Altice's policy, ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ In fact, Plaintiffs' expert, Kristofer

Buchan, determined that ████████████████████████████████████████████████

██████████████████████████████████████ That alone demonstrates that Altice's repeat

infringer policy was a sham.

Altice designed its policy to ██████████████████████████████████████████

████████████████████████████████████, Altice ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ Altice's data expert, ████████████████████████████████

Plaintiffs' expert, ████████████████████████████████████████████████████

██████████████████████ As the Ninth Circuit has observed, implementation of a repeat infringer

policy is reasonable only if a "service provider terminates users who repeatedly or blatantly

infringe copyright." *Perfect 10*, 488 F.3d at 1109. Altice plainly did not.

Altice's decision to ████████████████████████████████████████████████

██████████████████████ also means it cannot satisfy § 512(i). The statute requires a service

████████████████████████████████████████████

provider to adopt a repeat infringer policy and there are no carve outs ████████████

████████████████████████████████████████████

"[T]o be eligible for the DMCA safe harbor, an ISP must 'reasonably implement' a termination policy, not just adopt one." *Grande*, 384 F. Supp. 3d at 755 (citing 17 U.S.C. § 512(i)(1)(A)). An ISP that "fails to enforce the terms of its policy in any meaningful fashion" has not "'reasonably implemented' a repeat infringer policy." *BMG*, 881 F.3d at 303. "[A]llow[ing] notices of potential copyright infringement to fall into a vacuum and to go unheeded," indicates "that [the ISP] had not reasonably implemented its policy against repeat infringers." *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004).

That's Altice to a tee. ███████████████████████████, Altice ███████████

████████████████████████████████████████████

And Altice's ████ treatment of ████████████████████████████████

████ is inexcusable. An ISP's "decision to categorically disregard [] notices [] provides further evidence that [the ISP] did not reasonably implement a repeat infringer policy." *BMG*, 881 F.3d at 304. With the wave of a wand, Altice ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Altice's system ████████ The impact, if not intent, was ████████████████████████████ There's nothing remotely reasonable about that.

These and other failures could have been avoided if Altice ██████████████

███████████████████████████████████. It never did. "Adopting a repeat infringer policy and then purposely eviscerating any hope that such a policy could ever be carried

███████████████████████████████████████████████

out is not an 'implementation' as required by Section 512(i)." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003).

**III.    Altice's Repeat Infringer Policy** ███████████████████████████
███████████████    **and Thus Fails to Satisfy the Statute.**

Section 512(i) is clear and unambiguous: to gain safe harbor, Altice's policy must "provide[] for [] *termination* in appropriate circumstances." 17 U.S.C. § 512(i) (emphasis added). But Altice ██████████████████████████████████████████████████
████████████████████████████████████, Altice ███████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████

"[T]he DMCA's safe harbors, as with all immunities from liability[,] should be narrowly construed." *Capitol Records*, 821 F. Supp. 2d at 636 (citing *United States v. Texas*, 507 U.S. 529, 534 (1993)); *see also Fame Publ'g Co., Inc. v. Alabama Custom Tape, Inc.*, 507 F.2d 667, 670 (5th Cir. 1975) (statutes that provide exceptions to liability under the Copyright Act should be strictly and narrowly construed). And when it comes to interpreting a statute, "[t]he Supreme Court has 'ma[d]e clear that the starting point for our analysis is the statutory text.'" *UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*, 118 F.4th 697, 721 (5th Cir. 2024). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* Where the words of the statute are unambiguous, as here, the "judicial inquiry is complete." *Id.*

"[I]n using the word 'termination,' it is apparent that Congress intended for service providers to *disassociate* themselves fully from repeat infringers, not simply take measures to impede their infringing activity." *Escape Media Grp.*, 2014 WL 12698683, at *31 (emphasis in original); *see also Escape Media Grp.*, 2015 WL 1402049, at *11 ("Although few courts have

expressly discussed the meaning of 'termination'—likely because the term is so clear as to be beyond doubt—the Court is not aware of any authority for the proposition that something short of complete termination of a repeat infringer's account satisfies § 512(i).")*. This conclusion is readily supported by the plain meaning of "termination," which is the "act of ending something; extinguishment" or "[t]he end of something in time or existence; conclusion or discontinuance." Black's Law Dictionary (12th ed. 2024). "Thus, when courts have used language other than 'termination,' [in connection with § 512(i)] that language has consistently indicated a total disassociation between the service provider and the repeat infringer." *Escape Media Grp.*, 2014 WL 12698683, at *31.[6]

As the Fourth Circuit observed, this statutory mandate to fully and indefinitely disassociate flows from Congress's reasoning that "if persons 'abuse their access to the Internet through disrespect for the intellectual property rights of others'—that is, if they infringe copyrights—they should face a 'realistic threat of losing' their Internet access." *BMG*, 881 F.3d at 302 (quoting the DMCA's legislative history). Nothing in the statutory text or legislative history suggests the

---

[6] *See also In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) (service provider must "prevent the use of its service by 'repeat infringers'"); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 654 (E.D. Va. 2015) (emphasis added), *aff'd in relevant part*, 881 F.3d 293 (4th Cir. 2018) ("Additionally, the penalty imposed for repeat infringers (when appropriate circumstances exist) must be termination *and not some lesser consequence*.") (emphasis added); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673, at *8 (W.D. Wash. July 16, 2015) ("It provides mechanisms for the filing of claims of infringement, a process for removal of infringing products, and processes for the *permanent suspension* of repeat offenders.") (emphasis added); *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 513 (S.D.N.Y. 2013) (finding that, under Vimeo's policy, "those who chose to violate another's copyright would not be permitted to avail themselves of the service Vimeo provides"); *Capitol Records*, 821 F. Supp. 2d at 638 (service providers required to "ban from their websites" infringers); *Corbis Corp v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1100 (W.D. Wash. 2004) (describing approvingly a policy that informed "those accused of copyright infringement ... that repeated violations could result in '*permanent suspension*' from Amazon sites") (emphasis added), *overruled on other grounds by Cosmetics Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010).

termination requirement may be satisfied by only a temporary disconnection of service. *See* 17 U.S.C. § 512(i); H.R. Rep. No. 105-551 (II), at 61 (1998); S. Rep. No. 105-190, at 52 (1998). To the contrary, considering the DMCA in its entirety makes clear that "Congress knew how to differentiate between *terminating* account holders" and merely "*disabling access* to material or *activity* . . . ." *Escape Media Grp.*, 2015 WL 1402049, at *10 (emphasis in original) (comparing text of § 512(j) with § 512(g)(1)).

Here, the facts are undisputed and ripe for judgment. Altice's



The upshot is that Altice                                         *See Disney Enterprises*, 2013 WL 6336286, at *21 (finding that the service provider "failed to reasonably implement [its policy] by actually terminating users"); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1179 (C.D. Cal. 2002) ("Because the Court finds that there is a strong likelihood that Cybernet cannot establish that it has 'reasonably implemented' a policy directed at



*terminating* repeat infringers, even in 'appropriate circumstances,' there is little likelihood that it can avail itself of section 512's safe harbors.") (emphasis in original).

Notwithstanding its litigation position, Altice

Ultimately, "[a]n ISP cannot claim the protections of the DMCA safe harbor provisions merely by terminating customers as a symbolic gesture before indiscriminately reactivating them within a short timeframe." *BMG*, 881 F.3d at 304.

## IV. Even if Altice's Policy Does Not Wholly Disqualify It from Safe Harbor Protection, Altice Should Still Lose Protection in Two Specific Circumstances.

### A. Altice



Altice admits that

---

[7] *See also*



████████████████████████████████████████████████████

Altice admits that ████████████████████████████████████████████████████

████████████████████████     Altice's discovery responses, deposition testimony, and produced

documents confirm the same. Exs. 7 at 12; 3 at 175:24-176:11; 56 (████████████████████████)

at 2 (██████████████████████████████████████); 57 (Almeroth Expert Report) at

95 n.198. And according to Altice's data expert, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████     Altice's ██████████████████

████████████████████████

The "complete nonexistence" of a policy for ████████████████   "disqualifies a

defendant from the safe harbor's protections." *Grande*, 384 F. Supp. 3d at 756. Nothing in the

DMCA or otherwise exempts ████████████████████ from § 512(i)'s repeat infringer policy

requirement. In *Grande*, the Court held that the nonexistence of a policy is a "complete abdication

of [the ISP's] responsibilities to implement and enforce a policy terminating repeat copyright

infringers" and "requires the Court to conclude that [the ISP] is not entitled, as a matter of law, to

the safe harbor provisions" of the DMCA. *Id*. The Court should do the same here and grant

summary judgment that Altice is ineligible for the safe harbor because it failed to apply any repeat

infringer policy whatsoever to ████████████████████

**B. Altice** ████████████████████████████████
████████████████████████

Altice admits that ████████████████████████████████████

████████████████████████████████████████████████████

██████ Altice ████████████████████████████████████████████

████████████████████     During this period, Altice ████████████████████████

████████████████████████████████████████████████████



comes as no surprise given Altice's outrageous policy and implementation. It is the predictable result of an ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████

In *Grande*, the court noted that the ISP's "utter failure to terminate any customers at all over a six-and-a-half-year period despite receiving over a million infringement notices . . . demonstrates that [the ISP] 'made every effort to avoid reasonably implementing [its] policy' and 'very clearly determined *not* to terminate subscribers who in fact repeatedly violated the policy.'" *Grande*, 384 F. Supp. 3d at 755 (emphasis in original) (quoting *BMG*, 881 F.3d at 303). ████████ ████████████████████████████████████████████████ ███████████████████████████ Altice received ████████████ ██████████████████████████ In *Escape Media Grp.*, the court held that the ISP's "failure to actually terminate repeat infringers" itself provides "an independent ground for finding an absence of evidence to support [the ISP's] entitlement to the DMCA safe harbor." 2015 WL 1402049, at *12. For these additional reasons, Altice is also ineligible for the safe harbor for the ██████████████████████

## CONCLUSION

For the reasons stated above, the Court should grant summary judgment in Plaintiffs' favor that Altice is not entitled to safe harbor protection under the Digital Millennium Copyright Act.

---

8 ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████

Dated: June 16, 2025

Respectfully submitted,

*/s/ Jeffrey M. Gould w/permission*
*William E. Davis, III*

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Jeffrey M. Gould (*pro hac vice*)
Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
Keith Howell (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: 202-480-2999
jeff@oandzlaw.com
matt@oandzlaw.com
corey@oandzlaw.com
khowell@oandzlaw.com

Alexander Kaplan (*pro hac vice*)
Carly Rothman (*pro hac vice*)
Lauren Bergelson (*pro hac vice*)
Bret Matera (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
alex@oandzlaw.com
carly@oandzlaw.com
lbergelson@oandzlaw.com
bmatera@oandzlaw.com

**Counsel for Plaintiffs**

████████████████████████████████████████████

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this June 16, 2025 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A). ████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

                                        /s/ *William E. Davis, III*
                                        William E. Davis, III


████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

                                        ████████████████████
                                        ████████████